UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FILED JAN 1 3 2026
EDWARD A. TAKARA, CLERK
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT of LOUISIANA

| | |
|---|---|
| In re: ) | Case No. 25-11050 |
| ) | |
| ARCADIAL MOTORS, LLC ) | Chapter 7 |
| ) | |
| Debtor ) | |

**MEMORANDUM IN SUPPORT OF**
**LAWRENCE VAUGHN'S OMNIBUS MOTION**

## I. INTRODUCTION AND OVERVIEW

These Chapter 7 cases present a textbook example of bad-faith bankruptcy filings designed to obstruct regulatory enforcement, frustrate state-court jurisdiction, and shield unlawful dealership operations from accountability. Rather than serving the legitimate purposes of liquidation and equitable distribution, the filings were deployed as a tactical device to legitimize an unapproved dealership transaction, conceal unauthorized operations under another dealer's license, and obscure the true ownership of inventory, proceeds, and liabilities.

The evidentiary record—drawn from § 341 testimony, manufacturer correspondence, LMVC enforcement actions, state-court orders, banking records, and the Debtors' own schedules—demonstrates pervasive misrepresentation and internal inconsistency. These are not technical or clerical defects. They are **structural falsehoods** that make lawful administration of the estates impossible.

Dismissal for cause under 11 U.S.C. § 707(a) is therefore warranted. At a minimum, immediate corrective and protective relief is required to preserve the integrity of the bankruptcy process and prevent further dissipation of assets.

## II. DETAILED FACTUAL BACKGROUND

**A. The Alleged Transaction Was an Unapproved Asset Sale That Never Conveyed Operational Authority**

At the § 341 meeting of creditors, Thomas G. Martin admitted under oath that the transaction underlying these cases was an **asset purchase**, not a membership-interest acquisition. This admission is critical. Under both Louisiana dealership law and the applicable manufacturer Sales and Service Agreements, asset sales do not transfer dealer authority, licensure, or operational control absent express written approval.

Ford Motor Company repeatedly rejected the proposed transfer and expressly advised that Martin would be listed only as an "investor," a classification that confers no managerial or operational authority. The Louisiana Motor Vehicle Commission likewise never approved any transfer of licensure, ownership, or dealer-operator status.

Despite these denials, Martin exercised control over dealership operations, banking, and inventory under the dealer license of Jason Bullock, effectively operating as a de facto dealer without legal authority. This conduct renders the alleged transaction void ab initio under Louisiana law and constitutes a material misrepresentation in the bankruptcy filings.

**B. The Bankruptcy Schedules Contain Irreconcilable and Mutually Exclusive Asset Claims**

The Debtors' schedules list the same vehicles, VIN-identified inventory, and dealership assets in both the Arcadia Motors and Claiborne Automotive Group cases. This is not a matter of valuation or categorization—it is an impossibility. A single vehicle cannot simultaneously be property of two separate Chapter 7 estates.

Such dual listing violates 11 U.S.C. § 521(a)(1) and Fed. R. Bankr. P. 1007 and 1008, which require complete, accurate, and truthful disclosure. The failure to clearly identify which estate owns which assets prevents trustees from administering the estates and impairs creditors' rights, thereby constituting cause for dismissal under § 707(a).

**C. Unlicensed Floorplan Financing and Commingling of Proceeds Undermine Claim Validity**

The record reflects that Vera Bank extended floorplan and credit facilities to entities that lacked LMVC licensure, including Car Giant of Texas LLC. Under Louisiana law, unlicensed entities are prohibited from acquiring or selling motor vehicle inventory, and any security interests arising from such transactions are unenforceable.

Proceeds from vehicle sales were routed through unrelated DBAs and bank accounts, including accounts registered to inactive or mismatched LLCs. This commingling obscures ownership, frustrates lien tracing, and renders claims unenforceable under applicable non-bankruptcy law, mandating disallowance under 11 U.S.C. § 502(b)(1).

The structure of these transactions also raises avoidance issues under §§ 544 and 548 and necessitates Rule 2004 discovery to determine the full scope of transfers, beneficiaries, and concealment.

**D. The Debtors Violated a Bienville Parish Court Order and Louisiana Title Laws**

On September 24, 2024, the Bienville Parish court entered a consolidation and protective order restricting the divestiture of disputed inventory. Notwithstanding that order, Martin sold, registered, and transferred vehicles subject to the order and submitted false affidavits to obtain duplicate titles.

These actions violate La. R.S. 32:701–708 and constitute post-order dissipation of property. Bankruptcy courts routinely find that such conduct establishes "cause" for relief from stay under 11 U.S.C. § 362(d)(1), particularly where the stay is invoked to frustrate state-court jurisdiction rather than preserve estate value.

### E. LMVC Enforcement Proceedings Confirm the Absence of Good Faith

The Louisiana Motor Vehicle Commission issued an interlocutory **cease-and-desist order** citing improper ownership, unlicensed operations, and untitled consumer vehicles. These findings independently confirm that the Debtors were not operating lawfully at the time of filing.

Regulatory enforcement actions fall squarely within the police-power exception of § 362(b)(4). The bankruptcy filings cannot be used as a shield against such actions, and the existence of active regulatory proceedings weighs heavily in favor of dismissal for bad faith.

### F. Trade Name and DBA Misrepresentation Corrupts Estate Identity

The Debtors operated under inconsistent and improperly registered trade names, including "JPS Motors," "JPS Ford," and "Car Giant Chevrolet GMC of Homer." In multiple instances, bankruptcy schedules attribute assets and liabilities to entities that do not legally own or operate the trade name in question.

Louisiana law requires accurate registration and disclosure of trade names and prohibits unlicensed dealership operations. Misrepresenting the operating entity undermines the Court's ability to identify the true debtor, determine estate property under § 541, and administer claims. Such conduct constitutes a fraud upon the Court.

### G. Use of Inactive Entities and False Banking Representations

Bank accounts were maintained in the names of inactive or misidentified LLCs and used in connection with dealership operations. These misrepresentations to financial institutions and regulators support findings of bad faith and warrant sanctions, as well as referral for investigation under 18 U.S.C. §§ 152, 1343, 1344, and 1014.

## III. GOVERNING LEGAL STANDARDS

### A. Dismissal for Cause Under 11 U.S.C. § 707(a)

The Fifth Circuit recognizes that bankruptcy filings made for an improper purpose—such as delaying creditors, manipulating jurisdiction, or legitimizing unlawful conduct—constitute "cause" for dismissal. *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986); *In re Humble Place Joint Venture*, 936 F.2d 814 (5th Cir. 1991).

The indicia of bad faith identified by the Fifth Circuit—concealment of assets, misuse of the automatic stay, and lack of a valid reorganization or liquidation purpose—are all present here.

### B. Relief From the Automatic Stay Under § 362(d)(1)

Cause exists where the stay is used as a litigation tactic rather than to preserve estate value, particularly when state-court orders and regulatory actions are implicated.

### C. False Schedules, Sanctions, and the Court's Inherent Authority

False or misleading schedules justify dismissal, sanctions, and corrective orders. *Beaubouef v. Beaubouef*, 966 F.2d 174 (5th Cir. 1992). Bankruptcy courts possess broad authority under § 105(a) and Rule 9011 to address abuses of the process.

### D. Chapter 7 LLC Debtors Are Not Eligible for Discharge

As a matter of law, Chapter 7 LLC debtors are ineligible for discharge. 11 U.S.C. § 727(a)(1). Accordingly, these filings provide no legitimate bankruptcy benefit that would outweigh the demonstrated abuse.

## IV. APPLICATION TO THE PRESENT CASES

The Debtors' conduct satisfies every Fifth Circuit criterion for bad faith. The filings were not intended to administer estates but to sanitize an unlawful transaction, obstruct enforcement, and obscure ownership. No amendment to the schedule can cure the underlying illegality of the operations at issue.

## V. THE COURT'S INDEPENDENT AUTHORITY AND DUTY TO ADDRESS ABUSE

Bankruptcy courts possess both statutory and inherent authority to prevent abuse of the bankruptcy process and to protect the integrity of the system. See 11 U.S.C. § 105(a); In re Little Creek Dev. Co., 779 F.2d 1068 (5th Cir. 1986). Where, as here, the record reflects pervasive misrepresentation, concealment of assets, misuse of the automatic stay, and lack of a legitimate bankruptcy purpose, the Court may act to dismiss the case, impose sanctions, or order corrective relief even in the absence of creditor objection.

## VI. CONCLUSION

For all of the foregoing reasons, the Court should grant the Omnibus Motion in full, dismiss these cases for cause, or alternatively impose immediate and comprehensive remedial relief to protect creditors, regulators, and the integrity of the bankruptcy system.

_____
Lawrence Vaughn
Pro Se
133 Railroad Avenue
Mangham, La 71259
lawrence@wisecdjr.com
318.267.1396