**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

FILED

JAN 1 3 2026

EDWARD A. TAKARA, CLERK
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT of LOUISIANA

CASE NO. 25-11050                              CHAPTER 7

Arcadia Motors, LLC

CONTESTED MATTER (☐) or
ADVERSARY PROCEEDING NO. _____

**EXHIBIT LIST To be offered by Lawrence Vaughn, Pro Se**

| DESIGNATION | DESCRIPTION | IDENTIFIED | ADMITTED |
|---|---|---|---|
| 1 | Ford SSA Rejection/Consent Letter (June 10, 2024) | | |
| 2 | Bienville Parish Order (October 22, 2024) and proposed order; registry/concursus filings | | |
| 3 | LMVC Interlocutory Cease-and-Desist; consumer title/registration complaints | | |
| 4 | Security Agreements for Arcadia, Car Giant of Texas LLC | | |
| 5 | Bankruptcy schedules/amendments demonstrating dual listing across estates | | |
| 6 | Original JPS Motors LLC filings with the Secretary of State of Louisiana | | |
| 7 | Original Arcadia Motors LLC filings with the Secretary of State in Louisiana | | |
| 8 | JPS Motors LLC Trade Name registration with the | | |

| | | | |
|---|---|---|---|
| | Secretary of State in Louisiana | | |
| 9 | Arcadia Motors LLC Trade Name registration with the Secretary of State in Louisiana | | |
| 10 | JPS Motors' bank statement showing Jason Bullock as the owner, mailed to him after the 100% transfer | | |
| 11 | Claiborne Automotive Group bank statement showing the account used to operate the Claiborne Automotive Group DBA Car Giant Chevrolet GMC was using a different DBA listed as John McKee Chevrolet Buick GMC | | |
| 12 | John R. McKee LLC DBA John McKee Chevrolet Buick GMC registration with the Secretary of State of Louisiana | | |
| 13 | John McKee Chevrolet Buick GMC trade name registration with the Secretary of State of Louisiana | | |
| 14 | Claiborne Automotive Group registration with the Secretary of State in Louisiana | | |
| 15 | Car Giant Trade Name registration with the Secretary of State in Louisiana | | |
| 16 | Car Giant of Bossier LLC registration with the Secretary of State in Louisiana | | |
| 17 | Car Giant Chevrolet | | |

| | | | |
|---|---|---|---|
| | GMC of Homer trade name registration with the Secretary of State in Louisiana does not show the proper DBA designation for a Louisiana entity | | |
| 18 | Car Giant Chevrolet of Homer trade name registration with the Secretary in State of Louisiana, with Claiborne Automotive Group LLC as the registered entity | | |
| 19 | Car Giant of Texas LLC registration with the Secretary of State in Louisiana | | |
| 20 | Bank Agreement from Gibsland Bank for Claiborne Automotive Group listing John McKee Chevrolet Buick GMC as a DBA | | |
| 21 | LMVC letter identifying the proper licensing entities | | |
| 22 | LMVC ownership record dated 09/09/2024 | | |
| 23 | Checks issued from Vera Bank to Car Giant and JPS Ford | | |
| 24 | Hearing Notice from the LMVC to JPS Motors LLC | | |
| 25 | Ford Motor Company Amendment to Ford Sales and Service Agreement | | |
| 26 | Bill of Sale for the transfer of 100% of JPS Motors LLC | | |
| 27 | LMVC licensee application listing the | | |

| | | | |
|---|---|---|---|
| | ownership and listing Jason Bullock as the licensee | | |
| 28 | Copy of the JPS Motors LLC DBA JPS Ford Dealer License listing Jason Bullock as the Dealer-Operator | | |
| 29 | Email of Reimbursements from Jason Bullock indicating he was being paid to be the Dealer Principal consultant, as Mr. Martin was not approved to be the Dealer-Operator, and paid Jason Bullock to misrepresent the status of ownership | | |
| 30 | Email correspondence from a Ford Motor Company representative stating that Arcadia Motors would be listed as Investor Only, which is an F3 and comes with no managerial authority | | |
| 31 | Email correspondence from Ford Motor Company dated September 2023, after the August 2023 Asset Purchase Agreement | | |
| 32 | Email correspondence from Jason Bullock acknowledging the sale of the remaining 64% he owned to Ford Motor Company, along with the Asset Purchase Agreement | | |
| 33 | Letter from Stephen J. | | |

| | | | |
|---|---|---|---|
| | Paine dated October 2023 that Martin and Griggs owned 100% and listed Arcadia Motors LLC DBA Arcadia Ford, directly contradicting the bankruptcy filing of the DBA as JPS Motors LLC | | |
| 34 | Email correspondence from a Ford Motor Company representative, November 30, 2023, stating documents were still needed to complete the transfer process | | |
| 35 | An Agreement signed by Martin listing both stores for sale with a brokerage firm named DSMA, dated November 25, 2023, before the email and meeting with a Ford Motor Company representative requesting more information for the transfer. Signed only by Martin as the owner of JPS Ford and Car Giant Chevrolet GMC of Homer | | |
| 36 | Ford SSA Rejection/Consent Letter (April 23, 2024), denying the transfer of the submitted Documents dated August 1, 2023 | | |
| 37 | Letter from attorney Stephen J. Paine dated June 25, 2024, stating | | |

| | | | |
|---|---|---|---|
| | that he represented Martin and Arcadia Motors, who in this letter, DBA JPS Ford contradict his previous letter, and also mentioning that the sale was completed on August 1, 2023 which was sent to Ford Motor Company, whom in their communications denied the transfer on the same date | | |
| 38 | Invoices from General Motors showing cars were sold to Car Giant Chevrolet GMC of Homer and not Car Giant of Texas LLC or Arcadia Motors LLC, which had the security agreements with Vera Bank to purchase cars but did not have the license or authority granted by the LMVC to do so | | |
| 39 | Certificate of Origin for a New Ford Vehicle showing the owner of the vehicle to be JPS Ford and not Car Giant of Texas LLC or Arcadia Motors LLC, which had the security agreements with Vera Bank to purchase cars but did not have the license or authority granted by the LMVC to do so | | |
| 40 | JPS Motors LLC Bank Statements dated | | |

| | 05/31/2024 and 06/30/2024 showing Ford Motor Company depositing to JPS Motors LLC and debits for vehicles purchased in the name of JPS Ford with VINs, this is after the August 1, 2023 illegal transfer and denial letters sent by Ford in April and June 2024, Jason Bullock still is listed as the receiver of mail and signing checks for JPS indicating the transfer had not taking place and his role with the organization after the claims of 100% of the company being sold. Additionally, there are debits from ACV Capital LLC for the purchase of used vehicles under the JPS Ford trade name. | | |
|---|---|---|---|

_Lawrence Vaughn_

1-13-26

Lawrence Vaughn



**Ford Motor Company**
**Marketing, Sales & Service**

Memphis Region
65 Germantown Court
Cordova, TN 38018

June 10, 2024

Jason P. Bullock and Thomas G. Martin
JPS Ford
224 Gap Farms Road
Arcadia, LA 71001

Dear Mr. Bullock and Mr. Martin,

It has come to Ford Motor Company's ("Ford") attention that JPS Ford and Arcadia Motors, LLC improperly transferred 100% of JPS Ford's ownership to Arcadia Motors without Ford's consent. Further, and shockingly, this transfer occurred after Ford rejected the proposal to do so. See our previous letter dated April 23, 2024. This transfer violates the terms of the Sales and Service Agreement ("SSA") because you did not obtain consent from Ford. The SSA describes various obligations and responsibilities of the Dealer. In particular, the SSA provides in Paragraph F(iii):

> "The Dealer shall give [Ford] prior notice of any proposed change in the said ownership or managerial authority, and immediate notice of the death or incapacity of any such person. No such change or notice, and no assignment of this agreement or of any right or interest herein, shall be effective against [Ford] unless and until embodied in an appropriate amendment to or assignment of this agreement, as the case may be, duly executed and delivered by [Ford] and by the Dealer."

Paragraph 17(b) of the Standard Provisions of the SSA permits Ford to terminate or not renew the SSAs under certain circumstances, including:

> Any transfer or attempted transfer by the Dealer of any interest in, or right, privilege or obligation under this agreement; . . . or any change, however accomplished, without the Company's prior written consent, which consent shall not be unreasonably withheld, in the direct or indirect ownership or operating management of the Dealer as set forth in Paragraph F.

Paragraph 17(b) of the Standard Provisions of the SSA also provides for termination or nonrenewal for "[a]ny misrepresentation in applying for this agreement by the Dealer or any person named in Paragraph F . . ."

As a result, please respond to this letter no later than June 20, 2024, and provide verified details regarding the ownership of JPS Ford. Ford reserves all of its rights under both the SSA and applicable law.

In addition, we are in receipt of the Dealer Asset Purchase and Sale Agreement ("Asset Purchase Agreement") between JPS Motors, LLC and Arcadia Motors, LLC and Superior Automotive Group, LLC. Without waiving any rights or remedies Ford has regarding the improper transfer noted above, at this time we are unable to grant approval for the consummation of the submitted Asset Purchase Agreement, sent to Ford on May 7th, 2024. Ford Motor Company reviews this type of request with certain criteria by analyzing standard performance metrics. It is our standard practice to review these criteria that we refer to as the Four Cs. The guidelines for our Four Cs are as follows:

Buy-Sell Rejection Letter Template w/ NPS
GIS1: 7.06
GIS2 Classification: CONFIDENTIAL

Template Revised: 1/2/2024
Retention Requirement: C+12

25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 8 of 235

JPS-000569_4.10.25

1. **Character:** Proposed Dealer candidates must exhibit ethical and honest practices. They must have sound personal and financial reputations as well as the respect of their community.

2. **Capacity:** Extensive retail automotive knowledge and experience is necessary as a Dealer candidate. Successful Dealer candidates demonstrate a history of acceptable profitability, car and truck sales performance, and parts and service operations compared with their respective manufacturer's averages.

   Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

   - 12 month rolling numbers for Dealer Reported Sales as a % Sales Expectancy for Car **AND** Truck **TOTAL**
   - The minimum standard is performance that is 100% of Sales Expectancy (State Average).

3. **Customer Satisfaction:** Ford Motor Company places a high degree of importance on customer satisfaction in evaluating our Ford Lincoln dealerships. Successful Dealer candidates must demonstrate total dedication to quality and customer service.

   Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

   - 12 month rolling numbers for Sales Net Promoter Score **AND**
   - 12 month rolling numbers for Service Net Promoter Score
   - The minimum standard is performance that is 100% of Group Average

4. **Capital:** Sufficient unencumbered capital is critical to the success of a dealership, particularly given the cash required for necessary vehicle inventory, parts inventory, and accounts receivables. Successful Dealer candidates have an established history of profitability and meet or exceed our working capital requirements.

   Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

   - 100% of established Working Capital guides **AND**
   - Must maintain Working Capital guides for minimum of 9 out of 12 months

We trust you can understand that, in matters of this nature, Ford Motor Company must adhere to established policies to ensure continued success for our Dealer partners. Based on our Four Cs guidelines we have thoroughly evaluated your proposed candidates. After careful analysis of your proposal, Ford Motor Company must reject your request for ownership transfer due to a failure to meet the required benchmarks of the Capacity and Customer Satisfaction section guidelines stated above. The metrics the Candidates have provided do not meet the minimum Sales Expectancy or Customer Satisfaction guidelines established, and for this reason we must move forward with rejection. This is in addition to the serious issues related to the ownership transfer noted above and violations of the SSA.

Buy-Sell Rejection Letter Template w/ NPS
GIS1: 7.06
GIS2 Classification: CONFIDENTIAL

Template Revised: 1/2/2024
Retention Requirement: C+12

JPS_000570 4.10.25

25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 9 of 235

DocuSign Envelope ID: 67B39696-062D-47A3-BA68-062159D9CCE3

As always, any proposed changes to paragraph F of the Sales and Service Agreements require Ford Motor Company's prior approval. In the future, if you would like to submit any other proposals for our review, please contact your Regional Sales Performance Manager.

If you have any questions, please do not hesitate to contact me at 214-334-2744 or your Sales Performance Manager.

Sincerely,

Greg Houston

Greg Houston
Regional Manager

Buy-Sell Rejection Letter Template w/ NPS
GIS1: 7.06
GIS2 Classification: CONFIDENTIAL

Template Revised: 1/2/2024
Retention Requirement: C+12

JPS_000571_4.10.25

25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 10 of 235



D2714319

# NOTICE OF JUDGMENT/
# CERTIFICATE OF NOTICE OF
# JUDGMENT

| | |
|---|---|
| JPS MOTORS, L.L.C. | SECOND JUDICIAL DISTRICT |
| VS | DOCKET NUMBER: C-46680 B |
| SUPERIOR AUTOMOTIVE GROUP, LLC | BIENVILLE PARISH CLERK OF COURT, LOUISIANA |

BOBBY MANNING
320 PINE STREET
MONROE, LA 71201

Parish of BIENVILLE

**YOU ARE HEREBY NOTIFIED** that a Judgment was rendered on 10/22/2024 in the above numbered and entitled matter, a certified copy of said Judgment is annexed hereto and made a part hereof.

*[signature]*

BIENVILLE PARISH CLERK OF COURT
DEPUTY CLERK FOR
WILLIAM "EDDIE" HOLMES, CLERK OF
COURT

### CERTIFICATE OF NOTICE OF JUDGMENT

**I, THE UNDERSIGNED DEPUTY CLERK, DO HEREBY CERTIFY** that this Notice of Judgment in the above entitled suit was mailed out to the party listed above on OCTOBER 23, 2024.

*[signature]*

BIENVILLE PARISH CLERK OF COURT
DEPUTY CLERK FOR
WILLIAM "EDDIE" HOLMES, CLERK OF
COURT

Bienville Parish Clerk of Court   C-46680
Filed Oct 21, 2024 9:31 AM           B
SARAH HOLLIS
Deputy Clerk of Court
E-File Received Oct 20, 2024 10:51 PM

Bienville Parish Clerk of Court   C-46680
Filed Oct 23, 2024 10:15 AM          B
SARAH HOLLIS
Deputy Clerk of Court

FILED
Bienville Parish
Clerk of Court

OCT 23 2024

Deputy Clerk

JPS MOTORS, L.L.C., ARCADIA MOTORS,    SUIT NO.: C-46680 B
L.L.C., CLAIBORNE AUTOMOTIVE GROUP,
L.L.C. and THOMAS G. MARTIN

VERSUS    SECOND JUDICIAL DISTRICT COURT

SUPERIOR AUTOMOTIVE GROUP, LLC    BIENVILLE PARISH, LOUISIANA
AND LAWRENCE VAUGHN

*consolidated with*

JPS MOTORS, L.L.C., ARCADIA MOTORS,    SUIT NO.: B-46681-B
L.L.C. AND CLAIBORNE AUTOMOTIVE
GROUP, L.L.C

VERSUS    SECOND JUDICIAL DISTRICT COURT

SUPERIOR AUTOMOTIVE GROUP, L.L.C.,    BIENVILLE PARISH, LOUISIANA
LAWRENCE VAUGHN, AND GIBSLAND
BANK & TRUST COMPANY

*and consolidated with*

CLAIBORNE AUTOMOTIVE GROUP    SUIT NO.: C-46697 C
L.L.C. and THOMAS G. MARTIN

VERSUS    SECOND JUDICIAL DISTRICT COURT

SUPERIOR AUTOMOTIVE GROUP, LLC    BIENVILLE PARISH, LOUISIANA
AND LAWRENCE VAUGHN

---

## ORDER

This matter was taken up on September 24, 2024, on several motions and exceptions (as described herein) and Plaintiffs' *Petition for Quo Warranto*.

PRESENT:    Jerald R. Harper and Anne E. Wilkes, Counsel for JPS Motors, LLC, Arcadia Motors, LLC, Claiborne Automotive Group, LLC, and Thomas G. Martin ("Plaintiffs"); and,

     Bobby Manning and Larry English, Counsel for Superior Automotive Group, LLC and Lawrence Vaughn ("Defendants");

This Court, after considering the record, memoranda, and the facts and evidence, and arguments of counsel, and for the reasons orally assigned in open court on September 24, 2024,

*Motion to Consolidate*

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the *Motion to Consolidate* filed by Plaintiffs (filed 8/30/24) is hereby **GRANTED** and that the three actions

Page 1 of 5

bearing docket numbers C-46680-B, C-46681-C, C-46697-C, are hereby consolidated in Section B of the Second Judicial District Court, Bienville Parish, Louisiana.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all records maintained heretofore shall be kept separate and all pleadings filed hereafter shall bear the consolidated caption for purposes of record and will be filed and maintained in the suit record first filed, namely docket number C-46680-B.

### Motion to Strike Declinatory Exception of Improper Venue

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED THAT the *Motion to Strike* Defendants' declinatory exception of improper venue filed by Plaintiffs (filed 9/11/24) in both C-46680-B and C-46681-C is hereby **DENIED**.

### Declinatory Exception of Improper Venue

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT the *Declinatory Exception of Improper Venue* filed by Vaughn (filed 8/23/24) in C-46681-C; the *Declinatory Exception of Improper Venue* filed by Vaughn (filed 8/28/24) in C-46680-B; the *Declinatory Exception of Improper Venue* filed by Superior (filed 8/28/24) in C-46680-B; the *Declinatory Exception of Improper Venue* filed by Superior and Vaughn (filed 8/29/24) in C-46680-B; and the *Declinatory Exception of Improper Venue* filed by Superior and Vaughn (filed 8/29/24) in C-46681-C are hereby **DENIED**.

### Peremptory Exceptions of No Cause of Action and No Right of Action

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED THAT the *Memorandum in Support of Defendants Peremptory Exception of No Cause of Action and No Right of Action* filed by Defendants and Patrick Campbell (filed 9/10/24); and, the *Supplemental Memorandum in Support of Defendants' Peremptory Exception of No Cause of Action and No Right of Action* filed by Defendants (filed 9/12/24) are hereby **DENIED**.

### Peremptory Exception Based on Improper Proceedings

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that the *Memorandum in Support of Petition for Peremptory Exception Based on Improper Proceedings* filed by Defendants and Patrick Campbell (filed 9/10/24); and, the *Memorandum in Support of*

*Petition for Peremptory Exception Based on Improper Proceedings* filed by Defendants (filed 9/12/24), having been withdrawn during the September 24, 2024, hearing are hereby moot.

*Declinatory Exception of Insufficiency of Service of Process, Dilatory Exception of Improper Cumulation, and Dilatory Exception of Vagueness and Ambiguity*

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that the *Declinatory Exception of Insufficiency of Service of Process, Dilatory Exception of Improper Cumulation, and Dilatory Exception of Vagueness and Ambiguity* filed by Plaintiffs (filed 9/12/24), the exception of insufficiency of service of process having been cured and withdrawn by Plaintiffs, is hereby **GRANTED**, and the *Reconventional Demand* filed by Vaughn (filed 8/28/24) and the *Reconventional Demand* filed by Superior (filed 8/28/24) in connection with the *Petition for Writ of Quo Warranto* are hereby **DISMISSED WITH PREJUDICE.**

*Reconventional Demand*

IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED that the *Reconventional Demand* filed by Vaughn (filed 8/28/24) and the *Reconventional Demand* filed by Superior (filed 8/28/24) is moot, in light of the granting of Plaintiffs' "Declinatory Exception of Insufficiency of Service of Process, Dilatory Exception of Improper Cumulation, and Dilatory Exception of Vagueness and Ambiguity", and dismissal of same, as discussed above.

*Motion to File Supplement to Plaintiffs' Petition for Quo Warranto*

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that the *Motion to File Supplement to Plaintiffs' Petition for Quo Warranto* filed by Plaintiffs (filed 9/19/24) is hereby **GRANTED.**

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that the that "Supplement to Plaintiffs' Petition for Quo Warranto" (filed as "Exhibit "A"" to the "Motion to File Supplement to Plaintiffs' Petition for Quo Warranto") be filed into the record.

*Motion to Strike Plaintiffs Motion to File Supplement to Plaintiffs' Petition for Quo Warranto*

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that the *Motion to Strike Plaintiffs' Motion to File Supplement to Plaintiffs' Petition for Quo Warranto* filed by Defendants (filed 9/19/24) is hereby **DENIED.**

*Motions to Dismiss Petition for Quo Warranto as Moot*

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the *Motion to Dismiss Petition for Quo Warranto as Moot* filed by Defendants (filed 9/13/24 at 9:10 am) and the *Motion to Dismiss Petition for Quo Warranto as Moot* filed by Defendants (filed 9/13/24 at 11:17 am) are **DENIED.**

*Petition for Quo Warranto*

FINALLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the *Petition for Quo Warranto* filed by Plaintiffs (filed 8/6), as supplemented (above), is hereby **GRANTED.** Defendants, Superior Automotive Group, L.L.C. and Lawrence Vaughn are hereby ordered to return any and all assets belonging to Plaintiffs to the Plaintiffs; however, if there are any disputes as to ownership of those assets, that those disputes be resolved at trial. Further, Defendants are hereby ordered to complete an accounting and file same into the record within thirty (30) days of this Court's oral (September 24, 2024) ruling. Further, any and all funds being held by Gibsland Bank & Trust in connection with this matter are to be deposited into the Registry of the Court, with a determination to be made at trial as to any claims in connection with those funds.

THUS DONE AND SIGNED in *Bienville* Parish, Louisiana, on this 28ᵗʰ day of *October*, 2024.

_____
DISTRICT JUDGE

Judgment Prepared By:

HARPER LAW FIRM
*(A Professional Law Corporation)*
BY:   /s/ Anne E. Wilkes
    Jerald R. Harper, La. Bar No.: 06585
    harper@harperfirm.com
    Anne E. Wilkes, La. Bar No.: 36729
    anne@harperfirm.com
    213 Texas Street
    Shreveport, Louisiana 71101
    (318) 213-8800 (telephone)
    (318) 213-8804 (facsimile)

KITCHENS LAW FIRM

    Graydon K. Kitchens, III, La. Bar No.
    20252
    420 Broadway Street [71055]
    Post Office Box 740
    Minden, Louisiana 71058-0740
    (318) 377-5331 [telephone]
    (318) 377-5361 [facsimile]
    gray@kitchenslawfirm.com

**ATTORNEYS FOR PLAINTIFFS, JPS MOTORS, L.L.C., ARCADIA MOTORS, L.L.C., CLAIBORNE AUTOMOTIVE GROUP, L.L.C., and THOMAS G. MARTIN**

Judgment Approved as to Form and Content
By:

MANNING LAW FIRM, APLC               LARRY ENGLISH, ATTORNEY AT LAW

BY  /s/ Bobby R. Manning              BY:  /s/ Larry English
    Bobby R. Manning, La. Bar No. 25452     Larry English, La. Bar No. 22772
    bobby@bobbymanning.com                  Englishlaw2008@gmail.com
    Brennan R. Manning, La. Bar No. 39032   423 West 127 Street, 7th Floor
    brennan@bobbymanning.com                New York, New York 10027
    320 Pine Street                         (917) 531-3909 (telephone)
    Monroe, Louisiana 71201
    (318) 324-1411 (telephone)
    (318) 516-2630 (facsimile)

ATTORNEYS FOR SUPERIOR AUTOMOTIVE GROUP, LLC and LAWRENCE
VAUGHN


PLEASE MAIL CONFORMED COPIES
(NOTICE OF JUDGMENT) TO:

HARPER LAW FIRM, APLC
Jerald R. Harper and Anne E. Wilkes
213 Texas Street
Shreveport, Louisiana 71101


KITCHENS LAW FIRM
Graydon K. Kitchens, III
420 Broadway Street
Minden, Louisiana 71055


MANNING LAW FIRM, APLC
Bobby R. Manning
320 Pine Street
Monroe, Louisiana 71201


LARRY ENGLISH, ATTORNEY AT LAW
Larry English
423 West 127 Street, 7th Floor
New York, New York 10027

And

ROGERS, CARTER & PAYNE, LLC
E. Keith Carter
4415 Thornhill, Second Floor Suite A
Shreveport, Louisiana 71106



## State of Louisiana
### LOUISIANA MOTOR VEHICLE COMMISSION

Jeff Landry
Governor

Lessie A. House
Executive Director

*Via Email: tommyswhsl@yahoo.com, Certified Mail, and Hand Delivery*

*Certified Mail #7021 0350 0000 5267 7421*

Hand-Delivered
Received by: _____
Date/Time: 2/2/24  4:05 pm
Delivered by: _____

TO:   JPS MOTORS, L.L.C.
      DBA JPS FORD
      c/o Its Registered Agent for Service of Process
      Thomas Martin
      224 Gap Farms Road
      Arcadia, Louisiana 71001

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### IN RE: JPS Motors, L.L.C. DBA JPS FORD
### 224 Gap Farms Road, Arcadia, Louisiana 70110

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DOCKET NO. 2024-092

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### INTERLOCUTORY

### CEASE AND DESIST ORDER

**WHEREAS** the Louisiana State Legislature authorized the Louisiana Motor Vehicle Commission ("Commission") to administer certain laws including but not limited to La. R.S. 32:1251 et seq. and La. R.S. 6:969.1 et seq.;

**WHEREAS** La. R.S. 32:1259.B(1) provides that if it appears to the Commission at any time a person is violating the provisions of law administered by the Commission or any rule or order of the Commission, it shall notify the person engaged in such conduct to appear and show cause why a Cease and Desist order should not be issued prohibiting the proscribed conduct;

**WHEREAS** an Interlocutory Cease and Desist order may issue by the Commission with or without bond or other undertaking if such an order is necessary to the performance of the duties delegated to the commission by this Chapter or is otherwise necessary or convenient to maintaining the status quo between two or more adverse parties before the commission;

**WHEREAS** La. R.S. 32:1259.B(2) provides that an Interlocutory Cease and Desist order shall remain in effect until vacated or until incorporated into a final Commission order;

**WHEREAS**, the following information has been brought to the attention of the Commission:

**I.**   **On or in proximity to April 11, 2024:**

 **A.**   The Commission obtained information that Jason Bullock and Arcadia Motors LLC entered into a buy/sell agreement for JPS Motors, LLC (hereinafter "JPS") creating a change of ownership of JPS, and JPS did not amend its license to reflect a change of ownership as required by law.

 **B.**   As JPS did not disclose this change of ownership and management to the Commission and did not apply for the appropriate licenses from the Commission, JPS caused the public record maintained by the Commission to contain false information.

 **C.**   JPS submitted a buy/sell agreement to Ford Motor Company (hereinafter "Ford") and identified Mr. Blachford as its manager, although Mr. Blachford no longer worked for JPS.

 **D.**   Ford rejected the buy/sell agreement entered into by Jason Bullock and Arcadia Motors LLC creating a reasonable doubt as to whether Ford would grant a franchise to the new ownership group of JPS.

**II.**   **On or in Proximity to April 16, 2024:**

A&G Motors had/has an ownership interest in Arcadia Motors (hereinafter "Arcadia"). Arcadia has a membership interest in JPS. A&G Motors sold six (6) motor vehicles to JPS and has not been paid for these purchases. When investigating this allegation of non-payment by JPS, the Commission found that the bills of sale for these six (6) vehicles were neither signed nor notarized.

**III.**   **On or in Proximity to May 6, 2024:**

The Commission received a consumer complaint by Mr. L.E. against JPS. This consumer complained that he purchased two motor vehicles from JPS in December 8, 2023, and neither of these vehicles were registered or titled in the consumer's name.

**IV.**   **On or in Proximity to May 9, 2024:**

JPS_000575-4.10.25

The Commission dispatched investigators to JPS where they met with the dealer-operator of of JPS, Mr. Jason Bullock. When questioned about Mr. L. E.'s consumer complaint (See May 6, 2024, *supra*), Mr. Bullock admitted that those two (2) vehicles were neither titled nor registered. When questioned about the six (6) motor vehicles sold by A&G Autos Sales to JPS (See April 16, 2024, *supra*), Mr. Bullock stated that he had no knowledge of this. While at JPS, a Commission investigator conducted a sample review of twenty-five (25) random motor vehicle sales on financed or cash transactions for new and used vehicles. This investigative exercise revealed that fourteen (14) of the twenty-five (25) motor vehicles had yet to be registered; that JPS overcharged mortgage fees on two (2) of the motor vehicles; and that JPS overcharged for temporary tag fees on twenty-one (21) of these motor vehicle sales.

**V.     On or in Proximity to May 14, 2024:**

Prior to May 14, 2024, a Commission investigator asked for a list of JPS's motor vehicle sales through that date. JPS delivered a list of sales to a Commission investigator, but only through February 2024.

**VI.     On or in Proximity to May 16, 2024:**

A commission investigator called JPS to speak with Lawrence Vaughn or Jason Bullock concerning registration of the two (2) motor vehicles (see May 6, 2024 *supra*.) and the six (6) motor vehicles (see May 9, 2024, *supra*.) Neither were available at that time, and neither returned the investigator's telephone call that day.

**VII.     On or in Proximity to May 17, 2024:**

A commission investigator again telephoned JPS to speak with Lawrence Vaughn or Jason Bullock concerning registration of the two (2) motor vehicles (see May 6, 2024 *supra*.) and the (6) six motor vehicles (see May 9, 2024, *supra*.)   Neither were available at that time, and neither returned the investigator's telephone call that day.

**VIII.     On or in Proximity to May 21, 2024:**

Returning a phone call to a Commission investigator, Mr. Lawrence Vaughn of JPS stated that the six (6) vehicles (See April 16, 2024, *supra*.) had still not been registered.

**IX.     On or in Proximity to May 22, 2024:**

The Commission obtained information from the Department of Public Safety, Office of Motor Vehicles which revealed that JPS sold a substantial number of motor vehicles which had not been registered.

**X.     Subsequent Information:**

In addition to the above, the Commission found the following discrepancies to warrant its concern that JPS has acted, and continues to act, in violation of the laws administered by the Commission and to the detriment of the public and the state of Louisiana:

A. Failure to remit all state sales tax and fees collection on one-hundred and four (104) non-registered and/or non-titled vehicles for an amount in excess of $331,082.17, and in addition thereto, all penalties and interest owed because of late filing with the Louisiana Department of Safety, Office of the Department of Motor Vehicles;

B. Failure to remit payment on thirty-five (35) vehicle protection product contracts;

C. Failure to remit payment on eighteen (18) GAP contracts; and

D. Failure to satisfy (pay-out) the liens on vehicles traded-in to JPS Motors, L.L.C. DBA JPS Ford on the purchase of a motor vehicle on at least two (2) occasions.

**THEREFORE**, the Louisiana Motor Vehicle Commission has cause to believe:

I. JPS Motors, L.L.C. DBA JPS Ford no longer possesses all licensing and compliance requirements to continue in its operations as a New Motor Vehicle Dealer;

II. JPS Motors, L.L.C. DBA JPS Ford continues and will continue to sell vehicles and fail to deliver to the purchaser a certificate of title issued by the state of Louisiana within twenty (20) days of the purchase of the vehicle;

III. JPS Motors, L.L.C. DBA JPS Ford continues and will continue to not satisfy the liens on vehicles which may be traded-in on the purchase of a motor vehicle;

IV. JPS Motors, L.L.C. DBA JPS collected, and will continue to collect taxes in its sale of motor vehicles, and failed and will continue to fail to remit all taxes collected pursuant to La. R.S. 47:303(B) within forty (40) days from the date of the sale of the vehicle;

V. JPS Motors, L.L.C. DBA JPS Ford has failed and continues to fail to comply with the provisions of the laws, rules and regulations administered by the Louisiana Motor Vehicle Commission. JPS Motors, L.L.C. DBA JPS Ford has undergone a change in condition after the issuance of its license (#N-2022-00312) such that it no longer maintains the qualifications for its license, and that the public interest is no longer served by the continuance of the license issued to JPS Motors, L.L.C. DBA JPS Ford; and

VI. These actions are in violation of the laws, rules and regulations administered by the Louisiana Motor Vehicle Commission, and it appears that an interlocutory cease and

desist order is necessary for the performance of the duties delegated to the Commission.

In consideration of the above, the Louisiana Motor Vehicle Commission hereby issues the following Interlocutory Cease and Desist Order:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTERLOCUTORY

## CEASE AND DESIST ORDER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IT IS HEREBY ORDERED THAT JPS MOTORS, L.L.C. DBA JPS FORD IMMEDIATELY CEASE AND DESIST IN SALES OF NEW AND USED MOTOR VEHICLES AND THE SERVICE OF FORD WARRANTY REPAIRS.**

**IT IS FURTHER ORDERED** that JPS Motors, L.L.C. DBA JPS Ford show cause on 22th day of July, 2024 at 10:00 a.m. at the offices of the Louisiana Motor Vehicle Commission, 3017 Kingman Street, Metairie, Louisiana why this Interlocutory Cease and Desist Order shall not remain in effect until vacated or until incorporated into a final Commission order.

This _2nd_ day of July, 2024 at Metairie, Louisiana.

LESSIE HOUSE, EXECUTIVE DIRECTOR
LOUISIANA MOTOR VEHICLE COMMISSION



*0000000000097137000235072120223*

# VERABANK

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|-----|-------------|---------|---------|----------|
| $1,500,000.00 | 07-21-2023 | 07-21-2024 | | 4A / INV | *** | KRH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** ARCADIA MOTORS LLC (TIN: 88-1616561)
3117 W 70TH ST
SHREVEPORT, LA 71108-4605

**Lender:** VeraBank, National Association
Longview Downtown Branch
200 N Fredonia St
Longview, TX 75601-7209
(877) 566-2621

**THIS COMMERCIAL SECURITY AGREEMENT** dated July 21, 2023, is made and executed between ARCADIA MOTORS LLC ("Grantor") and VeraBank, National Association ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**All Inventory**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise. However, this Agreement shall not secure, and the "Indebtedness" shall not include, any obligations arising under Subchapters E and F of Chapter 342 of the Texas Finance Code, as amended.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all of Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of Inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Texas, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While

Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds 5,000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will be

apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Texas Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter, provided Lender does so without a breach of the peace or a trespass, upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by

court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.**

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Agreement occurred in GREGG County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of GREGG County, State of Texas.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means ARCADIA MOTORS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means ARCADIA MOTORS LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other Indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means VeraBank, National Association, its successors and assigns.

**Note.** The word "Note" means the Note dated July 21, 2023 and executed by ARCADIA MOTORS LLC in the principal amount of $1,500,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JULY 21, 2023.**

---

**GRANTOR:**

ARCADIA MOTORS LLC

By: *Thomas G. Martin*
    F4B6DC770EE945C...
    THOMAS G MARTIN, Manager of ARCADIA
    MOTORS LLC

**LENDER:**

VERABANK, NATIONAL ASSOCIATION
    DocuSigned by:

X *Ryan Hamilton*
    44DAE73E28C2460...
    Ryan Hamilton, Senior Vice President

LaserPro, Ver. 23.2.20.003  Copr. Finastra USA Corporation 1997, 2023.  All Rights Reserved.  - TX  - C:\HarPL\C43.FC  TR-16357  PR-72



*0000000000009599207023503132024*

VERABANK

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 03-13-2024 | 07-13-2024 | | 4A / INV | *** | KRH | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** CAR GIANT OF TEXAS LLC (TIN: 86-1676688)
5136 HIGHWAY 79
HOMER, LA 71040-2016

**Lender:** VeraBank, National Association
Longview Downtown Branch
200 N Fredonia St
Longview, TX 75601-7209
(877) 566-2621

**THIS COMMERCIAL SECURITY AGREEMENT dated March 13, 2024, is made and executed between CAR GIANT OF TEXAS LLC ("Grantor") and VeraBank, National Association ("Lender").**

**GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.**

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**All Inventory of Used Automobiles**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise. However, this Agreement shall not secure, and the "Indebtedness" shall not include, any obligations arising under Subchapters E and F of Chapter 342 of the Texas Finance Code, as amended.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Texas, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in

partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds 5,000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy;

Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Texas Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter, provided Lender does so without a breach of the peace or a trespass, upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and pay the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Agreement occurred in GREGG County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of GREGG County, State of Texas.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means CAR GIANT OF TEXAS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq., ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means CAR GIANT OF TEXAS LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means VeraBank, National Association, its successors and assigns.

**Note.** The word "Note" means the Note dated March 13, 2024 and executed by CAR GIANT OF TEXAS LLC in the principal amount of $1,000,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 13, 2024.**

DocuSign Envelope ID: 1A8131A1-DF4A-45EC-A816-248E9AC745E3

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

**GRANTOR:**

CAR GIANT OF TEXAS LLC

By: _____
THOMAS G MARTIN, Manager of CAR GIANT OF
TEXAS LLC

**LENDER:**

VERABANK, NATIONAL ASSOCIATION

X _____
Ryan Hamilton, Senior Vice President

LaserPro, Ver. 24.1.10.032 Copr. Finastra USA Corporation 1997, 2024. All Rights Reserved. - TX. c:\CFI\LPL\E40.FC. TR-151817 PR-72

☒ Check if this is an
amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:**   Cash and cash equivalents

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
☒ Yes Fill in the information below.
All cash or cash equivalents owned or controlled by the debtor

Current value of
debtor's interest

3. Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. Bonvenu Bank | Checking | 9140 | $12,379.00 |
| 3.2. Gibsland Bank & Trust (Closed) | Checking | | Unknown |
| 3.3. First Guaranty | Checking | 8429 | $0.00 |
| 3.4. VeraBank | Savings | 2180 | $666.24 |

4. Other cash equivalents *(Identify all)*

5. Total of Part 1.
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$13,045.24

**Part 2:**   Deposits and Prepayments

6. Does the debtor have any deposits or prepayments?

☒ No. Go to Part 3.
☐ Yes Fill in the information below.

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 1

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 1 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 32 of 235

## Part 3:    Accounts receivable

**10. Does the debtor have any accounts receivable?**

☒ No.  Go to Part 4.
☐ Yes Fill in the information below.

## Part 4:    Investments

**13. Does the debtor own any investments?**

☒ No.  Go to Part 5.
☐ Yes Fill in the information below.

## Part 5:    Inventory, excluding agriculture assets

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
☒ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19.** Raw materials | | | | |
| **20.** Work in progress | | | | |
| **21.** Finished goods, including goods held for resale | | | | |
| **22.** Other inventory or supplies<br>2024 GMC Yukon VIN #1GKS1DKL6RR137235<br>2024 Chevrolet Silverado VIN #1GCUDGEL6RZ308530<br>2022 Jeep Grand Cherokee VIN #1C4RJJDG6N8656162 | | $0.00 | | $120,500.00 |
| Parts Return & Special Tools | | $0.00 | | $110,000.00 |

**23. Total of Part 5.**

Add lines 19 through 22.  Copy the total to line 84.

                                                     $230,500.00

**24.**  **Is any of the property listed in Part 5 perishable?**
☒ No
☐ Yes

**25.**  **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☒ No
☐ Yes. Book value _____ Valuation method _____ Current Value _____

**26.**  **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☒ No
☐ Yes

## Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☒ No.  Go to Part 7.
☐ Yes Fill in the information below.

---

**Part 7:   Office furniture, fixtures, and equipment; and collectibles**

38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?

☐ No. Go to Part 8.
☒ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |
| 40. **Office fixtures** | | | |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** Desks, Computers, supplies, etc. | $0.00 | | Unknown |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

43. **Total of Part 7.**
   Add lines 39 through 42.   Copy the total to line 86.                                            $0.00

44. Is a depreciation schedule available for any of the property listed in Part 7?
   ☒ No
   ☐ Yes

45. Has any of the property listed in Part 7 been appraised by a professional within the last year?
   ☒ No
   ☐ Yes

---

**Part 8:   Machinery, equipment, and vehicles**

46. Does the debtor own or lease any machinery, equipment, or vehicles?

☐ No. Go to Part 9.
☒ Yes Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 49. **Aircraft and accessories** | | | |
| 50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** 3 key machines leased | $0.00 | | Unknown |

51. **Total of Part 8.**
   Add lines 47 through 50.   Copy the total to line 87.                                            $0.00

52. Is a depreciation schedule available for any of the property listed in Part 8?

☒ No
☐ Yes

53.  Has any of the property listed in Part 8 been appraised by a professional within the last year?
     ☒ No
     ☐ Yes

**Part 9:    Real property**

54. Does the debtor own or lease any real property?

     ☐ No.  Go to Part 10.
     ☒ Yes Fill in the information below.

55.  Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.  Lawsuit for Claim to funds on deposit in Guaranty Bank (Ruston) which are collateral of Vera Bank | | $0.00 | | $700,000.00 |

56.  **Total of Part 9.**                                                                            |  $700,000.00  |

     Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
     Copy the total to line 88.

57.  Is a depreciation schedule available for any of the property listed in Part 9?
     ☒ No
     ☐ Yes

58.  Has any of the property listed in Part 9 been appraised by a professional within the last year?
     ☒ No
     ☐ Yes

**Part 10:    Intangibles and Intellectual property**

59. Does the debtor have any interests in intangibles or intellectual property?

     ☒ No.  Go to Part 11.
     ☐ Yes Fill in the information below.

**Part 11:    All other assets**

70. Does the debtor own any other assets that have not yet been reported on this form?
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

     ☐ No.  Go to Part 12.
     ☒ Yes Fill in the information below.

                                                                              Current value of
                                                                              debtor's interest

71.    Notes receivable
       Description (Include name of obligor)

72.    Tax refunds and unused net operating losses (NOLs)
       Description (for example, federal, state, local)

Official Form 206A/B                   Schedule A/B Assets - Real and Personal Property                   page 4

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                        Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 4 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 35 of 235

73.   Interests in insurance policies or annuities

74.   Causes of action against third parties (whether or not a lawsuit
      has been filed)

| Claim for return of funds from Chad Griggs | | Unknown |
|---|---|---|
| Nature of claim | Insider transaction | |
| Amount requested | $105,000.00 | |

75.   Other contingent and unliquidated claims or causes of action of
      every nature, including counterclaims of the debtor and rights to
      set off claims

76.   Trusts, equitable or future interests in property

77.   Other property of any kind not already listed *Examples:* Season tickets,
      country club membership

78.   **Total of Part 11.**                                           $0.00

      Add lines 71 through 77. Copy the total to line 90.

79.   Has any of the property listed in Part 11 been appraised by a professional within the last year?
      ☒ No
      ☐ Yes

## Part 12:   Summary

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80.   **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $13,045.24 | |
| 81.   **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82.   **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83.   **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84.   **Inventory.**   *Copy line 23, Part 5.* | $230,500.00 | |
| 85.   **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86.   **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87.   **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88.   **Real property.** *Copy line 56, Part 9.* ..........................> | | $700,000.00 |
| 89.   **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90.   **All other assets.** *Copy line 78, Part 11.* | +   $0.00 | |
| 91.   **Total.** Add lines 80 through 90 for each column | $243,545.24 | + 91b.   $700,000.00 |
| 92.   **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $943,545.24 |

☒ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☒ Yes. Fill in all of the information below.

**Part 1:**   **List Creditors Who Have Secured Claims**

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | **Column A**<br>Amount of claim<br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1** Small Business Administration<br>Creditor's Name<br><br>P O Box 3918<br>Portland, OR 97208<br>Creditor's mailing address<br><br>Creditor's email address, if known<br><br>Date debt was incurred<br><br>Last 4 digits of account number<br><br>**Do multiple creditors have an interest in the same property?**<br>☒ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **Describe debtor's property that is subject to a lien**<br>Chattels, Accounts Receivable<br><br>**Describe the lien**<br><br>**Is the creditor an insider or related party?**<br>☒ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>☒ No<br>☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)<br><br>**As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | Unknown | $0.00 |
| **2.2** Vera Bank<br>Creditor's Name<br><br>P.O. Box 1009<br>Henderson, TX 75653<br>Creditor's mailing address<br><br>Creditor's email address, if known<br><br>Date debt was incurred<br>7/13/22<br>Last 4 digits of account number<br><br>**Do multiple creditors have an interest in the same property?**<br>☒ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **Describe debtor's property that is subject to a lien**<br>Inventory of used vehicles<br><br>**Describe the lien**<br>UCC Financing Statement<br>**Is the creditor an insider or related party?**<br>☒ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>☐ No<br>☒ Yes. Fill out Schedule H: Codebtors (Official Form 206H)<br><br>**As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $2,237,605.00 | $120,500.00 |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor __Arcadia Motors, LLC_____          Case number (if known) __25-11050__
        Name

3.  Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.    | $2,237,605.00 |

## Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |

Official Form 206D          Additional Page of Schedule D: Creditors Who Have Claims Secured by Property                    page 2 of 2

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                              Best Case Bankruptcy

25-11050-24#29  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 8 of 33
25-11050-24#24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 39 of 235

# Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims     12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:   List All Creditors with PRIORITY Unsecured Claims

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

   ☒ No. Go to Part 2.

   ☐ Yes. Go to line 2.

### Part 2:   List All Creditors with NONPRIORITY Unsecured Claims

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

                                                    Amount of claim

| 3.1 | Nonpriority creditor's name and mailing address<br>700 Credit<br>P O Box 101015<br>Pasadena, CA 91189 | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $1,765.10 |
|---|---|---|---|
| | Date(s) debt was incurred _ | Basis for the claim:   Services Rendered | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No   ☐ Yes | |

| 3.2 | Nonpriority creditor's name and mailing address<br>Abc Auto Parts<br>725 Bert Kouns Ind Loop<br>Shreveport, LA 71118 | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $1,981.68 |
|---|---|---|---|
| | Date(s) debt was incurred _ | Basis for the claim:   Open Account | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No   ☐ Yes | |

| 3.3 | Nonpriority creditor's name and mailing address<br>Adesa Arklatex<br>7666 Hwy 80 W<br>Shreveport, LA 71119 | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $360.01 |
|---|---|---|---|
| | Date(s) debt was incurred _ | Basis for the claim:   Open Account | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No   ☐ Yes | |

| 3.4 | Nonpriority creditor's name and mailing address<br>Aer Technologies Inc<br>P O Box 515849<br>Los Angeles, CA 90051 | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $673.57 |
|---|---|---|---|
| | Date(s) debt was incurred _ | Basis for the claim:   Open Account | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No   ☐ Yes | |

| 3.5 | Nonpriority creditor's name and mailing address<br>Americas Aa S'port<br>8000 US 80 W<br>Shreveport, LA 71119 | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $415.07 |
|---|---|---|---|
| | Date(s) debt was incurred _ | Basis for the claim:   Open Account | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No   ☐ Yes | |

$225.00

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Anderson Pest Control**
181 Cowboy Lane
Calhoun, LA 71225

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Services Rendered__
Is the claim subject to offset? ☒ No ☐ Yes

---

$795.00

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Anew Transport**
P O Box 141
Hillsboro, MO 63050

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Open Account__
Is the claim subject to offset? ☒ No ☐ Yes

---

$795.00

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Anew Transport**
P O Box 141
Hillsboro, MO 63050

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Open Account__
Is the claim subject to offset? ☒ No ☐ Yes

---

$162.50

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Aop Metal Fabricators**
162 Wood St
Crossett, AR 71635

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Services Rendered__
Is the claim subject to offset? ☒ No ☐ Yes

---

$235.00

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Ari Fleet**
4001 Leadenhall Rd
Mount Laurel, NJ 08054

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Cash Deal Not Titled__
Is the claim subject to offset? ☒ No ☐ Yes

---

$5,786.00

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Arketex Homepage**
P O Box 840148
Dallas, TX 75284

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Services Rendered__
Is the claim subject to offset? ☒ No ☐ Yes

---

$328.04

| 3.12 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Big Frog Tshirts**
2332 Sterlington Rd
Monroe, LA 71203

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Open Account__
Is the claim subject to offset? ☒ No ☐ Yes

---

$159.89

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|

**Blue Heron Homes**
27 Wade Road
Red Lodge, MT 59068

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim: __Deal from 10/21__
Is the claim subject to offset? ☒ No ☐ Yes

---

Official Form 206 E/F     Schedule E/F: Creditors Who Have Unsecured Claims     Page 2 of 16

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

25-11050 #20   File 12/04/25   Enter 12/04/25 16:07:37   Main Document   Pg 10 of 33
25-11050 #24   File 01/13/26   Enter 01/13/26 15:24:40   Main Document   Pg 41 of 235

| Debtor | Arcadia Motors, LLC | Case number (if known) | 25-11050 |
|---|---|---|---|

<table>
<tr><td>3.14</td><td colspan="2"><b>Nonpriority creditor's name and mailing address</b></td><td>$2,457.12</td></tr>
</table>

**3.14** Nonpriority creditor's name and mailing address
Blue Heron Homes
300 Washington St #212
Monroe, LA 71201

As of the petition filing date, the claim is: Check all that apply. — **$2,457.12**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Ford Deal Not Titled
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.15** Nonpriority creditor's name and mailing address
Bradley Industrial Leasing LLC
740 Hwy 82 W
Hamburg, AR 71646

As of the petition filing date, the claim is: Check all that apply. — **$3,663.00**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: TD Auto Deal Not Titled
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.16** Nonpriority creditor's name and mailing address
Brian Marks
2424 1St Ave South
Billings, MT 59101

As of the petition filing date, the claim is: Check all that apply. — **$86.50**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Services Rendered
Is the claim subject to offset? ☐ No ☒ Yes

---

**3.17** Nonpriority creditor's name and mailing address
Brian Smith
110 Barr Ln
West Monroe, LA 71291

As of the petition filing date, the claim is: Check all that apply. — **$4,867.30**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Cash Deal Not Titled
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.18** Nonpriority creditor's name and mailing address
C & R Sweet Delight
100 Llanfair Dr
Ruston, LA 71270

As of the petition filing date, the claim is: Check all that apply. — **$2,707.56**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: TD Car Deal
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.19** Nonpriority creditor's name and mailing address
Capital Wholesale Group, LLC
3600 WQ Marshall Ave
Longview, TX 75604

As of the petition filing date, the claim is: Check all that apply. — **Unknown**

☒ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: _
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.20** Nonpriority creditor's name and mailing address
Carleen Heath
6010 SE 99TH Place
Belleview, FL 34420

As of the petition filing date, the claim is: Check all that apply. — **$244.95**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.21** Nonpriority creditor's name and mailing address
Carnathan & Company
400 J T Griggs
Calhoun, LA 71225

As of the petition filing date, the claim is: Check all that apply. — **$238.14**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Open Account
Is the claim subject to offset? ☒ No ☐ Yes

**3.22** Nonpriority creditor's name and mailing address
Chase Auto
P O Box 901087
Fort Worth, TX 76101

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Services Rendered**
Is the claim subject to offset? ☒ No ☐ Yes

**$227.93**

---

**3.23** Nonpriority creditor's name and mailing address
CNA Surety
P O Box 957312
Saint Louis, MO 63105

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Services Rendered**
Is the claim subject to offset? ☒ No ☐ Yes

**$250.00**

---

**3.24** Nonpriority creditor's name and mailing address
Consumer Portfolio
19500 Jamboree Rd Suite 600
Irvine, CA 92612

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Services Rendered**
Is the claim subject to offset? ☒ No ☐ Yes

**$2,384.32**

---

**3.25** Nonpriority creditor's name and mailing address
Crow Burlingame
1383 Hazel Street
Arcadia, LA 71001

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Services Rendered**
Is the claim subject to offset? ☒ No ☐ Yes

**$15,460.18**

---

**3.26** Nonpriority creditor's name and mailing address
Crump Oil
P O Box 369
Homer, LA 71040

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Services Rendered**
Is the claim subject to offset? ☒ No ☐ Yes

**$5,114.15**

---

**3.27** Nonpriority creditor's name and mailing address
Dana Payne
1975 Tucker Store Rd
Spearsville, LA 71277

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Ford Deal Not Titled**
Is the claim subject to offset? ☒ No ☐ Yes

**$3,295.88**

---

**3.28** Nonpriority creditor's name and mailing address
David's Mobile Detail
P O Box 15256
Monroe, LA 71207

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Services Rendered**
Is the claim subject to offset? ☒ No ☐ Yes

**$225.00**

---

**3.29** Nonpriority creditor's name and mailing address
Dealer Solution USA Inc.
4851 Tamiami Trial North
Suite 200
Naples, FL 34103

Date(s) debt was incurred **12/7/24**
Last 4 digits of account number **1201**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Services Rendered**
Is the claim subject to offset? ☒ No ☐ Yes

**$0.00**

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 12 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 43 of 235

| 3.30 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $175,000.00 |
|---|---|---|---|
| | Dealer Solutions USA, Inc<br>4851 Tamiami Trial North<br>Suite 200<br>Naples, FL 34103 | ☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| | Date(s) debt was incurred 12/7/24 | Basis for the claim: Services Rendered | |
| | Last 4 digits of account number 1201 | Is the claim subject to offset? ☒ No ☐ Yes | |

| 3.31 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,316.00 |
|---|---|---|---|
| | Dealerslink<br>11001 W 120th Ave<br>Broomfield, CO 80021 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: Services Rendered | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No ☐ Yes | |

| 3.32 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $340.29 |
|---|---|---|---|
| | Denetra Goode<br>Anniston, AL 36206 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: Services Rendered | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No ☐ Yes | |

| 3.33 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | DSMA<br>Andy Church, Vice President<br>4851 Tamiami<br>Naples, FL 34103 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: Vendor Commission | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No ☐ Yes | |

| 3.34 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $647.85 |
|---|---|---|---|
| | East Texas Bg Inc<br>P O Box 6867<br>Tyler, TX 75711 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: Services Rendered | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No ☐ Yes | |

| 3.35 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $149.50 |
|---|---|---|---|
| | Enterprise Fm Trust<br>600 Corporate Park Dr<br>Saint Louis, MO 63105 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: Services Rendered | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No ☐ Yes | |

| 3.36 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,045.81 |
|---|---|---|---|
| | Exeter Finance<br>P O Box 650693<br>Dallas, TX 75265 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: Services Rendered | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No ☐ Yes | |

| 3.37 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $250.00 |
|---|---|---|---|
| | Fairy Yardfathers<br>3006 W California Ave<br>Ruston, LA 71270 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: Services Rendered | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☒ No ☐ Yes | |

Official Form 206 E/F      Schedule E/F: Creditors Who Have Unsecured Claims      Page 5 of 15

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 13 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 44 of 235

| 3.38 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $330.00 |
|---|---|---|---|

**3.38**
Nonpriority creditor's name and mailing address
Geaux Overhead
P O Box 132
Fairbanks, LA 71240

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Services Rendered
Last 4 digits of account number __
Is the claim subject to offset? ☒ No  ☐ Yes

**$330.00**

---

**3.39**
Nonpriority creditor's name and mailing address
Glenn Crawford
999 Crawford Rd
Carthage, MS 39051

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Services Rendered
Last 4 digits of account number __
Is the claim subject to offset? ☒ No  ☐ Yes

**$2.51**

---

**3.40**
Nonpriority creditor's name and mailing address
Global Lending Services
P.O. Box 10437
Greenville, SC 29603

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Customer Rebate
Last 4 digits of account number  2469
Is the claim subject to offset? ☒ No  ☐ Yes

**$3,500.00**

---

**3.41**
Nonpriority creditor's name and mailing address
Great American Business Products
P O Box 4422
Houston, TX 77210

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Open Account
Last 4 digits of account number __
Is the claim subject to offset? ☒ No  ☐ Yes

**$283.24**

---

**3.42**
Nonpriority creditor's name and mailing address
Gwaylon Brown
162 Shiloh Cemetary Rd
Gibsland, LA 71028

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Services Rendered
Last 4 digits of account number __
Is the claim subject to offset? ☒ No  ☐ Yes

**$308.02**

---

**3.43**
Nonpriority creditor's name and mailing address
Heatlh Plans Of La
2090 Stockwell Rd
Bossier City, LA 71111

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Services Rendered
Last 4 digits of account number __
Is the claim subject to offset? ☒ No  ☐ Yes

**$75.00**

---

**3.44**
Nonpriority creditor's name and mailing address
Henry Trimble
350 Byram Rive Apt 805
Byram, MS 39272

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Deal from 12/21
Last 4 digits of account number __
Is the claim subject to offset? ☒ No  ☐ Yes

**$873.06**

---

**3.45**
Nonpriority creditor's name and mailing address
Hodges & Wreyford
920 Plerremont Dr #407
Shreveport, LA 71106

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Basis for the claim:  Services Rendered
Last 4 digits of account number __
Is the claim subject to offset? ☒ No  ☐ Yes

**$1,035.00**

Official Form 206 E/F                Schedule E/F: Creditors Who Have Unsecured Claims              Page 6 of 18
Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                 Best Case Bankruptcy

25-11050   #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 14 of 33
25-11050   #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 45 of 235

**3.46**

Nonpriority creditor's name and mailing address
House Of Raeford
P O Box 707
Shreveport, LA 71101

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No  ☐ Yes

$1,990.32

---

**3.47**

Nonpriority creditor's name and mailing address
Iksia
P O Box 14200
Tallahassee, FL 32317

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No  ☐ Yes

$100.00

---

**3.48**

Nonpriority creditor's name and mailing address
Industrial Roofing
1128 Highway 2
Sterlington, LA 71280

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Ford Deal Not Titles
Is the claim subject to offset?  ☒ No  ☐ Yes

$8,011.61

---

**3.49**

Nonpriority creditor's name and mailing address
Integrity Voice
P.O. Box 53323
Shreveport, LA 71135

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No  ☐ Yes

$964.83

---

**3.50**

Nonpriority creditor's name and mailing address
Iron Stone Holdings
P O Box 517
West Monroe, LA 71294

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No  ☐ Yes

$108.00

---

**3.51**

Nonpriority creditor's name and mailing address
Ironstone Holdings
104 Enterprise St
West Monroe, LA 71291

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No  ☐ Yes

$8.90

---

**3.52**

Nonpriority creditor's name and mailing address
Jack Buttitta
27070 Perdido Beach Blvd
Orange Beach, AL 36561

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No  ☐ Yes

$16.50

---

**3.53**

Nonpriority creditor's name and mailing address
James Breedlove
104 Boyd Rd
Eudora, AR 71640

Date(s) debt was incurred _
Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Deal from 12/20
Is the claim subject to offset?  ☐ No  ☒ Yes

$584.73

---

Official Form 206 E/F                 Schedule E/F: Creditors Who Have Unsecured Claims              Page 7 of 19

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 15 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 46 of 235

| Debtor | Arcadia Motors, LLC | Case number (if known) | 25-11050 |
|---|---|---|---|

**3.54** Nonpriority creditor's name and mailing address
Jason Bullock
1001 South Main St
West Monroe, LA 71291

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Deal from 1/22
Is the claim subject to offset? ☒ No  ☐ Yes

$198.50

---

**3.55** Nonpriority creditor's name and mailing address
Jerry Bailey Jr
811 Highway 519
Arcadia, LA 71001

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Barksdeal not Titled
Is the claim subject to offset? ☒ No  ☐ Yes

$758.55

---

**3.56** Nonpriority creditor's name and mailing address
John Madison III
602 Newett Vick Dr
Vicksburg, MS 39183

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No  ☐ Yes

$81.44

---

**3.57** Nonpriority creditor's name and mailing address
John Patrick Campbell, III
4303 Hwy. 19

Zachary, LA 70791

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Open Account
Is the claim subject to offset? ☒ No  ☐ Yes

Unknown

---

**3.58** Nonpriority creditor's name and mailing address
Joseph McCarver
17259 Viola Carroll Rd
Bastrop, LA 71220

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Cash Deal Not Titled
Is the claim subject to offset? ☒ No  ☐ Yes

$118.50

---

**3.59** Nonpriority creditor's name and mailing address
Joshua Blades
16442 Hwy 2
Bernice, LA 71222

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Cash Deal Not Titled
Is the claim subject to offset? ☒ No  ☐ Yes

$5,041.00

---

**3.60** Nonpriority creditor's name and mailing address
Justin McCready
803 Marie Ave
Ruston, LA 71270

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No  ☐ Yes

$855.83

---

**3.61** Nonpriority creditor's name and mailing address
Kmss
P O Box 840148
Dallas, TX 75284

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No  ☐ Yes

$10,640.00

---

Official Form 206 E/F                 Schedule E/F: Creditors Who Have Unsecured Claims                 Page 8 of 18

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                                              Best Case Bankruptcy

25-11050  #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document   Pg 16 of 33
25-11050  #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document   Pg 47 of 235

| Debtor | Arcadia Motors, LLC | Case number (if known) | 25-11050 |
|---|---|---|---|

Name

| 3.62 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $134.25 |
|---|---|---|---|

Kristin Lynn Williams
143 Mt Pisgah Ln
Ruston, LA 71270

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Services Rendered**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.63 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,145.22 |
|---|---|---|---|

Ktal
P O Box 840148
Dallas, TX 75284

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Services Rendered**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.64 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $400.00 |
|---|---|---|---|

Lada
7526 Picardy Ave
Baton Rouge, LA 70802

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Services Rendered**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.65 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.60 |
|---|---|---|---|

Lashunda Williams
225 E Elmwood St
Shreveport, LA 71104

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Services Rendered**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.66 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

Lawrence Vaughn
133 Railroad Ave.
Mangham, LA 71259

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Open Account**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.67 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3.16 |
|---|---|---|---|

Louis Parker
354 Harrell Rd
West Monroe, LA 71291

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Services Rendered**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.68 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $859.67 |
|---|---|---|---|

Michael Castleman
1001 Beech Street
Magnolia, AR 71754

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Deal from 7/19**

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.69 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

Michael Pearson
3600 W Marshall Ave
Longview, TX 75604

☒ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

Official Form 206 E/F                    Schedule E/F: Creditors Who Have Unsecured Claims                    Page 9 of 15

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

25-11050 - #20  File 12/04/25   Enter 12/04/25 16:07:37  Main Document   Pg 17 of 33
25-11050 - #24  File 01/13/26   Enter 01/13/26 15:24:40  Main Document   Pg 48 of 235

| 3.70 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $47,601.92 |
|---|---|---|---|

**3.70** Nonpriority creditor's name and mailing address
MJCFO, LLC dba Joe Machen Cap City Ford
807 Southwest Blvd
Jefferson City, MO 65109

As of the petition filing date, the claim is: *Check all that apply.*   **$47,601.92**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  01/27/2025
Last 4 digits of account number __

Basis for the claim:  Judgment
Is the claim subject to offset?  ☒ No   ☐ Yes

---

**3.71** Nonpriority creditor's name and mailing address
Myers Tire Supply
1100 N Hickory Blvd Ste 10
Pleasant Hill, IA 50327

As of the petition filing date, the claim is: *Check all that apply.*   **$111.37**

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  Open Account
Is the claim subject to offset?  ☒ No   ☐ Yes

---

**3.72** Nonpriority creditor's name and mailing address
National Auto Care
440 Polaris Pkwy
Westerville, OH 43082

As of the petition filing date, the claim is: *Check all that apply.*   **$2,892.00**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No   ☐ Yes

---

**3.73** Nonpriority creditor's name and mailing address
Northeast La Containers
P O Box 2417
West Monroe, LA 71294

As of the petition filing date, the claim is: *Check all that apply.*   **$432.20**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No   ☐ Yes

---

**3.74** Nonpriority creditor's name and mailing address
Oreilly Auto Parts
P O Box 9464
Springfield, MO 65801

As of the petition filing date, the claim is: *Check all that apply.*   **$600.86**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  Open Account
Is the claim subject to offset?  ☒ No   ☐ Yes

---

**3.75** Nonpriority creditor's name and mailing address
Osla
P O Box 14200
Tallahassee, FL 32317

As of the petition filing date, the claim is: *Check all that apply.*   **$60.00**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No   ☐ Yes

---

**3.76** Nonpriority creditor's name and mailing address
Paul Williams
19412 Sea Island Drive
Pflugerville, TX 78660

As of the petition filing date, the claim is: *Check all that apply.*   **$89.25**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No   ☐ Yes

---

**3.77** Nonpriority creditor's name and mailing address
Paula Shine
300 Mills St
P O Box 53
Athens, LA 71003

As of the petition filing date, the claim is: *Check all that apply.*   **$10.44**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
Last 4 digits of account number __

Basis for the claim:  Services Rendered
Is the claim subject to offset?  ☒ No   ☐ Yes

| 3.78 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $6,360.91 |
|---|---|---|---|

**Pear Tree Enterprises**
1535 Grimmett Dr
Shreveport, LA 71107

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Cash Deal Not Titled

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

| 3.79 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $350.00 |
|---|---|---|---|

**Plunks Wrecker Service**
108 Jonesboro Rd
West Monroe, LA 71292

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

| 3.80 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $262.50 |
|---|---|---|---|

**Rachel Ricks**
167 Curry Creek Dr
Calhoun, LA 71225

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

| 3.81 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $623.44 |
|---|---|---|---|

**Red Ball Oxygen**
P O Box 669131
Dallas, TX 75266

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

| 3.82 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $10,094.35 |
|---|---|---|---|

**Regional Acceptance**
1424 E Fire Tower Road
Greenville, NC 27858

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

| 3.83 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $746.68 |
|---|---|---|---|

**Renascent Protection**
5500 Frantz Rd Suite 100
Dublin, OH 43017

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

| 3.84 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $918.86 |
|---|---|---|---|

**Reynolds & Reynolds**
P O Box 182206
Columbus, OH 43218

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $918.62 |
|---|---|---|---|

**Rimcor Inc**
1205 Jim Walter Dr
Texarkana, AR 71854

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Deal from 1/21

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

Official Form 206 E/F        Schedule E/F: Creditors Who Have Unsecured Claims        Page 11 of 15

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 19 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 50 of 235

| Debtor | Arcadia Motors, LLC | Case number (if known) | 25-11050 |
|---|---|---|---|
| | Name | | |

---

**3.86** | Nonpriority creditor's name and mailing address
Roger M Lee
107 Yellowstone Circle
West Monroe, LA 71292

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$300.40

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.87** | Nonpriority creditor's name and mailing address
Ronnie Harris
103 N Chatham Rd
Ruston, LA 71270

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$2,405.08

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Exeter Deal Not Titled
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.88** | Nonpriority creditor's name and mailing address
Route One
16902 Collections Center Dr
Chicago, IL 60693

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$57.80

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.89** | Nonpriority creditor's name and mailing address
Roy Head
21811 Oak Leaf Lane
Bullard, TX 75757

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$40.70

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Deal from 1/20
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.90** | Nonpriority creditor's name and mailing address
Rusty Murray
614 Carrollton St
Bossier City, LA 71112

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$243.95

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.91** | Nonpriority creditor's name and mailing address
Service Lane Eadvisor
P O Box 737730
Dallas, TX 75373

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,797.00

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.92** | Nonpriority creditor's name and mailing address
Service Payment Plan
303 E Wacker Dr
Chicago, IL 60601

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,422.88

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

---

**3.93** | Nonpriority creditor's name and mailing address
Smerts Plumbing
P.O. Box 60
Arcadia, LA 71001

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$225.61

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: Aser
Is the claim subject to offset? ☒ No ☐ Yes

---

Official Form 206 E/F     Schedule E/F: Creditors Who Have Unsecured Claims     Page 12 of 15

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 20 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 51 of 235

| 3.94 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,728.07 |
|------|---|---|---|

**Southwest Fad**
8550 Wuliger Way
North Richland Hills, TX 76180

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

| 3.95 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,728.07 |
|------|---|---|---|

**Southwest Fad**
8550 Wuliger Way
North Richland Hills, TX 76180

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

| 3.96 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|------|---|---|---|

**Strutts Farm**
15524 Strutts Rd
Bonita, LA 71223

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Open Account
Is the claim subject to offset? ☒ No ☐ Yes

| 3.97 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,678.00 |
|------|---|---|---|

**Sunbelt Transfers**
3285 Freedom Ln SE
Moultrie, GA 31788

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

| 3.98 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|------|---|---|---|

**Superior Automotive, LLC**
4303 Hwy. 19
Zachary, LA 70791

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Open Account
Is the claim subject to offset? ☒ No ☐ Yes

| 3.99 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,100.00 |
|------|---|---|---|

**Target Glass**
P.O. Box 21
Homer, LA 71040

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

| 3.100 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $62.50 |
|------|---|---|---|

**The Purple Guys**
P O Box 306471
Nashville, TN 37230

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Services Rendered
Is the claim subject to offset? ☒ No ☐ Yes

| 3.101 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $145.00 |
|------|---|---|---|

**Town Of Arcadia**
P O Box 767
Arcadia, LA 71001

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  Utilities
Is the claim subject to offset? ☒ No ☐ Yes

| 3.102 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $213.50 |
|---|---|---|---|

**Twin Oaks Nursery**
2700 McDonald Avenue
Ruston, LA 71270

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim:  Open Account

Last 4 digits of account number _

Is the claim subject to offset? ☒ No  ☐ Yes

| 3.103 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,116.76 |
|---|---|---|---|

**Unifirst Corporation**
P.O. Box 650481
Dallas, TX 75265

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim:  Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No  ☐ Yes

| 3.104 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $984.83 |
|---|---|---|---|

**United Radio**
5703 Enterprise Parkway
East Syracuse, NY 13057

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim:  Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No  ☐ Yes

| 3.105 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $237.77 |
|---|---|---|---|

**Webster Printing**
716 Broadway
Minden, LA 71055

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim:  Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No  ☐ Yes

| 3.106 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $462.37 |
|---|---|---|---|

**Westlake Financial**
P.O. Box 847476
Los Angeles, CA 90084

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim:  Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No  ☐ Yes

| 3.107 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $450.00 |
|---|---|---|---|

**White Distributing**
404 Underwood Street
Farmerville, LA 71241

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim:  Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No  ☐ Yes

| 3.108 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $200.00 |
|---|---|---|---|

**Wilcoxen Air, Inc.**
P.O. Box 18022
Shreveport, LA 71138

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  Services Rendered

Basis for the claim: _

Last 4 digits of account number  9923

Is the claim subject to offset? ☒ No  ☐ Yes

| 3.109 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $642.22 |
|---|---|---|---|

**Wurth USA Inc.**
P.O. Box 943948
Dallas, TX 75284

☐ Contingent
☐ Unliquidated
☒ Disputed

Date(s) debt was incurred _

Basis for the claim:  Services Rendered

Last 4 digits of account number _

Is the claim subject to offset? ☒ No  ☐ Yes

**Part 3:   List Others to Be Notified About Unsecured Claims**

Official Form 206 E/F          Schedule E/F: Creditors Who Have Unsecured Claims          Page 14 of 16

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 22 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 53 of 235

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

   If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

---

### Part 4:     Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

|  | Total of claim amounts |
|---|---|
| 5a. Total claims from Part 1 | 5a.  $  0.00 |
| 5b. Total claims from Part 2 | 5b.  + $  369,345.67 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c.  $  369,345.67 |

Official Form 206 E/F                Schedule E/F: Creditors Who Have Unsecured Claims                Page 15 of 15

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

25-11050 - #20  File 12/04/25  Enter 12/04/25 16:07:37  Main Document  Pg 23 of 33
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 54 of 235

# United States Bankruptcy Court
## Western District of Louisiana

In re    Arcadia Motors, LLC                 Case No.    25-11050

                         Debtor(s)            Chapter     7

## DECLARATION CONCERNING DEBTOR'S AMENDED SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Managing Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing , consisting of ___22___ page(s), and that they are true and correct to the best of my knowledge, information, and belief.

Date    11/25/25                    Signature   /s/  Thomas Green Martin

                                                 Thomas Green Martin

                                                 Managing Member

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

700 Credit
P O Box 101015
Pasadena, CA 91189


Abc Auto Parts
725 Bert Kouns Ind Loop
Shreveport, LA 71118


Adesa Arklatex
7666 Hwy 80 W
Shreveport, LA 71119


Aer Technologies Inc
P O Box 515849
Los Angeles, CA 90051


Americas Aa S'port
8000 US 80 W
Shreveport, LA 71119


Anderson Pest Control
181 Cowboy Lane
Calhoun, LA 71225


Anew Transport
P O Box 141
Hillsboro, MO 63050


Aop Metal Fabricators
162 Wood St
Crossett, AR 71635


Ari Fleet
4001 Leadenhall Rd
Mount Laurel, NJ 08054


Arklatex Homepage
P O Box 840148
Dallas, TX 75284


Bienville Parish Sheriff
PO Box 328
Arcadia, LA 71001


Big Frog Tshirts
2332 Sterlington Rd
Monroe, LA 71203


Blue Heron Homes
27 Wade Road
Red Lodge, MT 59068


Blue Heron Homes
300 Washington St #212
Monroe, LA 71201

Bradley Industrial Leasing LLC
740 Hwy 82 W
Hamburg, AR 71646


Brian Marks
2424 1St Ave South
Billings, MT 59101


Brian Smith
110 Barr Ln
West Monroe, LA 71291


C & R Sweet Delight
100 Llanfair Dr
Ruston, LA 71270


Capital Wholesale Group, LLC
3600 WQ Marshall Ave
Longview, TX 75604


Carleen Heath
6010 SE 99TH Place
Belleview, FL 34420


Carnathan & Company
400 J T Griggs
Calhoun, LA 71225


Chase Auto
P O Box 901087
Fort Worth, TX 76101


CNA Surety
P O Box 957312
Saint Louis, MO 63105


Consumer Portfolio
19500 Jamboree Rd Suite 600
Irvine, CA 92612


Crow Burlingame
1383 Hazel Street
Arcadia, LA 71001


Crump Oil
P O Box 389
Homer, LA 71040


Dana Payne
1975 Tucker Store Rd
Spearsville, LA 71277


David's Mobile Detail
P O Box 15256
Monroe, LA 71207

Dealer Solution USA Inc.
4851 Tamiami Trial North
Suite 200
Naples, FL 34103


Dealer Solutions USA, Inc
4851 Tamiami Trial North
Suite 200
Naples, FL 34103


Dealerslink
11001 W 120th Ave
Broomfield, CO 80021


Denetra Goode
Anniston, AL 36206


DSMA
Andy Church, Vice President
4851 Tamiami
Naples, FL 34103


East Texas Bg Inc
P O Box 6867
Tyler, TX 75711


Enterprise Fm Trust
600 Corporate Park Dr
Saint Louis, MO 63105


Exeter Finance
P O Box 650693
Dallas, TX 75265


Fairy Yardfathers
3006 W California Ave
Ruston, LA 71270


Geaux Overhead
P O Box 132
Fairbanks, LA 71240


Glenn Crawford
999 Crawford Rd
Carthage, MS 39051


Global Lending Services
P.O. Box 10437
Greenville, SC 29603


Great American Business Products
P O Box 4422
Houston, TX 77210

Gwaylon Brown
162 Shiloh Cemetary Rd
Gibsland, LA 71028


Health Plans Of La
2090 Stockwell Rd
Bossier City, LA 71111


Henry Trimble
350 Byram Rive Apt 805
Byram, MS 39272


Hodges & Wreyford
920 Pierremont Dr #407
Shreveport, LA 71106


House Of Raeford
P O Box 707
Shreveport, LA 71101


Iksla
P O Box 14200
Tallahassee, FL 32317


Industrial Roofing
1128 Highway 2
Sterlington, LA 71280


Integrity Voice
P.O. Box 53323
Shreveport, LA 71135


Iron Stone Holdings
P O Box 517
West Monroe, LA 71294


Ironstone Holdings
104 Enterprise St
West Monroe, LA 71291


Jack Buttitta
27070 Perdido Beach Blvd
Orange Beach, AL 36561


James Breedlove
104 Boyd Rd
Eudora, AR 71640


Jason Bullock
1001 South Main St
West Monroe, LA 71291


Jerry Bailey Jr
811 Highway 519
Arcadia, LA 71001

John Madison III
602 Newett Vick Dr
Vicksburg, MS 39183

John Patrick Campbell, III
4303 Hwy. 19
Zachary, LA 70791

Joseph McCarver
17259 Viola Carroll Rd
Bastrop, LA 71220

Joshua Blades
16442 Hwy 2
Bernice, LA 71222

Justin McCready
803 Marie Ave
Ruston, LA 71270

Kmss
P O Box 840148
Dallas, TX 75284

Kristin Lynn Williams
143 Mt Pisgah Ln
Ruston, LA 71270

Ktal
P O Box 840148
Dallas, TX 75284

Lada
7526 Picardy Ave
Baton Rouge, LA 70802

Lashunda Williams
225 E Elmwood St
Shreveport, LA 71104

Lawrence Vaughn
133 Railroad Ave.
Mangham, LA 71259

Louis Parker
354 Harrell Rd
West Monroe, LA 71291

Michael Castleman
1001 Beech Street
Magnolia, AR 71754

Michael Pearson
3600 W Marshall Ave
Longview, TX 75604

MJCFO, LLC dba Joe Machen Cap CIty Ford
807 Southwest Blvd
Jefferson City, MO 65109


Myers Tire Supply
1100 N Hickory Blvd Ste 10
Pleasant Hill, IA 50327


National Auto Care
440 Polaris Pkwy
Westerville, OH 43082


Northeast La Containers
P O Box 2417
West Monroe, LA 71294


Oreilly Auto Parts
P O Box 9464
Springfield, MO 65801


Osla
P O Box 14200
Tallahassee, FL 32317


Paul Williams
19412 Sea Island Drive
Pflugerville, TX 78660


Paula Shine
300 Mills St
P O Box 53
Athens, LA 71003


Pear Tree Enterprises
1535 Grimmett Dr
Shreveport, LA 71107


Plunks Wrecker Service
108 Jonesboro Rd
West Monroe, LA 71292


Rachel Ricks
167 Curry Creek Dr
Calhoun, LA 71225


Red Ball Oxygen
P O Box 669131
Dallas, TX 75266


Regional Acceptance
1424 E Fire Tower Road
Greenville, NC 27858


Renascent Protection
5500 Frantz Rd Suite 100
Dublin, OH 43017

Reynolds & Reynolds
P O Box 182206
Columbus, OH 43218


Rimcor Inc
1205 Jim Walter Dr
Texarkana, AR 71854


Roger M Lee
107 Yellowstone Circle
West Monroe, LA 71292


Ronnie Harris
103 N Chatham Rd
Ruston, LA 71270


Route One
16902 Collections Center Dr
Chicago, IL 60693


Roy Head
21811 Oak Leaf Lane
Bullard, TX 75757


Rusty Murray
614 Carrollton St
Bossier City, LA 71112


Service Lane Eadvisor
P O Box 737730
Dallas, TX 75373


Service Payment Plan
303 E Wacker Dr
Chicago, IL 60691


Small Business Administration
P O Box 3918
Portland, OR 97208


Smarts Plumbing
P.O. Box 60
Arcadia, LA 71001


Southwest Fad
6550 Wuliger Way
North Richland Hills, TX 76180


Strutts Farm
15524 Strutts Rd
Bonita, LA 71223


Sunbelt Transfers
3285 Freedom Ln SE
Moultrie, GA 31788

Superior Automotive, LLC
4303 Hwy. 19
Zachary, LA 70791


Target Glass
P.O. Box 21
Homer, LA 71040


The Purple Guys
P O Box 306471
Nashville, TN 37230


Thomas G. Martin
3117 West 70th Street
Shreveport, LA 71108


Town Of Arcadia
P O Box 767
Arcadia, LA 71001


Twin Oaks Nursery
2700 McDonald Avenue
Ruston, LA 71270


Unifirst Corporation
P.O. Box 650481
Dallas, TX 75265


United Radio
5703 Enterprise Parkway
East Syracuse, NY 13057


Vera Bank
P.O. Box 1009
Henderson, TX 75653


Webster Printing
716 Broadway
Minden, LA 71055


Westlake Financial
P.O. Box 847476
Los Angeles, CA 90084


White Distributing
404 Underwood Street
Farmerville, LA 71241


Wilcoxen Air, Inc.
P.O. Box 18022
Shreveport, LA 71138


Wurth USA Inc.
P.O. Box 943948
Dallas, TX 75284

# United States Bankruptcy Court
## Western District of Louisiana

In re   Arcadia Motors, LLC            Case No.    25-11050

                        Debtor(s)          Chapter     7

# VERIFICATION OF CREDITOR MATRIX - AMENDED

I, the Managing Member of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:    November 25, 2025             /s/   Thomas Green Martin

                                     Thomas Green Martin/Managing Member
                                     Signer/Title

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                             Best Case Bankruptcy

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

IN RE: ARCADIA MOTORS, LLC                  **CASE NO. 25-11050**

-------------------------------------------------------------------------------------------------------
## CERTIFICATE OF SERVICE
-------------------------------------------------------------------------------------------------------

I hereby certify that a copy of the Amended Schedules A/B, D, and E/F have been provided to the parties set forth hereinafter, to-wit:

| | |
|---|---|
| Vera Bank<br>P.O. Box 1009<br>Henderson, TX 75653 | Superior Automotive, LLC<br>4303 Hwy. 19<br>Zachary, LA 70791 |
| Global Lending Services<br>P.O. Box 10437<br>Greenville, SC 29603 | Wilcoxen Air, Inc.<br>P.O. Box 18022<br>Shreveport, LA 71138 |
| John Patrick Campbell, III<br>4303 Hwy. 19<br>Zachary, LA 70791 | Lawrence Vaughn<br>133 Railroad Ave.<br>Mangham, LA 71259 |

I further certify that the Amended Schedules A/B, D, and E/F has been provided to those parties set forth in the matrix attached hereto on this 4th day of December, 2025.

/S/ THOMAS R. WILLSON
THOMAS R. WILLSON

Label Matrix for local noticing
0536-5
Case 25-11050
Western District of Louisiana
Shreveport
Thu Dec  4 11:19:33 CST 2025

700 Credit
P O Box 101015
Pasadena, CA 91189-0003

Abc Auto Parts
725 Bert Kouns Ind Loop
Shreveport, LA 71118-5703

Adesa Arklatex
7666 Hwy 80 W
Shreveport, LA 71119

Aer Technologies Inc
P O Box 515849
Los Angeles, CA 90051-3149

Americas Aa S'port
8000 US 80 W
Shreveport, LA 71119

Americas Aa S'port
8000 US 80 W S
Shreveport, LA 71119

Anderson Pest Control
181 Cowboy Lane
Calhoun, LA 71225-8134

Anew Transport
P O Box 141
Hillsboro, MO 63050-0141

Aop Metal Fabricators
162 Wood St
Crossett, AR 71635-4602

Arcadia Motors, LLC
3117 W. 70th Street
Shreveport, LA 71108-4605

Ari Fleet
4001 Leadenhall Rd
Mount Laurel, NJ 08054-4611

Arklatex Homepage
P O Box 840148
Dallas, TX 75284-0148

Mark A. Begnaud
POB 1369
Natchitoches, LA 71458-1369

Bienville Parish Sheriff
PO Box 328
Arcadia, LA 71001-0328

Big Frog Tshirts
2332 Sterlington Rd
Monroe, LA 71203-3044

Blue Heron Homes
27 Wade Road
Red Lodge, MT 59068

Blue Heron Homes
300 Washington St #212
Monroe, LA 71201-6762

Bradley Industrial Leasing LLC
740 Hwy 82 W
Hamburg, AR 71646-9587

Brian Marks
2424 1St Ave South
Billings, MT 59101-4217

Brian Smith
110 Barr Ln
West Monroe, LA 71291-7552

C & R Sweet Delight
100 Llanfair Dr
Ruston, LA 71270-9548

CNA Surety
P O Box 957312
Saint Louis, MO 63195-7312

Capital Wholesale Group, LLC
3600 KQ Marshall Ave
Longview, TX 75604-4939

Carleen Heath
6010 SE 99TH Place
Belleview, FL 34420

Carnathan & Company
400 J T Griggs
Calhoun, LA 71225-8126

Chase Auto
P O Box 901087
Fort Worth, TX 76101-2087

Consumer Portfolio
19500 Jamboree Rd Suite 600
Irvine, CA 92612-2467

Crow Burlingame
1383 Hazel Street
Arcadia, LA 71001-4113

Crump Oil
P O Box 389
Homer, LA 71040-0389

DSMA
Andy Church, Vice President
4851 Tamiami
Naples, FL 34103-3096

Dana Payne
1975 Tucker Store Rd
Spearsville, LA 71277-3804

David's Mobile Detail
P O Box 15256
Monroe, LA 71207-5256

Dealer Solution USA Inc.
4851 Tamiami Trial North
Suite 200
Naples, FL 34103-3098

Dealer Solutions USA, Inc
4851 Tamiami Trial North
Suite 200
Naples, FL 34103-3098

Dealerslink
11001 W 120th Ave
Broomfield, CO 80021-3494

Denetra Goode
Anniston, AL 36206

East Texas Bg Inc
P O Box 6867
Tyler, TX 75711-6867

Enterprise Fm Trust
600 Corporate Park Dr
Saint Louis, MO 63105-4204

(p)EXETER FINANCE  LLC
NANNETTE ALAMILLA
2101 W JOHN CARPENTER FWY
IRVING TX 75063-3228

Fairy Yardfathers
3006 W California Ave
Ruston, LA 71270-1094

Geaux Overhead
P O Box 132
Fairbanks, LA 71240-0132

Gibsland Bank & Trust
P.O. Box 21990
Shreveport, LA 71120-1990

Glenn Crawford
999 Crawford Rd
Carthage, MS 39051-7484

Great American Business Products
P O Box 4422
Houston, TX 77210-4422

Gwaylon Brown
162 Shiloh Cemetary Rd
Gibsland, LA 71028-4654

Health Plans Of La
2090 Stockwell Rd
Bossier City, LA 71111-5730

Henry Trimble
350 Byram Rive Apt 805
Byram, MS 39272-3508

Hodges & Wreyford
920 Pierremont Dr #407
Shreveport, LA 71106-2093

House Of Raeford
P O Box 707
Shreveport, LA 71162-0707

Iksla
P O Box 14200
Tallahassee, FL 32317-4200

Industrial Roofing
1128 Highway 2
Sterlington, LA 71280-3066

Integrity Voice
P.O. Box 53323
Shreveport, LA 71135-3323

Iron Stone Holdings
P O Box 517
West Monroe, LA 71294-0517

Ironstone Holdings
104 Enterprise St
West Monroe, LA 71292-8012

Jack Buttitta
27070 Perdido Beach Blvd
Orange Beach, AL 36561-3201

James Breedlove
104 Boyd Rd
Eudora, AR 71640-2172

Jason Bullock
1001 South Main St
West Monroe, LA 71291

Jerry Bailey Jr
811 Highway 519
Arcadia, LA 71001-5345

John Madison III
602 Newatt Vick Dr
Vicksburg, MS 39183-8758

Joseph McCarver
17259 Viola Carroll Rd
Bastrop, LA 71220-6489

Joshua Blades
16442 Hwy 2
Bernice, LA 71222-3108

Justin McCready
803 Marie Ave
Ruston, LA 71270-2718

Kmss
P O Box 840148
Dallas, TX 75284-0148

Kristin Lynn Williams
143 Mt Pisgah Ln
Ruston, LA 71270-9407

Ktal
P O Box 840148
Dallas, TX 75284-0148

Lada
7526 Picardy Ave
Baton Rouge, LA 70808-4333

Lashunda Williams
225 E Elmwood St
Shreveport, LA 71104-4607

Louis Parker
354 Harrell Rd
West Monroe, LA 71291-9724

Louisiana Department of Revenue and Taxation
Attn: Bankruptcy Division
P.O. Box 66658
Baton Rouge, LA 70896-6658

(p)JOHN W LUSTER
P O BOX 488
NATCHITOCHES LA 71458-0488

MJCFO, LLC dba Joe Machen Cap CIty Ford
807 Southwest Blvd
Jefferson City, MO 65109-2657

Bobby Manning
Bobby R. Manning
320 Pine Street
Monroe, LA 71201-6226

Marion State Bank
P O Box 7
Marion, LA 71260-0007

Michael Castleman
1001 Beach Street
Magnolia, AR 71753-3104

Michael Pearson
3600 W Marshall Ave
Longview, TX 75604-4939

Seth Moyers
Wiener, Weiss & Madison
330 Marshall Street, Suite 1000
Shreveport, LA 71101-3016

Myers Tire Supply
1100 N Hickory Blvd Ste 10
Pleasant Hill, IA 50327-7072

National Auto Care
440 Polaris Pkwy
Westerville, OH 43082-6999

Northeast La Containers
P O Box 2417
West Monroe, LA 71294-2417

Oreilly Auto Parts
P O Box 9464
Springfield, MO 65801-9464

Osla
P O Box 14200
Tallahassee, FL 32317-4200

Paul Williams
19412 Sea Island Drive
Pflugerville, TX 78660-5361

Paula Shine
300 Mills St
P O Box 53
Athens, LA 71003-0053

Pear Tree Enterprises
1535 Grimmett Dr
Shreveport, LA 71107-6505

Plunks Wrecker Service
108 Jonesboro Rd
West Monroe, LA 71292-5618

Rachel Ricks
167 Curry Creek Dr
Calhoun, LA 71225-7943

Red Ball Oxygen
P O Box 669131
Dallas, TX 75266-9131

Regional Acceptance
1424 E Fire Tower Road
Greenville, NC 27858-4105

Renascent Protection
5500 Frantz Rd
Suite 100
Dublin, OH 43017-3545

Reynolds & Reynolds
P O Box 182206
Columbus, OH 43218-2206

Rimcor Inc
1205 Jim Walter Dr
Texarkana, AR 71854-4826

Roger M Lee
107 Yellowstone Circle
West Monroe, LA 71292-2146

Ronnie Harris
103 N Chatham Rd
Ruston, LA 71270-9423

Route One
16902 Collections Center Dr
Chicago, IL 60693-0001

Roy Head
21811 Oak Leaf Lane
Bullard, TX 75757-4101

Rusty Murray
614 Carrollton St
Bossier City, LA 71112-3250

SUPERIOR MOTORS, LLC, LAWRENCE VAUGHN AND PA
320 PINE STREET
MONROE, LA 71201-6226

Service Lane Eadvisor
P O Box 737730
Dallas, TX 75373-7730

Service Payment Plan
303 E Wacker Dr
Chicago, IL 60601-5231

Sheriff, Bienville Parish
POB 328
Arcadia LA 71001-0328

Small Business Administration
P O Box 3918
Portland, OR 97208-3918

Smarts Plumbing
P.O. Box 60
Arcadia, LA 71001-0060

Southwest Fad
6550 Wuliger Way
North Richland Hills, TX 76180-6020

Southwest Fad
6550 Wuliger Way N
orth Richland Hills, TX 76180-6020

State of Louisiana, Department of Labor
Delinquent Accounts Unit,UI Tech Support
1001 North 23rd Street, Room 322
Baton Rouge, LA 70802-3338

Strutts Farm
15524 Strutts Rd
Bonita, LA 71223-9512

Sunbelt Transfers
3285 Freedom Ln SE
Moultrie, GA 31788-7677

Target Glass
P.O. Box 21
Homer, LA 71040-0021

The Purple Guys
P O Box 306471
Nashville, TN 37230-6471

Thomas G. Martin
3117 West 70th Street
Shreveport, LA 71108-4605

Town Of Arcadia
P O Box 767
Arcadia, LA 71001-0767

Twin Oaks Nursery
2700 McDonald Avenue
Ruston, LA 71270-7431

Office of U. S. Trustee
300 Fannin St., Suite 3196
Shreveport, LA 71101-3122

Unifirst Corporation
P.O. Box 650481
Dallas, TX 75265-0481

United Radio
5703 Enterprise Parkway
East Syracuse, NY 13057-2950

Vera Bank
P.O. Box 1009
Henderson, TX 75653-1009

VeraBank, National Association
c/o Mark Begnaud
POB 1369
Natchitoches, LA 71458-1369

VeraBank, National Association
c/o Jon Moore
107 Market Square Blvd.
Tyler TX 75703-8024

VeraBank, National Association
c/o Mark A. Begnaud
McCoy Roberts & Begnaud, Ltd.
PO Box 1369
Natchitoches, LA 71458-1369

Webster Printing
716 Broadway
Minden, LA 71055-3307

Westlake Financial
P.O. Box 847476
Los Angeles, CA 90084-7476

White Distributing
404 Underwood Street
Farmerville, LA 71241-2432

Wiener, Weiss & Madison, APC
c/o Seth M. Moyers
330 Marshall Street, Suite 1000
Shreveport, LA 71101-3016

Thomas R. Willson
Rocky Willson
Attorney & Counselor at Law
1330 Jackson Street
Alexandria, LA 71301-6929

Wurth USA Inc.
P.O. Box 943948
Dallas, TX 75284-0001

b1 Bank
800 N. Spring Street
Shreveport, LA 71101-3758

lease on key machines

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Exeter Finance
P O Box 650693
Dallas, TX 75265

John W. Luster
P.O. Box 488
Natchitoches, LA 71458-0488

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Blue Heron Homes
27 Wade Road Red
Lodge, MT 59068

(d)Renascent Protection
5500 Frantz Rd Suite 100
Dublin, OH 43017-3545

(d)United Radio
5703 Enterprise Parkway East
Syracuse, NY 13057-2950

End of Label Matrix
Mailable recipients    127
Bypassed recipients      3
Total                  130

Debtor name    Claiborne Automotive Group, LLC

United States Bankruptcy Court for the:    WESTERN DISTRICT OF LOUISIANA

Case number (if known)    25-11051

☒ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1: Cash and cash equivalents**

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☒ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of debtor's interest

**3.** Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. Vera Bank | Checking | 0952 | $139,866.20 |

**4.** Other cash equivalents *(Identify all)*

**5.** Total of Part 1.

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$139,866.20

**Part 2: Deposits and Prepayments**

**6. Does the debtor have any deposits or prepayments?**

☒ No. Go to Part 3.
☐ Yes Fill in the information below.

**Part 3: Accounts receivable**

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
☒ Yes Fill in the information below.

**11.** Accounts receivable

11a. 90 days old or less:    0.00    -    0.00    = ....    Unknown

face amount        doubtful or uncollectible accounts

12. **Total of Part 3.**                                                            | $0.00 |

    Current value on line 11a + 11b = line 12.   Copy the total to line 82.

**Part 4:   Investments**

13. **Does the debtor own any investments?**

☒ No.   Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:   Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.   Go to Part 6.
☒ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. Raw materials | | | | |
| 20. Work in progress | | | | |
| 21. Finished goods, including goods held for resale | | | | |
| 22. Other inventory or supplies<br>2024 GMC Sierra<br>#3GTPHBEK2RG360566<br>2026 Trax<br>#KL77LKEP6SC330344<br>2025 Tahoe<br>#1GNS5MRD4SR369103<br>2025 Trail Blazer<br>#KL79MMSP8SB080862<br>2024 Sierra<br>#3GTUUCED7RG358224<br>2024 Terrain<br>#3GKALVEG5RL340506 | | Unknown | | Unknown |

23. **Total of Part 5.**                                                            | $0.00 |

    Add lines 19 through 22.   Copy the total to line 84.

24.  **Is any of the property listed in Part 5 perishable?**
    ☒ No
    ☐ Yes

25.  **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
    ☒ No
    ☐ Yes. Book value _____   Valuation method _____   Current Value _____

26.  **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
    ☒ No
    ☐ Yes

**Part 6:   Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☒ No.   Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:   Office furniture, fixtures, and equipment; and collectibles**

Official Form 206A/B          Schedule A/B Assets - Real and Personal Property          page 2

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

25-11051  #29  File 12/05/25  Enter 12/05/25 11:01:49  Main Document  Pg 2 of 61
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 72 of 235

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
☒ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.** Office furniture<br>office furniture and equipment | $0.00 | | $7,500.00 |

**40.** Office fixtures

**41.** Office equipment, including all computer equipment and communication systems equipment and software

**42.** Collectibles *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

**43.** Total of Part 7.
Add lines 39 through 42. Copy the total to line 86.      $7,500.00

**44.** Is a depreciation schedule available for any of the property listed in Part 7?
☒ No
☐ Yes

**45.** Has any of the property listed in Part 7 been appraised by a professional within the last year?
☒ No
☐ Yes

**Part 8:    Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
☒ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47.** Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles | | | |
| 47.1.  3 vehicles including new Chevrolet Truck, new Yukon Denali, and 2021 Jeep in the possession of John Patrick Campbell, III, of 4303 Hwy 19, Zachary, La., and Lawrence Vaughn of 133 Railroad Ave, Mangham, La. | $0.00 | | Unknown |
| 47.2.  2024 Chevrolet Silverado | $0.00 | | $35,000.00 |

**48.** Watercraft, trailers, motors, and related accessories *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

**49.** Aircraft and accessories

**50.** Other machinery, fixtures, and equipment (excluding farm machinery and equipment)

51.  **Total of Part 8.**

     Add lines 47 through 50.  Copy the total to line 87.                              | $35,000.00 |

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**
     ☒ No
     ☐ Yes

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
     ☒ No
     ☐ Yes

**Part 9:    Real property**

54.  **Does the debtor own or lease any real property?**

     ☒ No.   Go to Part 10.
     ☐ Yes Fill in the information below.

**Part 10:    Intangibles and Intellectual property**

59.  **Does the debtor have any interests in intangibles or intellectual property?**

     ☒ No.   Go to Part 11.
     ☐ Yes Fill in the information below.

**Part 11:    All other assets**

70.  **Does the debtor own any other assets that have not yet been reported on this form?**
     Include all interests in executory contracts and unexpired leases not previously reported on this form.

     ☐ No.   Go to Part 12.
     ☒ Yes Fill in the information below.

                                                                              **Current value of
                                                                              debtor's interest**

71.  **Notes receivable**
     Description (include name of obligor)

72.  **Tax refunds and unused net operating losses (NOLs)**
     Description (for example, federal, state, local)

73.  **Interests in insurance policies or annuities**

74.  **Causes of action against third parties (whether or not a lawsuit
     has been filed)**

75.  **Other contingent and unliquidated claims or causes of action of
     every nature, including counterclaims of the debtor and rights to
     set off claims**

     claim for reinsurance funds once resolved                                        Unknown
     _____
     **Nature of claim**
     **Amount requested**            $0.00

76.  **Trusts, equitable or future interests in property**

77.  **Other property of any kind not already listed** *Examples:* Season tickets,
     country club membership

78.  **Total of Part 11.**                                                    | $0.00 |

     Add lines 71 through 77. Copy the total to line 90.

79.  **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

Debtor   Claiborne Automotive Group, LLC
         Name

Case number (if known)   25-11051

☒ No
☐ Yes

**Part 12**    Summary

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. Cash, cash equivalents, and financial assets. Copy line 5, Part 1 | $139,866.20 | |
| 81. Deposits and prepayments. Copy line 9, Part 2. | $0.00 | |
| 82. Accounts receivable. Copy line 12, Part 3. | $0.00 | |
| 83. Investments. Copy line 17, Part 4. | $0.00 | |
| 84. Inventory. Copy line 23, Part 5. | $0.00 | |
| 85. Farming and fishing-related assets. Copy line 33, Part 6. | $0.00 | |
| 86. Office furniture, fixtures, and equipment; and collectibles. Copy line 43, Part 7. | $7,500.00 | |
| 87. Machinery, equipment, and vehicles. Copy line 51, Part 8. | $35,000.00 | |
| 88. Real property. Copy line 56, Part 9.................................> | | $0.00 |
| 89. Intangibles and intellectual property. Copy line 66, Part 10. | $0.00 | |
| 90. All other assets. Copy line 78, Part 11. | + $0.00 | |
| 91. Total. Add lines 80 through 90 for each column | $182,366.20 | + 91b. $0.00 |

92. Total of all property on Schedule A/B. Add lines 91a+91b=92      $182,366.20

Fill in this information to identify the case:

Debtor name  **Claiborne Automotive Group, LLC**

United States Bankruptcy Court for the:  **WESTERN DISTRICT OF LOUISIANA**

Case number (if known)  **25-11051**

☒ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**
☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
☒ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim |
|---|---|---|
| **2.1  GM Financial**<br>Creditor's Name | Describe debtor's property that is subject to a lien | $52,097.92 | $0.00 |

**2.1  GM Financial**
Creditor's Name

P.O. Box 182974
Arlington, TX 76096
Creditor's mailing address

Describe the lien
**Mortgage**
Is the creditor an insider or related party?
☒ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☒ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☒ Disputed

| Amount of claim | Value of collateral |
|---|---|
| $52,097.92 | $0.00 |

---

**2.2  GM Financial**
Creditor's Name
801 Cherry Street
Suite 3600
Fort Worth, TX 76102
Creditor's mailing address

Describe debtor's property that is subject to a lien
**2024 Chevrolet Silverado**

Describe the lien
**Mortgage**
Is the creditor an insider or related party?
☒ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☒ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

| Amount of claim | Value of collateral |
|---|---|
| Unknown | $35,000.00 |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| 2.3 | Vera Bank | Describe debtor's property that is subject to a lien | $425,337.00 | $0.00 |

Creditor's Name

P.O. Box 1009
Henderson, TX 75653
Creditor's mailing address

Describe the lien
Floor Plan
Is the creditor an insider or related party?
☒ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☒ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

3.  Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any,    $477,434.92

**Part 2    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name   and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |

Official Form 206D          Additional Page of Schedule D: Creditors Who Have Claims Secured by Property          page 2 of 2

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

25-11050 -#29   File 12/05/25  Enter 12/05/25 11:01:49  Main Document   Pg 8 of 81
25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document   Pg 78 of 235

Debtor name    Claiborne Automotive Group, LLC

United States Bankruptcy Court for the:    WESTERN DISTRICT OF LOUISIANA

Case number (if known)    25-11051

☒ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property (Official Form 206A/B)* and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:   List All Creditors with PRIORITY Unsecured Claims

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ☒ Yes. Go to line 2.

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors
with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**Audrey Dudley**<br>1103 Drew Lane<br>Minden, LA 71055 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $1,100.00 | $1,100.00 |
|  | Date or dates debt was incurred | Basis for the claim:<br>wages |  |  |
|  | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>☒ No<br>☐ Yes |  |  |
| **2.2** | Priority creditor's name and mailing address<br>**Claiborne Parish Sheriff's Office**<br>300 Hwy 146<br>Homer, LA 71040 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $19,364.76 | $19,364.76 |
|  | Date or dates debt was incurred | Basis for the claim:<br>Property Taxes |  |  |
|  | Last 4 digits of account number **5318**<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>☒ No<br>☐ Yes |  |  |
| **2.3** | Priority creditor's name and mailing address<br>**Internal Revenue Service**<br>P.O. Box 1214<br>Charlotte, NC 28201-1214 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $408,724.04 | $408,724.04 |
|  | Date or dates debt was incurred | Basis for the claim:<br>941 Payroll Withholding Taxes |  |  |
|  | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>☒ No<br>☐ Yes |  |  |

| Debtor | Claiborne Automotive Group, LLC | Case number (if known) | 25-11051 |
|---|---|---|---|

Name

| | | | $1,500.00 | $1,500.00 |
|---|---|---|---|---|

**2.4** Priority creditor's name and mailing address

Kathy Todd
1103 Frew Lane
Minden, LA 71055

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
wages

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

| | | | $28,328.21 | $0.00 |
|---|---|---|---|---|

**2.5** Priority creditor's name and mailing address

Louisiana Dept of Revenue &
Taxation
Bankruptcy Section
P.O. Box 201
Baton Rouge, LA 70821

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
Withholding Taxes

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

| | | | $4,552.70 | $0.00 |
|---|---|---|---|---|

**2.6** Priority creditor's name and mailing address

Louisiana Dept of Revenue &
Taxation
Bankruptcy Section
P.O. Box 201
Baton Rouge, LA 70821

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
Sales Tax

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

| | | | $2,300.00 | $2,300.00 |
|---|---|---|---|---|

**2.7** Priority creditor's name and mailing address

Steven Kennedy
3985 Langham West Road
Orange, TX 77630

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
wages

Last 4 digits of account number

Is the claim subject to offset?
☒ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

| | | $8,614.88 |
|---|---|---|

As of the petition filing date, the claim is: Check all that apply.

**3.1** Nonpriority creditor's name and mailing address

700 Credit
P.O. Box 101015
Pasadena, CA 91189

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: Open Account

Last 4 digits of account number _

Is the claim subject to offset? ☒ No ☐ Yes

Official Form 206 E/F                    Schedule E/F: Creditors Who Have Unsecured Claims                    Page 2 of 31

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

25-11051  Doc 26  Filed 12/05/25  Enter 12/05/25 11:01:49  Main Document  Pg 10 of 61
25-11050  #24  Filed 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 80 of 235



# UNITED STATES OF AMERICA
# State of Louisiana

## Nancy Landry
### SECRETARY OF STATE

*As Secretary of State of the State of Louisiana, I do hereby Certify that*

the attached document(s) of

**JPS MOTORS, L.L.C.**

are true and correct and are filed in the Louisiana Secretary of State's Office.

41663155K    ORIGF    10/8/2014    3 page(s)

In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,

October 6, 2025



*Nancy Landry*

*Secretary of State*

**WEB 41663155K**

Certificate ID: 12098556#C4P83

To validate this certificate, visit the following web site, go to **Business Services, Search for Louisiana Business Filings, Validate a Certificate,** then follow the instructions displayed.
**www.sos.la.gov**

# ARTICLES OF ORGANIZATION

## OF

### JPS MOTORS, L.L.C.

BE IT KNOWN AND REMEMBERED, that on the date hereinafter written, before the undersigned Notary Public, and in the presence of the undersigned legal and competent witnesses, personally came and appeared **K. PAUL BULLOCK**, a resident of the full age of majority of Downsville, Union Parish, Louisiana, whose present mailing address is 247 Pelican Dr., Downsville, Louisiana 71234, **JASON P. BULLOCK**, a resident of the full age of majority of Ruston, Lincoln Parish, Louisiana, whose present mailing address is 189 Fleur De Lis Drive, Dubach, Louisiana 71235, **STEPHEN H. BULLOCK**, a resident of the full age of majority of Ruston, Lincoln Parish, Louisiana, whose present mailing address is 245 Fleur De Lis Drive, Dubach, Louisiana 71235, and **JOHN HERMAN SULLIVAN**, resident of the full age of majority of Ruston, Lincoln Parish, Louisiana, whose present mailing address is 1004 Cypress Street, West Monroe, LA 71291, who declared that the undersigned, acting pursuant to the Limited Liability Company Law of Louisiana, adopt the following Articles of Organization, thereby organizing and creating **JPS MOTORS, L.L.C.**, a Louisiana Limited Liability Company.

## ARTICLE I.
### Name
The name of this Louisiana Limited Liability Company is **JPS MOTORS, L.L.C.**

## ARTICLE II.
### Purpose
The purpose of the LLC is to engage in any lawful activity for which limited liability companies may be formed under the Louisiana Limited Liability Company Law.

## ARTICLE III.
### Management
The LLC shall be managed by a manager who may also be a member. The LLC's operating agreement contains certain restrictions on the authority of the manager to bind the LLC. Any person dealing with the LLC should consult the Operating Agreement for such restrictions on the authority of any member.

## ARTICLE IV.
### Term
The term of the LLC shall be for an initial period of thirty (30) years, which said term, before the expiration thereof, may be extended by the members in accordance with the Operating Agreement.

## ARTICLE V.
### Dissolution
The latest date the LLC is to dissolve is January 1, 2044, unless continued prior to such date by the written unanimous consent of the members.

## ARTICLE VI.
### *Persons Dealing with the LLC*

Persons dealing with the LLC may rely upon a certificate of any one of the certifying officials listed below to establish the membership of any member, the authenticity of any records of the LLC, including, without limitation, the operating agreement, or the authority of any person to act on behalf of the LLC, including, without limitation, the authority to take the actions referred to in La. Rev. Stat. 12:1318 (B).

## ARTICLE VII.
### *Certifications & Appointment of Manager*

The following person is hereby named as the Initial Manager and as the authorized certifying official of the LLC, and may exercise the full authority granted by the La. Rev. Stat. 12:1305 (C)(5) without the need to obtain the written approval or certification of any other certifying official:

### JASON P. BULLOCK

IN WITNESS WHEREOF, the undersigned Organizer has duly executed these Articles of Organization, before me, Notary, and in the presence of the undersigned legal and competent witnesses, on this _26th_ day of _September_ , 2014.

WITNESSES:

Print Name: _Priscilla Turner_

Print Name: _Harley Behm_

K. PAUL BULLOCK     –Organizer

JASON P. BULLOCK     –Organizer

STEPHEN H. BULLOCK     –Organizer

JOHN HERMAN SULLIVAN     –Organizer

NOTARY PUBLIC

RYAN MADDEN · NOTARY ID NO. 26078
NOTARY PUBLIC
LINCOLN PARISH, LA

## DOMESTIC LIMITED LIABILITY COMPANY INITIAL REPORT

**STATE OF LOUISIANA**                                            **PARISH OF LINCOLN**

TO:     The Secretary of State
        Baton Rouge, Louisiana

Complying with R. S. 12:1305, **JPS MOTORS, L.L.C.**, hereby makes its initial report as follows:

1.      The name of the limited liability company is: **JPS MOTORS, L.L.C.**

2.      The location and municipal address of this limited liability company's **Registered Office:** 5410 Operations Road, Monroe, LA 71203.

3.      The full name and municipal address of this limited liability company's **Registered Agent:** JASON P. BULLOCK: 5410 Operations Road, Monroe, LA 71203.

4.      The name and municipal address of the first members:

        K. PAUL BULLOCK                          STEPHEN H. BULLOCK
        247 Pelican Dr.                          245 Fleur De Lis Dr.
        Downsville, Louisiana 71234              Dubach, LA 71235

        JASON P. BULLOCK                         JOHN HERMAN SULLIVAN
        5410 Operations Road,                    1004 Cypress Street
        Monroe, LA 71203.                        West Monroe, LA 71291

5.      The full name and municipal address of this limited liability company's **Manager:**
        JASON P. BULLOCK : 5410 Operations Road, Monroe, LA 71203.

        IN WITNESS WHEREOF, the undersigned has duly executed this Initial Report on this 26th day of September, 2014.

        _____                 _____
        K. PAUL BULLOCK –Organizer               STEPHEN H. BULLOCK –Organizer

        _____                 _____
        JASON P. BULLOCK –Organizer              JOHN HERMAN SULLIVAN –Organizer

### AGENT'S AFFIDAVIT AND ACKNOWLEDGMENT OF ACCEPTANCE

I hereby acknowledge and accept the appointment of         Sworn to and subscribed before me on this 26th
registered agent for and on behalf of the above           day of September, 2014.
named limited liability company.
Registered Agent:

_____                                   _____
JASON P. BULLOCK                                          NOTARY PUBLIC



# UNITED STATES OF AMERICA
# State of Louisiana

## Nancy Landry
### SECRETARY OF STATE

*As Secretary of State of the State of Louisiana, I do hereby Certify that*

the attached document(s) of

**ARCADIA MOTORS, LLC**

are true and correct and are filed in the Louisiana Secretary of State's Office.

44872023K    ORIGF    4/5/2022    3 page(s)

In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,

December 15, 2025

*Nancy Landry*

*Secretary of State*

WEB 44872023K



Certificate ID: 12125902#NJ62

To validate this certificate, visit the following web site, go to **Business Services, Search for Louisiana Business Filings, Validate a Certificate**, then follow the instructions displayed.

**www.sos.la.gov**

# STATE OF LOUISIANA

## ARTICLES OF ORGANIZATION

### (R.S. 12:1301)

**1. The name of this limited liability company is:**
ARCADIA MOTORS, LLC

**2. This company is formed for the purpose of:**
ENGAGING IN ANY LAWFUL ACTIVITY FOR WHICH LIMITED LIABILITY COMPANIES
MAY BE FORMED

**3. The duration of this limited liability company is: (may be perpetual):**
99 YEARS

**4. The company is:**
MANAGER-MANAGED

**Other provisions:**
Ability of Members to Bind the Company. The ability of the members to bind the Company shall be
restricted pursuant to the terms and conditions of the Operating Agreement.

Management. The business of the Company shall be managed by one or more managers (hereinafter
referred to as the 'Manager') whose authority shall be restricted pursuant to the terms and conditions of
the Operating Agreement. There shall be at least one Manager, who may or may not be a member of the
Company. Subject to the limitations contained in the Operating Agreement, if more than one Manager is
acting, any Manager shall have the authority to act alone in carrying out the business of the Company.
Any person dealing with the Company may rely on a certificate signed by one of the Managers of the
Company to establish the membership of any member, the authenticity of any record of the Company, or
the authority of any person to act on behalf of the Company, including but not limited to the authority to
take actions referred to in La. R.S. 12:1318(B).

Limitation of Liability. No member, Manager, employee or agent of the Company is or shall be liable
under any judgment, decree or order of any court, agency or other tribunal in the state of Louisiana or in
any other jurisdiction, or on any other basis, for a debt, obligation or liability of the Company. Each
member, including any member who may act as Manager shall have no personal liability whatsoever to
any third party, for monetary damages or otherwise, as a result of membership in or management of the
Company.

**The filing of a false public record, with the knowledge of its falsity, is a crime, subjecting the
filer to fine or imprisonment or both under R.S. 14:133.**

BY TYPING MY NAME BELOW, I HEREBY CERTIFY THAT I AM THE ORGANIZER.
**ELECTRONIC SIGNATURE:** STEPHEN J. PAINE (4/1/2022)
**TITLE:** ORGANIZER

## LIMITED LIABILITY COMPANY INITIAL REPORT

### (R.S. 12:1305 (E))

**The name of this limited liability company is:**
ARCADIA MOTORS, LLC

**The location and municipal address (not a P.O. Box only) of this limited liability company's**

**registered office:**
3117 WEST 70TH STREET
SHREVEPORT, LA, 71108

**Mailing Address:**
3117 WEST 70TH STREET
SHREVEPORT, LA, 71108

**The full name and municipal address (not a P.O. Box only) of each of this limited liability company's registered agent(s) is/are:**
THOMAS G. MARTIN
3117 WEST 70TH STREET
SHREVEPORT, LA, 71108

**The name and municipal address (not a P.O. Box only) of the managers or members:**
THOMAS G. MARTIN (MANAGER)
3117 WEST 70TH STREET
SHREVEPORT, LA, 71108

**The filing of a false public record, with the knowledge of its falsity, is a crime, subjecting the filer to fine or imprisonment or both under R.S. 14:133.**

BY TYPING MY NAME BELOW, I HEREBY CERTIFY THAT I AM THE ORGANIZER.
**ELECTRONIC SIGNATURE:** STEPHEN J. PAINE (4/1/2022)
**TITLE:** ORGANIZER



# Agent Affidavit and Acknowledgement of Acceptance

**Charter Number:** 44872023K

**Charter Name:** ARCADIA MOTORS, LLC

The agent / agents listed below accept the appointment of registered agent for and on behalf of the Charter Name above.

| Date Responded | Agent(s) | Agent(s) Electronic Signature |
|---|---|---|
| 04/05/2022 | THOMAS G. MARTIN | THOMAS G. MARTIN |

Nancy Landry
Secretary of State

State of
Louisiana
Secretary of
State



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

# Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** JPS FORD
**Applicant:** JPS MOTORS, L.L.C.
224 GAP FARMS ROAD
P.O. BOX 508
ARCADIA, LA 71001
**Type Of Business:** AUTO DEALERSHIP
**Book #:** 73-5882
**Current Status:** ACTIVE

## Dates

**Registration Date:** 1/7/2021
**Expiration Date:** 1/7/2031
**Date First Used:** 10/8/2014
**Date First Used (in La.):** 10/8/2014

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

**No Amendments on file**

Print

**Nancy Landry**
**Secretary of State**

**State of Louisiana Secretary of State**



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

---

# Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** JPS FORD
**Applicant:** JPS MOTORS, L.L.C.
224 GAP FARMS ROAD
P.O. BOX 508
ARCADIA, LA 71001
**Type Of Business:** AUTO DEALERSHIP
**Book #:** 73-5882
**Current Status:** ACTIVE

## Dates

**Registration Date:** 1/7/2021
**Expiration Date:** 1/7/2031
**Date First Used:** 10/8/2014
**Date First Used (in La.):** 10/8/2014

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

**No Amendments on file**

Print

State of
Louisiana
Secretary of
State



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

## Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** ARCADIA FORD
**Applicant:** THOMAS MARTIN
3117 WEST 70TH STREET
SHREVEPORT, LA 71118
**Type Of Business:** NEW CARS
**Book #:** 79-2915
**Current Status:** ACTIVE

## Dates

**Registration Date:** 9/21/2023
**Expiration Date:** 9/21/2033
**Date First Used:** 9/21/2023
**Date First Used (in La.):** 9/21/2023

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

**No Amendments on file**

Print

**Nancy Landry**
**Secretary of State**

State of
Louisiana
Secretary of
State



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

## Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** ARCADIA FORD
**Applicant:** THOMAS MARTIN
3117 WEST 70TH STREET
SHREVEPORT, LA 71118
**Type Of Business:** NEW CARS
**Book #:** 79-2915
**Current Status:** ACTIVE

## Dates

**Registration Date:** 9/21/2023
**Expiration Date:** 9/21/2033
**Date First Used:** 9/21/2023
**Date First Used (in La.):** 9/21/2023

## Current Classes
**No Current Classes**

## Expired Classes
**No Expired Classes**

## Amendments On File
**No Amendments on file**

Print





# GBT.bank

P.O. Box 180, Gibsland, Louisiana 71028-0180

| | |
|---|---|
| ******************EXCLUDE-Email | **Page Number** 1 of 19 |
| 002397 0.4640 EX 00.000 | **Account Number:** ***9853 |
| | **Date** 06/30/24 |

JASON PAUL BULLOCK
224 GAP FARM RD
ARCADIA LA 71001-5227

YOUR FINANCIAL SAFETY AND SECURITY IS OUR TOP PRIORITY.
Visit our website for Customer Education tips and best practices
for keeping your information secure and learn how to identiy
potential fraud.
www.gbt.bank

## STATEMENT SUMMARY AS OF 06/30/24

| Account Name | Account Number | Balance |
|---|---|---|
| GBT SMALL BUSINESS CHECKI | | 531.29- |

| GBT SMALL BUSINESS CHECKI | JPS MOTORS LLC | | Acct | 1179853 |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Beginning Balance | 6/01/24 | 545.67- | |
| Deposits / Misc Credits | 30 | 1,014,190.44 | |
| Withdrawals / Misc Debits | 170 | 1,014,176.06 | |
| ** Ending Balance | 6/30/24 | 531.29- | ** |
| Service Charge | | 9.99 | |
| Minimum Balance | | 7,344- | |
| Enclosures | | 136 | |

## Deposits and Other Credits

| Date | Deposits | Activity Description | |
|---|---|---|---|
| 6/03 | 54,129.62 | DEPOSIT | |
| 6/03 | 2,438.91 | WELLS FARGO AUTO/EFT AMOUNT JPS Motors, L.L.C. | |
| 6/03 | 539.25 | Rev: NSF Charge-Item Returned | |
| | | # 1812 | 1814 |
| | | # 1816 | 1817 |
| | | # 1820 | 1822 |
| | | # 1825 | 1826 |
| | | # 101066 | 102495 |
| | | # 102507 | |
| 6/04 | 46,734.44 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC | |
| 6/05 | 10,629.77 | DEPOSIT | |
| 6/06 | 25,167.05 | DEPOSIT | |
| 6/07 | 2,347.95 | DEPOSIT | |

NOTE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

Page Number     2 of 19
Account Number:     ***9853
Date:     06/30/24

## Deposits and Other Credits

| Date | Deposits | Activity Description |
|------|----------|---------------------|
| 6/07 | .03 | ACV Auctions Inc/PAYMENTS NTE*ZZZ*00014151/350\NTE*ZZZ*NA\ 151-00014151350 JPS Ford |
| 6/10 | 1,913.62 | ALLY INSURANCE C/DISBURSE WN796908 JPS MOTORS, L.L.C. |
| 6/10 | 26,498.75 | REGIONAL ACCEPT/PROCEEDS 000001000186995 JPS FORD |
| 6/10 | 1,236.82 | ARCADIA MOTO-8850 Internet Transfer Fro |
| 6/10 | 21,993.44 | ARCADIA MOTO-8850 Internet Transfer Fro |
| 6/11 | 100,893.80 | DEPOSIT |
| 6/11 | 2,596.00 | Capital One Auto/DEALERFUND 000040185 JPS FORD |
| 6/12 | 160,734.97 | DEPOSIT |
| 6/13 | 41,773.55 | DEPOSIT |
| 6/13 | 5,824.54 | AUTO RENTALS INC/ACH PAYMNT 593177 JPS FORD |
| 6/14 | 980.13 | DEPOSIT |
| 6/17 | 12,504.50 | BARKSDALE FCU/ONLINEACCT JPS FORD |
| 6/17 | 78,190.38 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC |
| 6/20 | 66,053.56 | DEPOSIT |
| 6/21 | 105,300.20 | DEPOSIT |
| 6/24 | 77,796.02 | DEPOSIT |
| 6/25 | 41,733.28 | REGIONAL ACCEPT/PROCEEDS 000001000189389 JPS FORD |
| 6/26 | 2,507.47 | DEPOSIT |
| 6/26 | 3,447.81 | CREDIT ACCEPTANC/ACHBATCH 300000016523517 JPS MOTORS L.L.C. (H08 |
| 6/27 | 58,496.68 | DEPOSIT |
| 6/27 | 341.78 | ELEMENT FT CORP/PAYMENT 0003014006 JPS MOTORS INC J |
| 6/28 | 61,113.45 | DEPOSIT |
| 6/28 | 272.67 | PDS Inc Oprtng/CASH DISB FMC1507010 JPS Ford |

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|------|-------------|---------------------|
| 6/03 | 539.25 | Overdraft Charge-Item Paid |
|  |  | #   1812   1814 |
|  |  | #   1816   1817 |
|  |  | #   1820   1822 |
|  |  | #   1825   1826 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description | |
|---|---|---|---|
| | | #       101066 | 102495 |
| | | #       102507 | |
| 6/03 | 250.00 | Western Surety/debitpmt #355915491 CNA Surety | |
| 6/03 | 12,903.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD | |
| 6/03 | 15,807.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD | |
| 6/03 | 17,448.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD | |
| 6/03 | 143.80 | Overdraft Charge-Item Paid | |
| | | #       1823 | 1824 |
| | | #       102505 | |
| 6/03 | 3,304.04 | WRIGHT EXPRESS/FLEET DEBI 9100008156475 Claiborne Auto Group L | |
| 6/04 | 46,481.00 | DEBIT MEMO | |
| 6/04 | 179.75 | Overdraft Charge-Item Paid | |
| | | #       1821 | 102421 |
| | | #       102508 | 102509 |
| 6/05 | 107.85 | Overdraft Charge-Item Paid | |
| | | #       102512 | 102513 |
| 6/05 | 10,036.11 | BCBSLA/BCBSLA REF*BFPMTID*8007159616*INVNBR*2413800174 40\ 89311ERC0000 JPS MOTORS, L.L.C. | |
| 6/06 | 35.95 | Overdraft Charge-Item Paid | |
| | | #       102502 | |
| 6/07 | 431.40 | Overdraft Charge-Item Paid | |
| | | #       1810 | 1815 |
| | | #       1818 | 1836 |
| | | #       1838 | 1839 |
| | | #       1841 | 1843 |
| | | #       102212 | 102388 |
| | | #       102422 | |
| 6/07 | 2,486.00 | MECHANICAL BREAK/8163470900 M80476423897 UNKNOWN | |
| 6/10 | 10,776.22 | DEBIT MEMO | |
| 6/10 | .03 | ACV CAPTIAL LLC/PAYMENT 74724 JPS FORD | |
| 6/10 | 143.80 | Overdraft Charge-Item Paid | |
| 6/10 | 19,986.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD | |
| 6/10 | 25,591.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD | |
| 6/10 | 26,957.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD | |
| 6/10 | 28,216.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD | |
| 6/11 | 1,756.87 | STATE OF LOUISIA/LA UI TAX 6470513 | |
| 6/11 | 143.80 | Overdraft Charge-Item Paid | |
| | | #       102412 | 102530 |
| | | #       102531 | |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|------|-------------|---------------------|
| 6/11 | 38,746.00 | MECHANICAL BREAK/8163470900 |
| | | M80479226709 UNKNOWN |
| 6/12 | 452.80 | ALLY INSURANCE D/COLLECT WN796908 JPS |
| | | MOTORS, L.L.C. |
| 6/12 | 35.95 | Overdraft Charge-Item Paid |
| 6/12 | 56,957.68 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FTFW3L51RKD94935*24 F-150 |
| | | \REF*IV163E02011 \REF*IT*23636\ |
| | | 163E02011F23636 JPS Ford |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS |
| | | MOTORS LLC DBA JPS |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS |
| | | MOTORS LLC DBA JPS |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS |
| | | MOTORS LLC DBA JPS |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS |
| | | MOTORS LLC DBA JPS |
| 6/13 | 35.95 | Overdraft Charge-Item Paid |
| | | # 102344 |
| 6/14 | 359.50 | Overdraft Charge-Item Paid |
| | | # 1849 1850 |
| | | # 1852 1854 |
| | | # 1855 102498 |
| | | # 102541 102543 |
| | | # 102546 102547 |
| 6/17 | 62,284.23 | DEBIT MEMO |
| 6/17 | 155.71 | CPENERGY ENTEX/ENT ACH DR CNP |
| 6/18 | 9,729.09 | DEBIT MEMO |
| 6/18 | 503.30 | Overdraft Charge-Item Paid |
| | | # 1845 1858 |
| | | # 101031 102153 |
| | | # 102404 102483 |
| | | # 102484 102499 |
| | | # 102500 102528 |
| | | # 102542 102548 |
| | | # 102549 102550 |
| 6/20 | 35.95 | NSF Charge-Item Returned |
| 6/20 | 143.80 | Overdraft Charge-Item Paid |
| | | # 101139 102506 |
| | | # 102556 |
| 6/20 | 52,259.04 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FT8W3DA1REE08075*24 F-SERIES SD |
| | | \REF*IV*170E03160 \REF*IT*23636\ |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| | | 170E03160F23636 JPS Ford |
| 6/21 | 5,041.51 | WRIGHT EXPRESS/FLEET DEBI 9100008156475 |
| | | Claiborne Auto Group L |
| 6/21 | 71.90 | Overdraft Charge-Item Paid |
| 6/21 | 52,259.04 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FT8W3DAXREE04803*24 F-SERIES SD |
| | | \REF*IV*172E05704 \REF*IT*23636\ |
| | | 172E05704F23636 JPS Ford |
| 6/21 | 60,699.36 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FTFW3L59RKD07377*24 F-150 |
| | | \REF*IV*172E05705 \REF*IT*23636\ |
| | | 172E05705F23636 JPS Ford |
| 6/24 | 215.70 | Overdraft Charge-Item Paid |
| | | #        1864                1865 |
| | | #        102545            102555 |
| | | #        102576            102579 |
| 6/25 | 7,804.15 | DEBIT MEMO |
| 6/25 | 71.90 | Overdraft Charge-Item Paid |
| | | #        102403            102516 |
| 6/26 | 35.95 | Overdraft Charge-Item Paid |
| 6/26 | 58,496.68 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FTFW3L50RKE14382*24 F-150 |
| | | \REF*IV*177E01947 \REF*IT*23636\ |
| | | 177E01947F23636 JPS Ford |
| 6/27 | 71.90 | Overdraft Charge-Item Paid |
| | | #        102532 |
| 6/27 | 56,399.88 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FTRU8XG3RKA16188*24 TRANSIT NA |
| | | \REF*IV*178E02354 \REF*IT*23636\ |
| | | 178E02354F23636 JPS Ford |
| 6/28 | 503.30 | NSF Charge-Item Returned |
| | | #        1872                1873 |
| | | #        1875                1880 |
| | | #        1881                1882 |
| | | #        1883                101011 |
| | | #        102217            102349 |
| | | #        102350            102435 |
| | | #        102563            102591 |
| 6/28 | 9.99 | SERVICE CHARGE |



P.O. Box 180, Gibsland, Louisiana 71028-0180

Page Number      6 of 19
Account Number:     ***9853
Date:      06/30/24

JPS MOTORS LLC

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|------|----------|--------|------|----------|--------|
| 6/07 | 1810 | 898.24 | 6/21 | 1866 | 413.29 |
| 6/03 | 1811 | 456.42 | 6/21 | 1868* | 309.73 |
| 6/03 | 1812 | 1,261.45 | 6/21 | 1869 | 459.69 |
| 6/03 | 1814* | 444.20 | 6/21 | 1871* | 1,023.42 |
| 6/07 | 1815 | 961.15 | 6/18 | 101031* | 1,144.00 |
| 6/03 | 1816 | 497.49 | 6/21 | 101032 | 300.00 |
| 6/03 | 1817 | 463.36 | 6/03 | 101066* | 557.69 |
| 6/07 | 1818 | 281.08 | 6/20 | 101139* | 462.37 |
| 6/03 | 1819 | 1,330.96 | 6/18 | 102153* | 125.00 |
| 6/03 | 1820 | 357.86 | 6/07 | 102212* | 1,248.14 |
| 6/04 | 1821 | 1,908.38 | 6/21 | 102325* | 347.85 |
| 6/03 | 1822 | 613.73 | 6/21 | 102326 | 1,765.10 |
| 6/03 | 1823 | 1,084.58 | 6/13 | 102344* | 944.18 |
| 6/03 | 1824 | 1,026.93 | 6/07 | 102388* | 4,561.35 |
| 6/03 | 1825 | 1,048.43 | 6/10 | 102400* | 2,535.87 |
| 6/03 | 1826 | 202.61 | 6/25 | 102403* | 2,203.75 |
| 6/10 | 1835* | 449.86 | 6/18 | 102404 | 170.72 |
| 6/07 | 1836 | 938.68 | 6/11 | 102412* | 13,476.90 |
| 6/07 | 1838* | 306.56 | 6/26 | 102420* | 981.64 |
| 6/07 | 1839 | 1,393.90 | 6/04 | 102421 | 1,216.83 |
| 6/10 | 1840 | 356.69 | 6/07 | 102422 | 2,550.47 |
| 6/07 | 1841 | 415.89 | 6/10 | 102452* | 1,002.53 |
| 6/07 | 1843* | 356.77 | 6/26 | 102461* | 565.00 |
| 6/10 | 1844 | 1,849.15 | 6/27 | 102467* | 250.00 |
| 6/18 | 1845 | 189.45 | 6/21 | 102468 | 862.10 |
| 6/11 | 1847* | 362.00 | 6/21 | 102480* | 1,119.14 |
| 6/10 | 1848 | 5,038.52 | 6/18 | 102483* | 125.00 |
| 6/14 | 1849 | 431.62 | 6/18 | 102484 | 50.24 |
| 6/14 | 1850 | 358.58 | 6/03 | 102495* | 350.00 |
| 6/17 | 1851 | 439.35 | 6/03 | 102496 | 264.00 |
| 6/14 | 1852 | 1,461.90 | 6/14 | 102498* | 198.39 |
| 6/14 | 1854* | 412.74 | 6/18 | 102499 | 15.87 |
| 6/14 | 1855 | 694.98 | 6/18 | 102500 | 149.58 |
| 6/17 | 1856 | 1,330.96 | 6/06 | 102502* | 2,312.00 |
| 6/17 | 1857 | 911.94 | 6/03 | 102505* | 2,250.00 |
| 6/18 | 1858 | 1,908.38 | 6/20 | 102506 | 40.00 |
| 6/17 | 1859 | 613.73 | 6/03 | 102507 | 1,375.56 |
| 6/17 | 1860 | 1,301.65 | 6/04 | 102508 | 80.00 |
| 6/17 | 1861 | 1,265.51 | 6/04 | 102509 | 80.00 |
| 6/17 | 1862 | 1,265.51 | 6/05 | 102512* | 12,925.00 |
| 6/21 | 1863 | 861.10 | 6/05 | 102513 | 2,098.09 |
| 6/24 | 1864 | 572.04 | 6/11 | 102514 | 77.00 |
| 6/24 | 1865 | 938.67 | 6/21 | 102515 | 170.69 |



STATEMENT

**MEMBER
FDIC**



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|---|---|---|---|---|---|
| 6/25 | 102516 | 231.82 | 6/24 | 102545* | 2,335.73 |
| 6/17 | 102520* | 597.96 | 6/14 | 102546 | 167.24 |
| 6/12 | 102522* | 104.55 | 6/14 | 102547 | 264.00 |
| 6/10 | 102524* | 1,200.00 | 6/18 | 102548 | 9,295.67 |
| 6/11 | 102525 | 131.60 | 6/18 | 102549 | 30,845.99 |
| 6/18 | 102528* | 176.00 | 6/18 | 102550 | 19,104.36 |
| 6/11 | 102530* | 77,776.40 | 6/21 | 102553* | 1,860.98 |
| 6/11 | 102531 | 30,735.67 | 6/21 | 102554 | 1,818.72 |
| 6/27 | 102532 | 6,800.00 | 6/24 | 102555 | 11,125.33 |
| 6/21 | 102534* | 50.00 | 6/20 | 102556 | 100.00 |
| 6/21 | 102535 | 35.00 | 6/26 | 102570* | 89.34 |
| 6/21 | 102536 | 40.00 | 6/21 | 102574* | 216.44 |
| 6/12 | 102540* | 176.00 | 6/21 | 102575 | 330.00 |
| 6/14 | 102541 | 1,450.29 | 6/24 | 102576 | 150.00 |
| 6/18 | 102542 | 2,250.00 | 6/24 | 102579* | 18,591.66 |
| 6/14 | 102543 | 5,000.00 | | | |

( * indicates a break in check number sequence)

## Fee Recap

| | Total for this period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $3,271.45 | $16,033.70 |
| Total Returned Item Fees | $539.25 | $5,320.60 |

## Daily Balance Summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 6/03 | 7,418.25 − | 6/12 | 45,998.09 − | 6/24 | 33,929.13 − |
| 6/04 | 10,629.77 − | 6/13 | 980.13 − | 6/25 | 2,507.47 − |
| 6/05 | 25,167.05 − | 6/14 | 10,799.24 − | 6/26 | 56,720.80 − |
| 6/06 | 2,347.95 − | 6/17 | 9,729.09 | 6/27 | 61,404.12 − |
| 6/07 | 16,829.60 − | 6/18 | 66,053.56 − | 6/28 | 531.29 − |
| 6/10 | 89,289.64 − | 6/20 | 53,041.16 − | | |
| 6/11 | 149,006.08 − | 6/21 | 77,796.02 − | | |





| | |
|---|---|
| 06/03/2024 $54,129.62 | 06/13/2024 $41,773.55 |
| 06/05/2024 $10,629.77 | 06/14/2024 $980.13 |
| 06/06/2024 $25,167.05 | 06/20/2024 $66,053.56 |
| 06/07/2024 $2,347.95 | 06/21/2024 $105,300.20 |
| 06/11/2024 $100,893.80 | 06/24/2024 $77,796.02 |
| 06/12/2024 $160,734.97 | 06/26/2024 $2,507.47 |



| | |
|---|---|
| 06/27/2024 $58,496.68 | 06/25/2024 $7,804.15 |
| 06/28/2024 $61,113.45 | 06/07/2024 1810 $898.24 |
| 06/04/2024 $46,481.00 | 06/03/2024 1811 $456.42 |
| 06/10/2024 $10,776.22 | 06/03/2024 1812 $1,261.45 |
| 06/17/2024 $62,284.23 | 06/03/2024 1814 $444.20 |
| 06/18/2024 $9,729.09 | 06/07/2024 1815 $961.15 |



06/03/2024 1816 $497.49

06/03/2024 1822 $613.73

06/03/2024 1817 $463.36

06/03/2024 1823 $1,084.58

06/07/2024 1818 $281.08

06/03/2024 1824 $1,026.93

06/03/2024 1819 $1,330.96

06/03/2024 1825 $1,048.43

06/03/2024 1820 $357.86

06/03/2024 1826 $202.61

06/04/2024 1821 $1,908.38

06/10/2024 1835 $449.86



06/07/2024 1836 $938.68

06/10/2024 1844 $1,849.15

06/07/2024 1838 $306.56

06/18/2024 1845 $189.45

06/07/2024 1839 $1,393.90

06/11/2024 1847 $362.00

06/10/2024 1840 $356.69

06/10/2024 1848 $5,038.52

06/07/2024 1841 $415.89

06/14/2024 1849 $431.62

06/07/2024 1843 $356.77

06/14/2024 1850 $358.58



06/17/2024 1851 $439.35

06/18/2024 1858 $1,908.38

06/14/2024 1852 $1,461.90

06/17/2024 1859 $613.73

06/14/2024 1854 $412.74

06/17/2024 1860 $1,301.65

06/14/2024 1855 $694.98

06/17/2024 1861 $1,265.51

06/17/2024 1856 $1,330.96

06/17/2024 1862 $1,265.51

06/17/2024 1857 $911.94

06/21/2024 1863 $861.10

06/24/2024 1864 $572.04



06/18/2024 101031 $1,144.00



06/24/2024 1865 $938.67



06/21/2024 101032 $300.00



06/21/2024 1866 $413.29



06/03/2024 101066 $557.69



06/21/2024 1868 $309.73



06/20/2024 101139 $462.37



06/21/2024 1869 $459.69



06/18/2024 102153 $125.00



06/21/2024 1871 $1,023.42



06/07/2024 102212 $1,248.14





# GBT.bank

P.O. Box 180, Gibsland, Louisiana 71028-0180

******************EXCLUDE-Email
002838 0.2680 EX 00.000

KATIE L LAYFIELD
PO BOX 419
HOMER LA 71040-0419

2024 JONQUIL JUBILEE FESTIVAL - SATURDAY, MARCH 2nd
Celebrate the arrival of Spring in the Daffodil Capital of Louisiana
and enjoy thousands of daffodils along the home & garden tour!
The Jonquil Jubilee in Gibsland, LA is a family friendly event with
local, talented artisans of one-of-a-kind hand-made goods!
$5 Lions Club Pancake Breakfast. $10 Garden Tour Tickets are your
Admission to Gardens, Quilt Show & a map of various local plantings!
More info & vendor applications: www.gbt.bank/jonquiljubilee

## STATEMENT SUMMARY AS OF 02/29/24

| Account Name | Account Number | Interest Paid In 2023 | Balance |
|---|---|---|---|
| GBT SMALL BUSINESS CHECKI | | .00 | 39,579.78 |

| **GBT SMALL BUSINESS CHECKI** | **CLAIBORNE AUTOMOTIVE GROUP LLC** | | **Acct   1135988** |
|---|---|---|---|
| | **DBA JOHN MCKEE CHEVROLET BUICK GMC** | | |

| | | | |
|---|---|---|---|
| Beginning Balance | 2/01/24 | 42,962.63 | |
| Deposits / Misc Credits | 61 | 1,880,431.29 | |
| Withdrawals / Misc Debits | 278 | 1,883,814.14 | |
| ** Ending Balance | 2/29/24 | 39,579.78 | ** |
| Service Charge | | .00 | |
| Minimum Balance | | 1,038 | |
| Enclosures | | 227 | |

## Deposits and Other Credits

| Date | Deposits | Activity Description |
|---|---|---|
| 2/01 | 80,000.00 | DEPOSIT |
| 2/01 | 79.31 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/02 | 64,999.35 | DEPOSIT |
| 2/02 | 87.56 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/05 | 2,916.60 | DEPOSIT |
| 2/05 | 5,000.00 | DEPOSIT |
| 2/05 | 7,312.12 | DEPOSIT |
| 2/05 | 70,000.00 | DEPOSIT |



P.O. Box 180, Gibsland, Louisiana 71028-0180

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Deposits and Other Credits

| Date | Deposits | Activity Description |
|------|----------|---------------------|
| 2/05 | 381.73 | SPOTON, INC./MERCH DEP 545500001209576 |
| | | CAR GIANT |
| 2/05 | 536.10 | SPOTON, INC./MERCH DEP 545500001209576 |
| | | CAR GIANT |
| 2/05 | 3,818.54 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/06 | 47,172.98 | DEPOSIT |
| 2/06 | 4,184.18 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/06 | 18,742.50 | Capital One Auto/PY02/05/24 000043043 |
| | | CAR GIANT CHEVROLET B |
| 2/07 | 351.42 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/07 | 16,277.03 | CAF - HOUSTON/DEALERS 10203596997 |
| | | CLAIBORNE AUTOMOTIVE G |
| 2/08 | 1,352.12 | DEPOSIT |
| 2/08 | 110,244.70 | DEPOSIT |
| 2/08 | 2,114.77 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/09 | 2,165.42 | DEPOSIT |
| 2/09 | 493.35 | Capital One Auto/DEALERFUND 000043043 |
| | | CAR GIANT CHEVROLET B |
| 2/09 | 594.67 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/09 | 43,108.45 | CAF - HOUSTON/DEALERS 10203596997 |
| | | CLAIBORNE AUTOMOTIVE G |
| 2/12 | 6,582.54 | DEPOSIT |
| 2/12 | 13,000.00 | DEPOSIT |
| 2/12 | 20.00 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/13 | 129,192.41 | DEPOSIT |
| 2/13 | 68.00 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/13 | 14,610.27 | GM FINANCIAL/LOAN FUNDI RETAIL ADVANCE |
| | | CAR GIANT CHEVROLET BU |
| 2/13 | 72,319.61 | TD AUTO FINANCE/CCC ENTRY |
| | | 2907602-12-24R CLAIBORNE AUTOMOTIVE G |
| 2/14 | 9,995.00 | DEPOSIT |
| 2/14 | 22,000.00 | DEPOSIT |
| 2/15 | 172.28 | SPOTON, INC./MERCH DEP 545500001209618 |
| | | JOHN MCKEE CHEVROLET, |
| 2/16 | 40,200.00 | DEPOSIT |
| 2/20 | 56,712.76 | DEPOSIT |




GBT.bank

P.O. Box 180, Gibsland, Louisiana 71028-0180

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Deposits and Other Credits

| Date | Deposits | Activity Description |
|---|---|---|
| 2/20 | 20.00 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/20 | 402.08 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/21 | 360,235.60 | DEPOSIT |
| 2/21 | 987.62 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/21 | 91,052.55 | TD AUTO FINANCE/CCC ENTRY 2907602-20-24R CLAIBORNE AUTOMOTIVE G |
| 2/22 | 15,664.95 | DEPOSIT |
| 2/22 | 80,949.20 | DEPOSIT |
| 2/22 | 243,489.21 | DEPOSIT |
| 2/22 | 1,292.43 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/23 | 2,353.05 | DEPOSIT |
| 2/23 | 10,221.06 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/26 | 5,353.36 | DEPOSIT |
| 2/26 | 643.19 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/26 | 5,000.00 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/27 | 1,454.08 | DEPOSIT |
| 2/27 | 52,800.00 | DEPOSIT |
| 2/27 | 28.99 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/27 | 70.24 | AUTO RENTALS INC/ACH PAYMNT 583739 JOHN MCKEE CHEVR |
| 2/27 | 19,510.68 | GM FINANCIAL/LOAN FUNDI RETAIL ADVANCE CAR GIANT CHEVROLET BU |
| 2/27 | 30,000.00 | Internet Transfer From 4199 |
| 2/28 | 5,898.34 | DEPOSIT |
| 2/28 | 112.14 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/28 | 50,000.00 | Internet Transfer From 4199 |
| 2/29 | 2,003.78 | DEPOSIT |
| 2/29 | 65.30 | SPOTON, INC./MERCH DEP 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/29 | 54,017.67 | Capital One Auto/DEALERFUND 000043043 CAR GIANT CHEVROLET B |



 **GBT**.bank

P.O. Box 180, Gibsland, Louisiana 71028-0180

Page Number     4 of 29
Account Number:     ***5988
Date:     02/29/24

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|------|-------------|---------------------|
| 2/01 | 35.00 | Pitney Bowes/DIRECT DEB PBLeasing Blank Blank |
| 2/01 | 35.00 | Pitney Bowes/DIRECT DEB PBLeasing Blank Blank |
| 2/01 | 35.00 | Pitney Bowes/DIRECT DEB PBLeasing Blank Blank |
| 2/01 | 35.00 | Pitney Bowes/DIRECT DEB PBLeasing Blank Blank |
| 2/01 | 61.50 | EXPERTPAY/EXPERTPAY 463003190 CLAIBORNE AUTOMOTIVE G |
| 2/01 | 222.79 | Pitney Bowes/DIRECT DEB PBLeasing Blank Blank |
| 2/01 | 222.79 | Pitney Bowes/DIRECT DEB PBLeasing Blank Blank |
| 2/01 | 400.00 | EXPERTPAY/EXPERTPAY 463003190 CLAIBORNE AUTOMOTIVE G |
| 2/01 | 5,000.00 | CHASE CREDIT CRD/EPAY 7274908026 TOMMY G MARTIN |
| 2/02 | 8.59 | SPOTON, INC./MTHLY DISC 545500001209576 CAR GIANT |
| 2/02 | 25.00 | SPOTON TRANSACT/629491_658 JOHN MCKEE CHEVROLET |
| 2/02 | 35.00 | SPOTON TRANSACT/628508_657 TOMMY MARTIN |
| 2/02 | 49.44 | Snap-on Credit/Snapon ACH 20485DD CLAIBORNE AUTOMOTIVE |
| 2/02 | 417.70 | SPOTON, INC./MTHLY DISC 545500001209618 JOHN MCKEE CHEVROLET, |
| 2/02 | 51,557.10 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 *D01026110321787\ CLAIBORNE AUTOMOTIVE G |
| 2/05 | 20,500.00 | Internet Transfer To 4165 |
| 2/05 | 24.15 | FEDERAL EXPRESS/DEBIT EPA51227714 Claiborne Automotive G |
| 2/06 | 200.00 | Internet Transfer To 4165 |
| 2/07 | 74.23 | FEDERAL EXPRESS/DEBIT EPA51255598 Claiborne Automotive G |
| 2/08 | 500.00 | Internet Transfer To 4199 |
| 2/08 | 2,000.00 | Internet Transfer To 4165 |
| 2/08 | 69.36 | IRS/USATAXPYMT *****3951459935 CLAIBORNE AUTOMOTIVE G |
| 2/08 | 71.87 | FEDERAL EXPRESS/DEBIT EPA51263420 Claiborne Automotive G |
| 2/08 | 4,625.72 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|------|-------------|---------------------|
|      |             | *D01026110347175\ CLAIBORNE AUTOMOTIVE G |
| 2/09 | 5,000.00 | CHASE CREDIT CRD/EPAY 7295126919 TOMMY G MARTIN |
| 2/09 | 54,524.35 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 *D01026110356402\ CLAIBORNE AUTOMOTIVE G |
| 2/12 | 1,000.00 | Internet Transfer To 4165 |
| 2/12 | 42.43 | FEDERAL EXPRESS/DEBIT EPA51297764 Claiborne Automotive G |
| 2/12 | 49.89 | FEDERAL EXPRESS/DEBIT EPA51281795 Claiborne Automotive G |
| 2/12 | 1,200.00 | STATE OF LOUISIA/EPOSPYMNTS TXP*XXXXX46001*04102*991231*T*120000*Z*2 40208*TAP1138734784-240208\ 1737746001 CAR GIANT CHEVROLET BU |
| 2/12 | 23,287.00 | ACV CAPITAL LLC/PAYMENT 2069763 CAR GIANT CHEVROLET BU |
| 2/13 | 200.00 | PITNEY BOWES/POSTEDGE 26140541 Gibsland Bank |
| 2/13 | 268.03 | Claiborne Parish/SALES TAX 173774 CLAIBORNE AUTOMOTIVE G |
| 2/13 | 508.70 | Claiborne Parish/SALES TAX 173774 CLAIBORNE AUTOMOTIVE G |
| 2/13 | 7,339.43 | SMARTCASH ALLY M/EDI PAYMTS 08434057001 |
| 2/13 | 60,101.25 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 *D01026110365553\ CLAIBORNE AUTOMOTIVE G |
| 2/14 | 292.72 | FEDERAL EXPRESS/DEBIT EPA51304590 Claiborne Automotive G |
| 2/14 | 1,883.00 | EXPERTPAY/EXPERTPAY 463003190 CLAIBORNE AUTOMOTIVE G |
| 2/14 | 90.00 | ACV CAPITAL LLC/PAYMENT 2069763 CAR GIANT CHEVROLET BU |
| 2/15 | 2,000.00 | Internet Transfer To 4165 |
| 2/15 | 61.50 | EXPERTPAY/EXPERTPAY 463003190 CLAIBORNE AUTOMOTIVE G |
| 2/15 | 400.00 | EXPERTPAY/EXPERTPAY 463003190 CLAIBORNE AUTOMOTIVE G |
| 2/15 | 55,720.35 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 *D01026110374822\ CLAIBORNE AUTOMOTIVE G |
| 2/16 | 152.12 | CHARGE BACK |




P.O. Box 180, Gibsland, Louisiana 71028-0180

| | |
|---|---|
| Page Number | 6 of 29 |
| Account Number: | ***5988 |
| Date: | 02/29/24 |

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| 2/16 | 300.00 | CHARGE BACK |
| 2/16 | 300.00 | CHARGE BACK |
| 2/16 | 300.00 | CHARGE BACK |
| 2/16 | 300.00 | CHARGE BACK |
| 2/16 | 3.00 | CHARGEBACK FEE |
| 2/16 | 3.00 | CHARGEBACK FEE |
| 2/16 | 3.00 | CHARGEBACK FEE |
| 2/16 | 3.00 | CHARGEBACK FEE |
| 2/16 | 3.00 | CHARGEBACK FEE |
| 2/16 | 105.66 | FEDERAL EXPRESS/DEBIT EPA51326055 Claiborne Automotive G |
| 2/20 | 45.28 | FEDERAL EXPRESS/DEBIT EPA51332853 Claiborne Automotive G |
| 2/21 | 500.00 | Internet Transfer To 4199 |
| 2/21 | 500.00 | Internet Transfer To 4199 |
| 2/21 | 174.91 | FEDERAL EXPRESS/DEBIT EPA51355870 Claiborne Automotive G |
| 2/21 | 39,637.85 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 *D01026110388669\ CLAIBORNE AUTOMOTIVE G |
| 2/22 | 360,235.60 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 *D01026110393904\ CLAIBORNE AUTOMOTIVE G |
| 2/23 | 110,653.05 | Internet Transfer To 4199 |
| 2/23 | 100.05 | FEDERAL EXPRESS/DEBIT EPA51378010 Claiborne Automotive G |
| 2/23 | 1,736.59 | GM Financial/GMF Pymt NULL CLAIBORNE AUTOMOT |
| 2/23 | 7,837.00 | ACV CAPITAL LLC/PAYMENT 2069763 CAR GIANT CHEVROLET BU |
| 2/23 | 27,388.55 | SMARTCASH ALLY H/EDI/EFTPMT REF*1 *D01026110398523\ CLAIBORNE AUTOMOTIVE G |
| 2/26 | 1,300.00 | Internet Transfer To 4165 |
| 2/26 | 35.87 | FEDERAL EXPRESS/DEBIT EPA51384420 Claiborne Automotive G |
| 2/26 | 125.01 | FEDERAL EXPRESS/DEBIT EPA51393454 Claiborne Automotive G |
| 2/26 | 26,828.00 | ACV CAPITAL LLC/PAYMENT 2069763 CAR GIANT CHEVROLET BU |
| 2/26 | 27,328.00 | ACV CAPITAL LLC/PAYMENT 2069763 CAR GIANT CHEVROLET BU |
| 2/26 | 50,344.00 | ACV CAPITAL LLC/PAYMENT 2069763 CAR |



STATEMENT

**MEMBER**
**FDIC**

P.O. Box 180, Gibsland, Louisiana 71028-0180

Page Number     7 of 29
Account Number:     ***5988
Date:     02/29/24

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| | | GIANT CHEVROLET BU |
| 2/26 | 71.90 | Overdraft Charge-Item Paid |
| | | #       61035       201014 |
| 2/28 | 67.89 | NOWCOM, LLC/DEALERCNTR M120298471782 |
| | | CLAIBORNE AUTOMOTIVE G |
| 2/28 | 184.95 | FEDERAL EXPRESS/DEBIT EPA51409264 |
| | | Claiborne Automotive G |
| 2/28 | 47.06 | ADT SECURITY SER/ADTPAPACH 400308530 |
| | | JOHN MCKEE CHEVROLET |
| 2/29 | 37.71 | FEDERAL EXPRESS/DEBIT EPA51417680 |
| | | Claiborne Automotive G |
| 2/29 | 4,147.34 | WRIGHT EXPRESS/FLEET DEBI 9100008156475 |
| | | Claiborne Auto Group L |
| 2/29 | 8,058.15 | Paragon Insuranc/Insurance A2023K7G32 |
| | | Claiborne Automotive G |

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|---|---|---|---|---|---|
| 2/01 | 59112 | 27.00 | 2/02 | 60066 | 59.82 |
| 2/15 | 59122* | 55.85 | 2/06 | 60082* | 121.26 |
| 2/13 | 59124* | 53.93 | 2/06 | 60108* | 350.00 |
| 2/22 | 59125 | 110.43 | 2/06 | 60117* | 298.50 |
| 2/01 | 59126 | 54.83 | 2/21 | 60145* | 993.24 |
| 2/01 | 59130* | 15.11 | 2/06 | 60167* | 387.25 |
| 2/05 | 59131 | 498.59 | 2/29 | 60193* | 545.00 |
| 2/13 | 59134* | 43.20 | 2/13 | 60395* | 50.00 |
| 2/09 | 59138* | 29.68 | 2/05 | 60411* | 432.54 |
| 2/13 | 59139 | 113.71 | 2/02 | 60435* | 1,022.65 |
| 2/09 | 59261* | 39.84 | 2/05 | 60445* | 1,255.30 |
| 2/26 | 59567* | 1,581.36 | 2/06 | 60461* | 46.00 |
| 2/05 | 59680* | 1,689.25 | 2/09 | 60462 | 1,973.55 |
| 2/05 | 59739* | 452.34 | 2/02 | 60625* | 71,913.63 |
| 2/01 | 59761* | 335.75 | 2/05 | 60626 | 1,872.85 |
| 2/13 | 59878* | 75.00 | 2/06 | 60641* | 33,450.49 |
| 2/28 | 59887* | 175.00 | 2/02 | 60655* | 13,896.61 |
| 2/29 | 59969* | 2,628.49 | 2/13 | 60660* | 29.17 |
| 2/01 | 59977* | 2,113.00 | 2/13 | 60661 | 69.70 |
| 2/13 | 59984* | 150.00 | 2/06 | 60663* | 91.97 |
| 2/20 | 60015* | 358.56 | 2/13 | 60666* | 9.07 |
| 2/06 | 60018* | 182.84 | 2/01 | 60679* | 2,479.57 |
| 2/01 | 60064* | 85.00 | 2/15 | 60682* | 3,533.25 |
| 2/02 | 60065 | 7.36 | 2/01 | 60684* | 286.89 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|---|---|---|---|---|---|
| 2/15 | 60708* | 3,877.58 | 2/07 | 60905 | 418.00 |
| 2/13 | 60710* | 155.36 | 2/05 | 60906 | 14,975.00 |
| 2/13 | 60711 | 155.36 | 2/22 | 60911* | 25.29 |
| 2/13 | 60712 | 7,747.91 | 2/16 | 60916* | 1,277.36 |
| 2/13 | 60713 | 894.44 | 2/13 | 60917 | 172.67 |
| 2/09 | 60714 | 234.46 | 2/07 | 60928* | 53,739.55 |
| 2/21 | 60720* | 13.00 | 2/29 | 60932* | 494.91 |
| 2/15 | 60748* | 17,097.82 | 2/09 | 60935* | 1,765.00 |
| 2/22 | 60749 | 41,425.20 | 2/13 | 60936 | 2,550.00 |
| 2/13 | 60777* | 1,210.74 | 2/09 | 60937 | 3,000.00 |
| 2/22 | 60809* | 219.15 | 2/23 | 60938 | 10.00 |
| 2/28 | 60810 | 131.70 | 2/12 | 60939 | 250.00 |
| 2/13 | 60824* | 19,000.00 | 2/21 | 60940 | 100.00 |
| 2/05 | 60828* | 398.22 | 2/09 | 60941 | 2,000.00 |
| 2/08 | 60830* | 9.00 | 2/09 | 60942 | 2,000.00 |
| 2/05 | 60836* | 321.23 | 2/08 | 60943 | 1,128.85 |
| 2/02 | 60840* | 119.99 | 2/09 | 60944 | 651.41 |
| 2/02 | 60854* | 19.20 | 2/14 | 60945 | 2,700.33 |
| 2/12 | 60858* | 239.67 | 2/14 | 60946 | 680.36 |
| 2/06 | 60859 | 2,266.54 | 2/21 | 60948* | 367.31 |
| 2/01 | 60862* | 154.63 | 2/13 | 60949 | 2,082.09 |
| 2/06 | 60863 | 99.00 | 2/27 | 60950 | 531.10 |
| 2/02 | 60867* | 632.50 | 2/14 | 60951 | 2,184.30 |
| 2/02 | 60872* | 1,250.00 | 2/14 | 60952 | 3,000.00 |
| 2/02 | 60874* | 701.81 | 2/13 | 60962* | 21,285.17 |
| 2/02 | 60875 | 654.28 | 2/22 | 60966* | 610.00 |
| 2/02 | 60876 | 1,128.85 | 2/14 | 60970* | 63,277.72 |
| 2/02 | 60877 | 2,000.00 | 2/13 | 60971 | 8,869.15 |
| 2/02 | 60878 | 2,000.00 | 2/22 | 60973* | 368.90 |
| 2/05 | 60880* | 3,709.93 | 2/13 | 60982* | 1,226.30 |
| 2/09 | 60883* | 72.61 | 2/21 | 60985* | 654.00 |
| 2/13 | 60884 | 216.82 | 2/16 | 60988* | 2,000.00 |
| 2/13 | 60885 | 315.58 | 2/16 | 60989 | 2,000.00 |
| 2/13 | 60886 | 2,012.51 | 2/16 | 60990 | 1,128.85 |
| 2/14 | 60888* | 45.00 | 2/16 | 60991 | 638.36 |
| 2/13 | 60889 | 155.36 | 2/16 | 60992 | 3,000.00 |
| 2/29 | 60891* | 340.83 | 2/21 | 60993 | 1,250.00 |
| 2/28 | 60896* | 576.44 | 2/22 | 60994 | 35.00 |
| 2/02 | 60898* | 140.65 | 2/27 | 60998* | 1,690.00 |
| 2/02 | 60901* | 757.71 | 2/15 | 61001* | 4,239.49 |
| 2/13 | 60902 | 100.00 | 2/20 | 61002 | 2,875.00 |
| 2/05 | 60903 | 54,258.80 | 2/27 | 61003 | 100.00 |
| 2/08 | 60904 | 6,915.53 | 2/16 | 61004 | 561.25 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

Page Number     9 of 29
Account Number:    ***5988
Date:     02/29/24

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|------|----------|--------|------|----------|--------|
| 2/16 | 61005 | 600.00 | 2/12 | 200976 | 1,141.55 |
| 2/20 | 61007* | 40,400.00 | 2/12 | 200977 | 1,046.35 |
| 2/22 | 61009* | 195.11 | 2/12 | 200978 | 1,459.21 |
| 2/22 | 61012* | 2,000.00 | 2/09 | 200979 | 787.03 |
| 2/23 | 61013 | 2,000.00 | 2/12 | 200980 | 1,431.61 |
| 2/23 | 61014 | 568.31 | 2/12 | 200981 | 451.96 |
| 2/29 | 61016* | 239.67 | 2/09 | 200982 | 419.20 |
| 2/21 | 61022* | 33,500.00 | 2/22 | 200983 | 432.72 |
| 2/26 | 61023 | 373.75 | 2/16 | 200984 | 3,216.42 |
| 2/27 | 61024 | 100.00 | 2/16 | 200985 | 6,101.45 |
| 2/27 | 61025 | 259.00 | 2/16 | 200986 | 800.75 |
| 2/23 | 61027* | 6,204.53 | 2/20 | 200987 | 1,431.60 |
| 2/23 | 61028 | 81,149.20 | 2/22 | 200988 | 399.62 |
| 2/26 | 61031* | 7,472.91 | 2/16 | 200989 | 372.98 |
| 2/29 | 61034* | 62.40 | 2/16 | 200990 | 820.39 |
| 2/26 | 61035 | 92,150.45 | 2/21 | 200991 | 949.18 |
| 2/29 | 61039* | 3,000.00 | 2/22 | 200992 | 659.26 |
| 2/28 | 61049* | 53,750.00 | 2/26 | 200993 | 2,429.41 |
| 2/28 | 61056* | 2,000.00 | 2/23 | 200994 | 386.07 |
| 2/02 | 200962* | 863.50 | 2/23 | 200995 | 628.70 |
| 2/05 | 200963 | 1,431.59 | 2/16 | 201000* | 1,000.04 |
| 2/05 | 200964 | 401.74 | 2/20 | 201001 | 991.37 |
| 2/02 | 200965 | 443.73 | 2/16 | 201002 | 1,161.99 |
| 2/05 | 200966 | 740.40 | 2/20 | 201003 | 1,014.83 |
| 2/05 | 200967 | 856.39 | 2/20 | 201004 | 1,057.76 |
| 2/02 | 200968 | 1,102.05 | 2/20 | 201005 | 1,413.11 |
| 2/05 | 200969 | 900.69 | 2/23 | 201006 | 910.12 |
| 2/05 | 200970 | 1,015.98 | 2/26 | 201007 | 844.97 |
| 2/05 | 200971 | 1,413.11 | 2/23 | 201008 | 1,158.57 |
| 2/07 | 200972 | 460.31 | 2/26 | 201009 | 900.69 |
| 2/09 | 200973 | 1,000.03 | 2/26 | 201010 | 1,044.07 |
| 2/09 | 200974 | 992.03 | 2/26 | 201011 | 1,378.54 |
| 2/12 | 200975 | 1,060.28 | 2/26 | 201014* | 6,101.47 |

( * indicates a break in check number sequence)

## Fee Recap

| | Total for this period | Total year to date |
|---|---|---|
| | $71.90 | $71.90 |
| Total Overdraft Fees | | |
| Total Returned Item Fees | $.00 | $.00 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

Page Number     10 of 29
Account Number:    ***5988
Date:     02/29/24

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC

## Daily Balance Summary

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 2/01 | 111,443.08 | 2/12 | 60,288.53 | 2/22 | 340,256.68 |
| 2/02 | 25,722.82 | 2/13 | 139,318.17 | 2/23 | 112,100.05 |
| 2/05 | 8,539.81 | 2/14 | 97,159.74 | 2/26 | 97,213.80 – |
| 2/06 | 41,145.62 | 2/15 | 10,346.18 | 2/27 | 3,970.09 |
| 2/07 | 3,081.98 | 2/16 | 24,393.56 | 2/28 | 3,047.53 |
| 2/08 | 101,473.24 | 2/20 | 31,940.89 | 2/29 | 39,579.78 |
| 2/09 | 73,345.94 | 2/21 | 405,577.17 | | |



**GBT.bank** — Checking Deposit — DDADEP
Customer: CLARKDALE AUTOMOTIVE GROUP LLC
Capture Date/Time: 02/01/2024 at 03:39 PM
Bus Date: 02-01-2024 Drawer #: 1131 Seq #: 60 Item Seq: 550035/1470
Cash In: $0.00
Checks In: $41,000.00
Cash Out: $0.00
Amount: $ 80,000.00
a5501-0461
02/01/2024 $80,000.00

**GBT.bank** — Checking Deposit — DDADEP
Customer: CLARKDALE AUTOMOTIVE GROUP LLC
Capture Date/Time: 02/02/2024 at 03:32 PM
Bus Date: 02/02/2024 Drawer #: 1131 Seq #: 60 Item Seq: 550035/07299
Cash In: $0.00
Checks In: $64,999.35
Cash Out: $0.00
Amount: $ 64,999.35
a5501-0461
02/02/2024 $64,999.35

CHECKING — **GBT.bank**
For Car Giant of Homer
02/05/2024 $2,916.60

CHECKING — **GBT.bank**
For Car Giant If Homer
02/05/2024 $5,000.00

CHECKING — **GBT.bank**
For Car Giant of Homer
02/05/2024 $7,312.12

**GBT.bank** — Checking Deposit — DDADEP
Customer: CLARKDALE AUTOMOTIVE GROUP LLC
Capture Date/Time: 02/05/2024 at 03:11 PM
Bus Date: 02-05-2024 Drawer #: 1134 Seq #: 70 Item Seq: 550035/16930
Cash In: $0.00
Checks In: $72,000.00
Cash Out: $0.00
Amount: $ 70,000.00
a5501-0461
02/05/2024 $70,000.00

CHECKING — **GBT.bank**
For Deposit 2-6-24
2205405 47,172.98
$ 47,172.98
1:5501-0461:
02/06/2024 $47,172.98

CHECKING — **GBT.bank**
For Car Giant Homer
Money order
$ 1,352.12
1:5501-0461: 20
02/08/2024 $1,352.12

CHECKING — **GBT.bank**
For Car Giant Homer
Managoce 110244.70
$ 110,244.70
1:5501-0461: 20
02/08/2024 $110,244.70

CHECKING — **GBT.bank**
$ 2,165.42
1:5501-0461: 20
02/09/2024 $2,165.42

CHECKING — **GBT.bank**
For Car Giant Homer
$ 6,582.54
1:5501-0461: 20
02/12/2024 $6,582.54

CHECKING — **GBT.bank**
For Car Giant Homer
P.Walker
$ 13,000.00
1:5501-0461: 20
02/12/2024 $13,000.00



| | |
|---|---|
| 02/13/2024 $129,192.41 | 02/22/2024 $15,664.95 |
| 02/14/2024 $9,995.00 | 02/22/2024 $80,949.20 |
| 02/14/2024 $22,000.00 | 02/22/2024 $243,489.21 |
| 02/16/2024 $40,200.00 | 02/23/2024 $2,353.05 |
| 02/20/2024 $56,712.76 | 02/26/2024 $5,353.36 |
| 02/21/2024 $360,235.60 | 02/27/2024 $1,454.08 |



CHECKING **GBT** BANK
for Car Giant
52,800.00
52,800.00
02/27/2024 $52,800.00

CHECK# 59125
PAY **ONE HUNDRED TEN DOLLARS AND 43/100**
DATE 06/21/23 AMOUNT $110.43
TO THE ORDER OF EMILY BRYCE
1324 JACK MARSH RD
MENDENA 71005
59125 111104
02/22/2024 59125 $110.43

CHECKING **GBT** BANK
for Car Giant of Homer
5,898.34
02/28/2024 $5,898.34

CHECK# 59126
PAY **FIFTY FOUR DOLLARS AND 83/100**
DATE 06/21/23 AMOUNT $54.83
TO THE ORDER OF BEVERLY REYNOLDS RILEY
2103 SUMPER LN
BOSSIER LA 71111
59126 111104617
02/01/2024 59126 $54.83

CHECKING **GBT** BANK
for Car Giant of Homer
2,003.78
02/29/2024 $2,003.78

CHECK# 59130
PAY **FIFTEEN DOLLARS AND 11/100**
DATE 06/21/23 AMOUNT $15.11
TO THE ORDER OF MICHAEL MOS THOMPSON
454 OUACHITA ROAD 12
SHACKOVER AR 71762
59130 111104
02/01/2024 59130 $15.11

CHECK# 59112
PAY **TWENTY SEVEN DOLLARS AND 00/100**
DATE 06/21/23 AMOUNT $27.00
TO THE ORDER OF LASONJA BALDWIN
4425 MEADOW SHORES LN
MANVEL, TX 77578
59112 111104
02/01/2024 59112 $27.00

CHECK# 59131
PAY **FOUR HUNDRED NINETY EIGHT DOLLARS AND 59/100**
DATE 06/21/23 AMOUNT $498.59
TO THE ORDER OF THERESA BOONE
1407 MARWON LOOP
HOMER LA 71040
59131 111104617
02/05/2024 59131 $498.59

CHECK# 59118
PAY **FIFTY FIVE DOLLARS AND 85/100**
DATE 06/21/23 AMOUNT $55.85
TO THE ORDER OF BAILEY BROWN SHEPHERD
2910 MARY MACK DR
MARSHALL TX 75672
59118 111104617
02/15/2024 59122 $55.85

CHECK# 59134
PAY **FORTY THREE DOLLARS AND 20/100**
DATE 06/21/23 AMOUNT $43.20
TO THE ORDER OF JEN EV CONARY
PO BOX BOX248
10765 HWY 2
KAPLANSVILLE LA 71008
59134 111104617
02/13/2024 59134 $43.20

CHECK# 59124
PAY **FIFTY THREE DOLLARS AND 93/100**
DATE 06/21/23 AMOUNT $53.93
TO THE ORDER OF CHRISTIAN FEBTAVAN
1100 BUTLER HILL RD
DENTON LA 71006
59124 111104617
02/13/2024 59124 $53.93

CHECK# 59138
PAY **TWENTY NINE DOLLARS AND 68/100**
DATE 06/21/23 AMOUNT $29.68
TO THE ORDER OF TEROENIA SAWYERS
332 E 5TH ST
HOMER LA 71040
59138 111104617
02/09/2024 59138 $29.68

| CHECK# 59139 | CHECK# 59878 |
|---|---|
| PAY **ONE HUNDRED THIRTEEN DOLLARS AND 71/100** | PAY **SEVENTY FIVE DOLLARS AND 00/100** |
| DATE 09/22/23 AMOUNT $113.71 | DATE 09/28/23 AMOUNT $75.00 |
| TO THE ORDER OF LORIE HARPER 968 FRANCES DR HAYNESVILLE LA 71038 | TO THE ORDER OF TOMMYS WHOLESALE 3117 W 70TH ST SHREVEPORT LA 71108 |

02/13/2024 59139 $113.71  02/13/2024 59878 $75.00

| CHECK# 59261 | CHECK# 59887 |
|---|---|
| PAY **THIRTY NINE DOLLARS AND 84/100** | PAY **ONE HUNDRED SEVENTY FIVE DOLLARS AND 00/100** |
| DATE 09/22/23 AMOUNT $39.84 | DATE 10/13/23 AMOUNT $175.00 |
| TO THE ORDER OF JACQUELINE BELL 711 S 3RD ST HOMER LA 71040 | TO THE ORDER OF SNAP ON TOOLS 4040 BENTON RD UNIT 205 BOSSIER CITY LA 71111 |

02/09/2024 59261 $39.84  02/28/2024 59887 $175.00

| CHECK# 59567 | CHECK# 59969 |
|---|---|
| PAY **ONE THOUSAND FIVE HUNDRED EIGHTY ONE DOLLARS AND 36/100** | PAY **TWO THOUSAND SIX HUNDRED TWENTY EIGHT DOLLARS AND 49/100** |
| DATE 10/13/23 AMOUNT $1,581.36 | DATE 10/15/23 AMOUNT $2,628.49 |
| TO THE ORDER OF FLAGSHIP CREDIT ACCEPTANCE L P O BOX 744733 ATLANTA GA 30374-4733 | TO THE ORDER OF CROW BURLINGAME P O BOX 111 LITTLE ROCK AR 72203 |

02/26/2024 59567 $1,581.36  02/29/2024 59969 $2,628.49

| CHECK# 59680 | CHECK# 59977 |
|---|---|
| PAY **ONE THOUSAND SIX HUNDRED EIGHTY NINE DOLLARS AND 25/100** | PAY **TWO THOUSAND ONE HUNDRED THIRTEEN DOLLARS AND 00/100** |
| DATE 10/16/23 AMOUNT $1,689.25 | DATE 10/16/23 AMOUNT $2,113.00 |
| TO THE ORDER OF CROW BURLINGAME P O BOX 111 LITTLE ROCK AR 72203 | TO THE ORDER OF PORTFOLIO 23341 COMMERCENTRE DRIVE SUITE 100 LAKE FOREST CA 92630 |

02/05/2024 59680 $1,689.25  02/01/2024 59977 $2,113.00

| CHECK# 59739 | CHECK# 59984 |
|---|---|
| PAY **FOUR HUNDRED FIFTY TWO DOLLARS AND 34/100** | PAY **ONE HUNDRED FIFTY DOLLARS AND 00/100** |
| DATE 10/13/23 AMOUNT $452.34 | DATE 10/16/23 AMOUNT $150.00 |
| TO THE ORDER OF CINTAS CORP P O BOX 650838 DALLAS TX 75265 | TO THE ORDER OF HOMENET P O BOX 935242 ATLANTA GA 31193 |

02/05/2024 59739 $452.34  02/13/2024 59984 $150.00

| CHECK# 59761 | CHECK# 60015 |
|---|---|
| PAY **THREE HUNDRED THIRTY FIVE DOLLARS AND 75/100** | PAY **THREE HUNDRED FIFTY EIGHT DOLLARS AND 56/100** |
| DATE 10/13/23 AMOUNT $335.75 | DATE 10/17/23 AMOUNT $358.56 |
| TO THE ORDER OF GREAT AMERICAN BUSINESS PROD P O BOX 4220 HOUSTON TX 77210-4422 | TO THE ORDER OF CINTAS CORP P O BOX 650838 DALLAS TX 75266 |

02/01/2024 59761 $335.75  02/20/2024 60015 $358.56



02/06/2024   60018   $182.84

02/06/2024   60117   $298.50

02/01/2024   60064   $85.00

02/21/2024   60145   $993.24

02/02/2024   60065   $7.36

02/06/2024   60167   $387.25

02/02/2024   60066   $59.82

02/29/2024   60193   $545.00

02/06/2024   60082   $121.26

02/13/2024   60395   $50.00

02/06/2024   60108   $350.00

02/05/2024   60411   $432.54



| | | |
|---|---|---|
| 02/02/2024 | 60435 | $1,022.65 |
| 02/06/2024 | 60641 | $33,450.49 |
| 02/05/2024 | 60445 | $1,255.30 |
| 02/02/2024 | 60655 | $13,896.61 |
| 02/06/2024 | 60461 | $46.00 |
| 02/13/2024 | 60660 | $29.17 |
| 02/09/2024 | 60462 | $1,973.55 |
| 02/13/2024 | 60661 | $69.70 |
| 02/02/2024 | 60625 | $71,913.63 |
| 02/06/2024 | 60663 | $91.97 |
| 02/05/2024 | 60626 | $1,872.85 |
| 02/13/2024 | 60666 | $9.07 |



02/01/2024   60679   $2,479.57

02/13/2024   60712   $7,747.91

02/15/2024   60682   $3,533.25

02/13/2024   60713   $894.44

02/01/2024   60684   $286.89

02/09/2024   60714   $234.46

02/15/2024   60708   $3,877.58

02/21/2024   60720   $13.00

02/13/2024   60710   $155.36

02/15/2024   60748   $17,097.82

02/13/2024   60711   $155.36

02/22/2024   60749   $41,425.20

**Nancy Landry**

**Secretary of State**

**State of Louisiana Secretary of State**



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

## Trade Name Details

**Type(s) Registered:** TRADE NAME

**Registered Name:** JOHN MCKEE CHEVROLET BUICK GMC

**Applicant:** JOHN R MCKEE LLC

316 GREGG STREET

SHREVEPORT, LA 71104

**Type Of Business:** NEW VEHICLE DEALERSHIP PROVIDING SALES OF NEW & USED, ALSO SERVICE

**Book #:** 64-6916

**Current Status:** INACTIVE

**Inactive Reason:** EXPIRED

## Dates

**Registration Date:** 8/26/2013

**Expiration Date:** 8/26/2023

**Date First Used:** 8/23/2013

**Date First Used (in La.):** 8/23/2013

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

| Group | Type | Date |
|-------|------|------|
| TSASG | | 8/24/2018 |

Print

**Nancy Landry**

**Secretary of State**

**State of Louisiana Secretary of State**



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

# Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** JOHN MCKEE CHEVROLET BUICK GMC
**Applicant:** JOHN R MCKEE LLC
316 GREGG STREET
SHREVEPORT, LA 71104
**Type Of Business:** NEW VEHICLE DEALERSHIP PROVIDING SALES OF NEW & USED, ALSO SERVICE
**Book #:** 64-6916
**Current Status:** INACTIVE
**Inactive Reason:** EXPIRED

## Dates

**Registration Date:** 8/26/2013
**Expiration Date:** 8/26/2023
**Date First Used:** 8/23/2013
**Date First Used (in La.):** 8/23/2013

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

| Group | Type | Date |
|-------|------|------|
| TSASG | | 8/24/2018 |

Print

**Nancy Landry**
**Secretary of State**

State of
Louisiana
Secretary of
State



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

# Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** JOHN MCKEE CHEVROLET BUICK GMC
**Applicant:** JOHN R MCKEE LLC
316 GREGG STREET
SHREVEPORT, LA 71104
**Type Of Business:** NEW VEHICLE DEALERSHIP PROVIDING SALES OF NEW & USED, ALSO SERVICE
**Book #:** 64-6916
**Current Status:** INACTIVE
**Inactive Reason:** EXPIRED

## Dates

**Registration Date:** 8/26/2013
**Expiration Date:** 8/26/2023
**Date First Used:** 8/23/2013
**Date First Used (in La.):** 8/23/2013

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

| Group | Type | Date |
|-------|------|------|
| TSASG | | 8/24/2018 |

Print

**Nancy Landry**
**Secretary of State**

**State of Louisiana Secretary of State**



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

---

# Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** JOHN MCKEE CHEVROLET BUICK GMC
**Applicant:** JOHN R MCKEE LLC
316 GREGG STREET
SHREVEPORT, LA 71104
**Type Of Business:** NEW VEHICLE DEALERSHIP PROVIDING SALES OF NEW & USED, ALSO SERVICE
**Book #:** 64-6916
**Current Status:** INACTIVE
**Inactive Reason:** EXPIRED

## Dates

**Registration Date:** 8/26/2013
**Expiration Date:** 8/26/2023
**Date First Used:** 8/23/2013
**Date First Used (in La.):** 8/23/2013

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

| Group | Type | Date |
|-------|------|------|
| TSASG |      | 8/24/2018 |

Print


| **Name** | **Type** | **City** | **Status** |
|---|---|---|---|
| CLAIBORNE AUTOMOTIVE GROUP, L.L.C. | Limited Liability Company | SHREVEPORT | Active |

**Previous Names**

| | |
|---|---|
| **Business:** | CLAIBORNE AUTOMOTIVE GROUP, L.L.C. |
| **Charter Number:** | 41206379K |
| **Registration Date:** | 6/17/2013 |

**Domicile Address**

3117 WEST 70TH STREET
SHREVEPORT, LA 71108

**Mailing Address**

P. O. BOX 419

5136 HWY 79

HOMER, LA 71040

## Status

| | |
|---|---|
| **Status:** | **Active** |
| **Annual Report Status:** | **In Good Standing** |
| **File Date:** | 6/17/2013 |
| **Last Report Filed:** | 5/19/2025 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| Agent: | THOMAS G. MARTIN |
| Address 1: | 5136 HWY 79 NORTH |
| City, State, Zip: | HOMER, LA, LA 71040 |
| Appointment Date: | 7/10/2018 |

## Officer(s)

Additional Officers: No

| | |
|---|---|
| Officer: | THOMAS G. MARTIN |
| Title: | Member |
| Address 1: | 3117 W 70TH STREET |
| City, State, Zip: | SHREVEPORT, LA 71108 |

## Amendments on File

**No Amendments on file**

Print



**State of Louisiana Secretary of State**

**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
| --- | --- | --- | --- |
| CLAIBORNE AUTOMOTIVE GROUP, L.L.C. | Limited Liability Company | SHREVEPORT | Active |

**Previous Names**

| | |
| --- | --- |
| Business: | CLAIBORNE AUTOMOTIVE GROUP, L.L.C. |
| Charter Number: | 41206379K |
| Registration Date: | 6/17/2013 |

**Domicile Address**

3117 WEST 70TH STREET
SHREVEPORT, LA 71108

**Mailing Address**

P. O. BOX 419
5136 HWY 79
HOMER, LA 71040

## Status

| | |
| --- | --- |
| Status: | **Active** |
| Annual Report Status: | **In Good Standing** |
| File Date: | 6/17/2013 |
| Last Report Filed: | 5/19/2025 |
| Type: | Limited Liability Company |

## Registered Agent(s)

| Agent: | THOMAS G. MARTIN |
| --- | --- |
| Address 1: | 5136 HWY 79 NORTH |
| City, State, Zip: | HOMER, LA, LA 71040 |
| Appointment Date: | 7/10/2018 |

Additional Officers: No

## Officer(s)

| Officer: | THOMAS G. MARTIN |
| --- | --- |
| Title: | Member |
| Address 1: | 3117 W 70TH STREET |
| City, State, Zip: | SHREVEPORT, LA 71108 |

## Amendments on File

No Amendments on file

Print

**Nancy Landry**
**Secretary of State**

**State of
Louisiana
Secretary of
State**



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

## Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** CAR GIANT
**Applicant:** CLAIBORNE AUTOMOTIVE GROUP, L.L.C.
3117 WEST 70TH STREET
SHREVEPORT, LA 71108
**Type Of Business:** VEHICLE SALES
**Book #:** 69-5951
**Current Status:** ACTIVE

## Dates

**Registration Date:** 9/24/2018
**Expiration Date:** 9/24/2028
**Date First Used:** 9/24/2018
**Date First Used (in La.):** 9/24/2018

## Current Classes
**No Current Classes**
## Expired Classes
**No Expired Classes**
## Amendments On File
**No Amendments on file**

Print



State of
Louisiana
Secretary of
State

**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| CAR GIANT OF BOSSIER LLC | Limited Liability Company | BOSSIER CITY | Inactive |

**Previous Names**

| | |
|---|---|
| **Business:** | CAR GIANT OF BOSSIER LLC |
| **Charter Number:** | 44171500K |
| **Registration Date:** | 12/2/2020 |

**Domicile Address**

2961 E TEXAS ST
BOSSIER CITY, LA 71111

**Mailing Address**

2961 E TEXAS ST
BOSSIER, LA 71111

## Status

| | |
|---|---|
| **Status:** | **Inactive** |
| **Inactive Reason:** | **Action By Secretary of State** |
| **File Date:** | 12/2/2020 |
| **Last Report Filed:** | N/A |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | THOMAS MARTIN |
| **Address 1:** | 3117 W 70TH ST |
| **City, State, Zip:** | SHREVEPORT, LA 71108 |
| **Appointment Date:** | 12/2/2020 |

Additional Officers: No

## Officer(s)

| | |
|---|---|
| **Officer:** | CLAIBORNE AUTOMOTIVE GROUP |
| **Title:** | Member |
| **Address 1:** | 5136 US HWY 79 |
| **City, State, Zip:** | HOMER, LA 71040 |

## Amendments on File (1)

| Description | Date |
|-------------|------|
| Revoked | 2/16/2024 |

Print

**Nancy Landry**

**Secretary of State**

**State of Louisiana Secretary of State**

**COMMERCIAL DIVISION**
**225.925.4704**

<u>Fax Numbers</u>
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)



---

## Trade Name Details

**Type(s) Registered:** TRADE NAME

**Registered Name:** CAR GIANT CHEVROLET GMC OF HOMER

**Applicant:** KATIE LAYFIELD

5136 HWY 79

HOMER, LA 71040

**Type Of Business:** AUTOMOTIVE SALES

**Book #:** 79-1138

**Current Status:** ACTIVE

## Dates

**Registration Date:** 7/13/2023

**Expiration Date:** 7/13/2033

**Date First Used:** 7/13/2023

**Date First Used (in La.):** 7/13/2023

## Current Classes

**No Current Classes**

## Expired Classes

**No Expired Classes**

## Amendments On File

**No Amendments on file**

Print

Nancy Landry
Secretary of State

State of
Louisiana
Secretary of
State

**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)



# Trade Name Details

**Type(s) Registered:** TRADE NAME
**Registered Name:** CAR GIANT CHEVROLET OF HOMER
**Applicant:** CLAIBORNE AUTOMOTIVE GROUP, L.L.C.
3117 WEST 70TH STREET
SHREVEPORT, LA 71108
**Type Of Business:** AUTOMOTIVE SALES
**Book #:** 75-1796
**Current Status:** ACTIVE

## Dates

**Registration Date:** 7/7/2021
**Expiration Date:** 7/7/2031
**Date First Used:** 7/7/2021
**Date First Used (in La.):** 7/7/2021

# Current Classes

**No Current Classes**

# Expired Classes

**No Expired Classes**

# Amendments On File

**No Amendments on file**

Print

State of
Louisiana
Secretary of
State

**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)



| Name | Type | City | Status |
|------|------|------|--------|
| CAR GIANT OF TEXAS LLC | Limited Liability Company | SHREVEPORT | Active |

**Previous Names**

| | |
|---|---|
| **Business:** | CAR GIANT OF TEXAS LLC |
| **Charter Number:** | 44240378K |
| **Registration Date:** | 1/20/2021 |

**Domicile Address**

3117 W 70TH STREET
SHREVEPORT, LA 71108

**Mailing Address**

PO BOX 419
HOMER, LA 71055

## Status

| | |
|---|---|
| **Status:** | **Active** |
| **Annual Report Status:** | **In Good Standing** |
| **File Date:** | 1/20/2021 |
| **Last Report Filed:** | 12/26/2024 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | THOMAS MARTIN |
| **Address 1:** | 3117 W 70TH STREET |
| **City, State, Zip:** | SHREVEPORT, LA 71108 |
| **Appointment Date:** | 1/20/2021 |

## Officer(s)

Additional Officers: No

| | |
|---|---|
| **Officer:** | THOMAS MARTIN |
| **Title:** | Manager |
| **Address 1:** | 3117 W 70TH STREET |
| **City, State, Zip:** | SHREVEPORT, LA 71108 |

## Amendments on File

**No Amendments on file**

Print

**ACCOUNT AGREEMENT**
**CHECKING ACCOUNT**

Gibsland Bank & Trust
P.O. BOX 180
PO Box 180
GIBSLAND, Louisiana 71028
(318)843-6228
www.gbt.bank
gbt@gbt.bank

---

## ACCOUNT TITLE AND ADDRESS

CLAIBORNE AUTOMOTIVE GROUP LLC
DBA JOHN MCKEE CHEVROLET BUICK GMC
8188 MANSFIELD RD
SHREVEPORT, LA 71108

**ALTERNATE ACCOUNT ADDRESS**
224 GAP FARM RD
ARCADIA, LA 71001
Effective Date or Time Period: 04/24/2024

| ACCOUNT OPEN DATE | ACCOUNT NUMBER | OWNERSHIP TYPE | PRODUCT NAME | DOCUMENT CREATION DATE | INITIAL DEPOSIT |
|---|---|---|---|---|---|
| June 21, 2013 | ███5988 | Limited Liability Company Tax Classification: | GBT SMALL BUSINESS CHECKI | 07/26/2024 | $40,000.00 |

**DEFINITIONS.** Throughout this Agreement, these terms have the following meaning:
- "You," "your," and "account owner" refer to the Customer named on the account.
- "We," "our," and "us" refer to the Bank, Gibsland Bank & Trust.
- "Item" or "items," as defined by Article 4 of the Uniform Commercial Code (UCC), means an instrument or a promise or order to pay money handled by a financial institution for collection or payment. The term includes a check but does not include a payment order governed by Article 4A of the UCC or a credit or debit card slip.
- "Debit transactions," "debit," or "debits" refer to funds that are taken out of your account. Common types of debits may include: checks that you have written, ACH payments, wire transfers, PIN-based debit card transactions, and signature-based debit card transactions.
- "Credit transactions," "credit," or "credits" refer to deposits of funds into your account. Common types of credits include: cash deposits, direct deposits, check deposits, and ACH and wire transfers made payable to you. Credits are generally added to your account and are made available to you in accordance with our funds availability schedule.

**GENERAL AGREEMENT.** You understand that the following Account Agreement ("Agreement") governs your Checking account with us, along with any other documents applicable to your account, including any account opening Disclosures that have been provided to you, which are incorporated by reference. You understand that your account is also governed by applicable law. The information found in any account opening Disclosures may change from time to time in our sole discretion. If the fees, charges, minimum balance requirements, or other items change in a manner that would adversely affect you, we will provide you with written notice prior to the change. By providing a written or electronic signature on the Account Information document or other agreement to open your account, or by using any of our deposit account services, you and any identified account owners agree to the terms contained in this Account Agreement.

**YOUR CHOICE OF ACCOUNT.** You have instructed us as to the title and type of the account that you have chosen. You acknowledge that it is your sole responsibility to determine the full legal effect of opening and maintaining the type of account you have chosen. We have not set forth all laws that may impact your chosen account. You must determine whether the account you select is appropriate for your current and future needs. Except as required by law, we assume no legal responsibility to inform you as to the effect of your account choice on your legal interests.

**BUSINESS ACCOUNTS.** Business accounts are those established by any partnership, corporation, association or other entity operated on a for-profit basis; all corporations and associations operated on a not-for-profit-basis; and any individual who intends to use the account for carrying on a trade or business. We reserve the right to require separate written authorization, in a form acceptable to us, telling us who is authorized to act on your behalf. We are authorized to follow the directions of a person designated as having authority to act on the entity's behalf until we receive written notice that the authority has been terminated and have had a reasonable time to act upon that notice.

**ADDITIONAL DOCUMENTS TO OPEN ACCOUNT.** You agree to supply us with a copy of any chartering document, Operating Agreement, or related documents requested by us.

© TruStage Compliance Solutions 2001-2024

Page 1 of 7

c9d3f72a-87c096452 - 2024.39.9.3
Account Agreement - Checking Account DD8001



**ESCROW, TRUST, FIDUCIARY AND CUSTODIAL ACCOUNTS.** When your account is set up as an escrow account, trust account, fiduciary account or custodial account, it is your sole responsibility to determine the legal effects of opening and maintaining an account of this nature. We have no obligation to act as trustee or to inquire into your powers or responsibilities over this account. We reserve the right to require the documentation necessary under applicable law to establish, maintain, manage, and close this account. There may be additional terms and conditions that apply to this account that are governed by a separate agreement.

**TRANSFERS AND ASSIGNMENTS.** We may assign or transfer any or all of our interest in this account. You cannot assign or transfer any interest in your account unless we agree in writing.

**RESTRICTIVE LEGENDS.** We are not required to honor any restrictive legend on checks you write unless we have agreed to the restriction in writing signed by an officer of the Bank. Examples of restrictive legends are "two signatures required", "must be presented within 90 days" or "not valid for more than $1,000.00."

**STALE OR POSTDATED CHECKS.** We reserve the right to pay or dishonor a check more than six (6) months old without prior notice to you. You agree not to postdate any check drawn on the account. If you do, and the check is presented for payment before the date of the check, we may pay it or return it unpaid. We are not liable for paying any stale or postdated check. Any damages you incur that we may be liable for are limited to actual damages not to exceed the amount of the check.

**PREAUTHORIZED CHECKS OR DRAFTS.** You should guard information about your account (such as your routing number and your account number) as carefully as you would guard blank checks. If you voluntarily give such information about your account to a party which is seeking to sell you goods or services, without physically delivering a check to that party, any debit to or withdrawal from your account it initiates will be deemed authorized by you.

**VERIFYING FUNDS AVAILABILITY FOR CHECK.** You authorize us to release funds availability information about your account to individuals or merchants who represent to us that they have received a check from you.

**CHECK SAFEKEEPING.** If you utilize a check safekeeping system or any other system offered by us for the retention of your checks, you understand that the canceled checks will be retained by us and destroyed after a reasonable time period or as required by law. Any request for a copy of any check may be subject to a fee, as indicated in the Fee Schedule or Disclosures and as allowed by law. If for any reason we cannot provide you with a copy of a check, our liability will be limited to the lesser of the face amount of the check or the actual damages sustained by you.

**YOUR RESPONSIBILITY FOR BACK OF CHECK.** All negotiable paper ("checks") presented for deposit must be in a format that can be processed and we may refuse to accept any check that does not meet this requirement. All endorsements on the reverse side of any check deposited into your account must be placed on the left side of the check when looking at it from the front, and the endorsements must be placed so as not to go beyond an area located 1-½ inches from the left edge of the check when looking at it from the front. It is your responsibility to ensure that these requirements are met and you are responsible for any loss incurred by us for failure of an endorsement to meet this requirement.

**ELECTRONIC CHECKS AND ELECTRONICALLY-CREATED ITEMS.** Pursuant to Regulation CC, electronic checks may be treated the same as paper checks for check collection and processing purposes. See the Substitute Checks section for more information. Electronically-created items ("ECI") are check-like items created in electronic form that never existed in paper form. For example, you set up automatic bill payments with us to pay your utility bill. From your account information, we create an ECI that is sent to your utility company for payment. An ECI cannot be used to create a substitute check since it never existed in paper form.

**SUBSTITUTE CHECKS.** To make check processing faster, federal law permits financial institutions to replace original checks with "substitute checks." These substitute checks are similar in size to the original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check. Some or all of the checks that you receive back from us may be substitute checks. An electronic check can be used to create a substitute check since the electronic image and electronic information was derived from its paper form.

**REMOTE DEPOSIT CAPTURE.** Remote deposit capture ("RDC") allows you to make deposits to your account from remote locations by electronically transmitting digital images of your original paper checks, which are drawn on or payable through United States financial institutions in United States dollars to us. We may then use the digital image to create an electronic check or substitute check for collection. If you use our RDC services, if applicable, we may require you to endorse the back of the paper check to indicate that it has been remotely deposited. For example, "for mobile deposit only" or "for mobile deposit at Gibsland Bank & Trust only."

**REMOTELY CREATED CHECKS.** A remotely created check, as defined in Regulation CC, means a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose account the check is drawn. By having a deposit account with us, you certify that all remotely created checks deposited to your account(s) will be expressly and verifiably authorized by the payer. And we reserve the rights to refuse for deposit any such remotely created check if we have any reason to believe that the check is fraudulent in any manner and to obtain from you the payer's express, verifiable authorization for any such check.

**WITHDRAWALS.** Deposits will be available for withdrawal consistent with the terms of the Disclosures. Withdrawals may be subject to a service charge.

c9d3731c-8b096452 - 2024.29.9.3
Account Agreement - Checking Account DD4001



**DEPOSITS.** Deposits may be made in person, by mail, or in another form and manner as agreed by us in our sole discretion. We are not responsible for transactions mailed until we actually receive and record them. We may in our sole discretion refuse to accept particular instruments as a deposit to your account. Cash deposits are credited to your account according to this Agreement. Other items you deposit are handled by us according to our usual collection practices. If an item you deposit is returned unpaid, we will debit your account for the item. You are liable to us for the amount of any check you deposit to your account that is returned unpaid and all costs and expenses related to the collection of all or part of such amount from you. Funds deposited to your account, excluding any Time Deposit accounts, are available in accordance with the Disclosures.

**COLLECTION OF DEPOSITED ITEMS.** In receiving items for deposit or collection, we act only as your agent and assume no responsibility beyond the exercise of ordinary care. All items are credited subject to final settlement in cash or credits. We shall have the right to forward items to correspondents including all Federal Reserve Banks, and we shall not be liable for default or neglect of said correspondents for loss in transit, nor shall any correspondent be liable except for its own negligence. You specifically authorize us or our correspondents to utilize Federal Reserve Banks to handle such items in accordance with provisions of Regulation J (12 CFR Part 210), as revised or amended from time to time by the Federal Reserve Board. In the event we are subject to local clearinghouse rules, you specifically authorize us to handle such items in accordance with the rules and regulations of the clearinghouse.

If we permit you to withdraw funds from your account before final settlement has been made for any deposited item, and final settlement is not made, we have the right to charge your account or obtain a refund from you. In addition, we may charge back any deposited item at any time before final settlement for whatever reason. We shall not be liable for any damages resulting from the exercise of these rights. Except as may be attributable to our lack of good faith or failure to exercise ordinary care, we will not be liable for dishonor resulting from any reversal of credit, return of deposited items or for any damages resulting from any of those actions.

**UNLAWFUL INTERNET GAMBLING.** Restricted transactions are prohibited from being processed through your account with us as required by the Unlawful Internet Gambling Enforcement Act of 2006 and Regulation GG. A restricted transaction is a transaction or transmittal involving any credit, funds, instrument, or proceeds in connection with the participation of another person in unlawful Internet gambling. You will notify us if your business practices regarding Internet gambling change in the future.

**STATEMENTS.** We will provide you with a periodic statement showing the account activity. The last address you supply us in writing will be deemed the proper address for mailing this statement to you. The account holder who receives this statement is the agent for his/her co-account holder(s) for purposes of receiving the statement and items. You must exercise reasonable care in reviewing your statement and reasonable promptness in notifying us of any discrepancies, such as alterations or forged or unauthorized signatures, even if by the same wrongdoer. Reasonable promptness will not exist if you fail to notify us within 30 days after we mail or otherwise make the statement available to you. If you fail to notify us of any discrepancies, with reasonable promptness, your right to assert such discrepancies will be barred or limited to the extent permitted by law. Additionally, you agree that we will not be liable for discrepancies reported to us after one year after we mail or otherwise make the statement or items available to you, even if we failed to exercise ordinary care. However, if the discrepancy is the result of an electronic fund transfer, the provisions of the Disclosures will control its resolution. If you do not receive a statement from us because you have failed to claim it or have supplied us with an incorrect address, we may stop sending your statements until you specifically make written request that we resume sending your statements and you supply us with a proper address.

**ELECTRONIC STATEMENTS AND NOTICES.** You may have the option to have statements and notices regarding this account provided to you in an electronic form, including to a designated e-mail address, through an online banking portal, or other electronic method, upon your authorization. The authorization may be withdrawn at any time to return to a mailed paper form by providing written notice to us at the address provided. The fees for receiving in either form, and for receiving paper copies, are described in your account opening documents.

**ACH AND WIRE TRANSFERS.** This Agreement is subject to Article 4A of the Uniform Commercial Code - Funds Transfers as adopted in the state of Louisiana. If you send or receive a wire transfer, you agree that Fedwire® Funds Service may be used. Federal Reserve Board Regulation J is the law that covers transactions made over Fedwire® Funds Service. When you originate a funds transfer for which Fedwire® Funds Service is used, and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named.

If you are a party to an Automated Clearing House ("ACH") entry, you agree that we may transmit an entry through the ACH, and you agree to be bound by the National Automated Clearing House Association ("Nacha") Operating Rules and Guidelines, the rules of any local ACH, and the rules of any other systems through which the entry is made.

**PROVISIONAL PAYMENT.** Credit we give you is provisional until we receive final settlement for that entry. If we do not receive final settlement, you agree that we are entitled to a refund of the amount credited to you in connection with the entry, and the party making payment to you via such entry (i.e., the originator of the entry) shall not be deemed to have paid you in the amount of such entry.

**INTERNATIONAL ACH TRANSACTIONS.** If your transaction originates from a financial agency that is outside of the territorial jurisdiction of the United States, it may be subject to additional review for compliance with the rules of the Office of Foreign Assets Control (OFAC). If additional review is required, the International ACH transaction will not be available to you until it passes final verification.

**NOTICE OF RECEIPT.** We will not provide you with notice of our receipt of the order, unless we are so requested by the transfer originator in the order. However, we will continue to notify you of the receipt of payments in the periodic statements we provide to you.

cb4l3871c-5b0966452 - 2024.29.9.3
Account Agreement - Checking Account LD34001

**CHOICE OF LAW.** We may accept on your behalf payments to your account which have been transmitted, that are not subject to the Electronic Fund Transfer Act, and your rights and obligations with respect to such payments shall be construed in accordance with and governed by the laws of the state where we are located.

**STOP PAYMENTS.**

    **STOP PAYMENT ON CHECKS.** You may stop payment on a check drawn against your account by a record or written order or other confirmation as allowed by us, provided that we receive the Stop Payment Order in a time and manner that gives us a reasonable opportunity to act on it. The Stop Payment Order must describe the check or account with reasonable certainty. Oral requests for a Stop Payment Order are binding on us for 14 calendar days only and must be confirmed by you in a record or writing within that period. If the record or written confirmation is not received as specified, we will no longer be bound by your request. Upon receipt of confirmation in a record or writing, a Stop Payment Order on a check remains in effect for six months or until we receive a record or writing revoking the Stop Payment Order, whichever occurs first. If the check on which a Stop Payment Order has been placed has not cleared or been returned to you by the payee, you may renew the Stop Payment Order for an additional six months by providing a request to us in a record or writing within the time period the Stop Payment Order is in effect. You understand that we may accept the Stop Payment Order request from any of the authorized signers of the account regardless of who signed the check.

    We have a daily cutoff time by which we must receive any knowledge, notice, Stop Payment Order, set-off or legal process affecting our right or duty to pay a check. That cutoff time is one hour after the opening of your branch's banking day, following the banking day on which your branch received the check.

    **STOP PAYMENT ON ACH DEBITS.** A Stop Payment Order may be placed on either a one-time debit transfer or on a multiple debit entry transfer. If you request a Stop Payment Order on an Electronic Check Conversion or other one-time debit transfer, we must receive the request, orally or in a record or writing, in a period of time that provides us a reasonable opportunity to act on it prior to acting on the debit entry, otherwise the Stop Payment Order shall be of no effect. If you requested a stop payment on a multiple debit entry transfer, we must receive the Stop Payment Order, orally or in a record or writing, at least three business days before a scheduled multiple debit entry. Oral stop payment orders are binding on us for 14 calendar days only and must be confirmed by you in a record or writing within that period. A Stop Payment Order on an ACH debit remains in effect until the earlier of 1) your withdrawal of the Stop Payment Order, 2) the return of the debit entry, or 3) sixty months from the date of the Stop Payment Order, unless you renew the Stop Payment Order. You may renew the Stop Payment Order for an additional six months to prevent the transfer from being paid by providing a request to us within the time period the Stop Payment Order is in effect. When a stop is placed on a multiple debit entry transfer, we may require your confirmation in a record or writing stating that you have canceled your authorization for the transfer with the payee (a Stop Payment Order does not revoke authorization).

The Stop Payment Order shall be governed by the provision of the Uniform Commercial Code 4A in effect in the state in which we are located, Nacha Operating Rules, and any applicable state law.

You may be charged a fee every time you request a Stop Payment Order, and for each Stop Payment Order renewal you make. A release of the Stop Payment Order may be made by the person who initiated the stop payment request or any of the authorized signers on the account. Our acceptance of a stop payment request does not constitute a representation by us that the item has not already been paid or that we have had a reasonable opportunity to act on the request.

**DEATH OR INCOMPETENCY.** Neither the death nor the legal adjudication of incompetence of any individual authorized to act on your behalf revokes our authority to accept, pay, or collect items until we know of the fact of death or of an adjudication of incompetence and have a reasonable opportunity to act on it. To the extent permitted by law, even with knowledge, we may for 10 days after the date of death, pay checks drawn on or before the date of death unless ordered to stop payment by a person claiming an interest in the account.

**NON-SUFFICIENT FUNDS AND OVERDRAFTS - AVAILABLE BALANCE.**

    **HOW WE DECIDE TO PAY AN ITEM OR DEBIT.** We use an available balance method to determine if there are sufficient funds in your account to pay an item or debit transaction. The available balance reflects deposits and transactions that have been posted to your account, such as checks you have written, and transactions that have been authorized but not yet posted to your account, including deposit holds and holds on debit card transactions that have been authorized but not yet posted (i.e., preauthorization holds). These pending transactions and holds reduce your available balance. For example, you have $100 in your account and a pending transaction of $30. Your available balance is $70 because the pending $30 transaction reduces your available balance.

    **HOW WE ASSESS FEES.** If there are insufficient funds to pay a debit transaction or item based on your available balance, we may either: 1) return the debit or item or 2) pay the debit or item at our discretion. We may charge you fees if we return the debit or item or pay the debit or item on your behalf.

        **RETURN ITEM FOR NON-SUFFICIENT FUNDS.** If we do not pay the debit transaction or item on your behalf and return the debit or item, we may charge you non-sufficient funds fee. Pursuant to Nacha Operating Rules and Guidelines and other applicable laws, a debit or item may be presented for payment more than one time.

        **OVERDRAFTS.** If we pay the debit transaction or item on your behalf, you will be responsible for the overdrawn balance, and we may charge you overdraft fees. As discussed above, subsequent pending transactions and holds impact your available balance, which may cause your account to become overdrawn and subject to overdraft fees. For example, you have $100 in your account. You use your debit card at a gas station and a preauthorization hold of $60 is placed on your account because the amount of the

© TruStage Compliance Solutions 2001-2024

e9d5f73o-8b096663 - 2024.29.9.3
Account Agreement - Checking Account DD1001

transaction is not known at the time of authorization even though your gas was only $50. The authorization hold reduces your available account balance to $40. You then spend $50 on groceries. If we pay this debit on your behalf, you will be responsible for paying the overdrawn balance, and we may charge you overdraft fees.

Your account type(s) and ownership features are designated on your Account Card. By signing an Account Card, each of you jointly and severally, agrees to the terms and conditions in this Agreement and Account Card, the Funds Availability Policy Disclosure, the Fee Schedule, the Electronic Funds Transfer (EFT) Disclosure, the Truth-in-Savings Disclosure, the Privacy Notice and Disclosure, if applicable, accompanying this Agreement, the Overdraft Coverage Options Disclosure and the Bank's Bylaws and policies, and any amendments of these documents from time to time which collectively govern your Accounts.

**PROCESSING ORDER.** We will process debit and credit transactions in accordance with our processing order policy. The processing order of these debits and credits is important because if your account balance has insufficient funds to pay for them in the order that they are processed, we may charge you non-sufficient funds fees if we return the debit or charge you overdraft fees if we pay the debit on your behalf.

**SIGNATURES.** Your signature on the Account Information document is your authorized signature. You authorize us, at any time, to charge you for all checks, drafts, orders, or other items for the payment of money, that are drawn on us regardless of by whom or by what means your signature may have been affixed so long as the signature resembles the signature specimen in our files. For withdrawal and other purposes relating to any account you have with us, we are authorized to recognize your signature; and we will not be liable to you for refusing to honor signed instruments or instructions if we believe in good faith that one or more of the signatures appearing on the instrument or instructions is not genuine.

Further, most checks, and other items are processed automatically, i.e., without individual review of each item. Therefore, unless we agree in a separate writing, in our sole discretion, upon your request and due to unique circumstances to conduct individual review of each item, you agree that we are acting within common and reasonable banking practices by automatically processing checks, and other items, i.e., without individual review of each check, or item. You agree to indemnify, defend, and hold us harmless from and against all loss, costs, damage, liability, and other injury (including reasonable attorney fees) that you or we may suffer or incur as a result of this practice.

**REQUIRED SIGNATURES.** Signature Comparison. We process certain items mechanically, based on information encoded on checks and other transaction items, and we are not required to examine items and debits drawn on your account. We collect your signature to obtain your agreement to the rules we establish for your account, but this does not create any responsibility on our part to verify signatures on items and other charges to your account.

Number of signatures. You agree that if you; (A) have an account in which one or more than one signature is required to complete a transaction (B) authorize someone to transact some but not all transactions on your account (C) authorize someone to transact business on your account for limited purposes and no others; or (D) use checks that require two or more signatures, such arrangements are strictly between you and the other person(s) you authorize, whether we have notice of your arrangement (including in a form we provide you) or not. You cannot assert a claim against us for permitting a transaction so long as any one of the owners or authorized persons sign or initiate the transaction, even if a person exercises more authority than you have given.

**FEES, SERVICE CHARGES AND BALANCE REQUIREMENTS.** You agree to pay us and are responsible for any fees, charges or balance/deposit requirements as provided in the Fee Schedule or Disclosures provided to you at the time you opened the account. Fees, charges and balance requirements may change from time to time. We also reserve the right to impose a service charge for cashing checks drawn on your account if the person cashing the check is not a customer of this Bank.

**SET-OFFS AND SECURITY INTEREST.** If you ever owe us money as a borrower, guarantor, or otherwise, and it becomes due, we have the right under the law (called "set-off") and under this Agreement (by which you grant us a security interest in your deposit account and any other accounts held by you) to use your account funds to pay the debt, where permitted by law. The security interest granted by this Agreement is consensual and is in addition to our right of set-off.

**CLAIMS.** In response to any garnishment, attachment, restraining order, injunction, levy, citation to discover assets, judgment, reclamation, other order of court or other legal process ("Claim(s)"), we have the right to place a hold on, remove from your account(s) and/or remit to the designated third-party(ies) any amount on deposit in your account as set forth in and required by such Claim(s). In addition, we may charge against your account(s) any fee authorized by law in connection with the Claim(s) or as otherwise set forth in the Fee Schedule.

**DORMANT/INACTIVE ACCOUNTS.** You understand that if your account is dormant or inactive, we may charge fees specified in the Disclosures to the extent permitted by the law. You agree that we are relieved of all responsibility if your account balance is escheated (that is, turned over to the state) in accordance with state law.

**ATTORNEYS' FEES AND EXPENSES.** You agree to be liable to us for any loss, costs or expenses, including reasonable attorneys' fees to the extent permitted by law, that we incur as a result of any dispute involving your account, and you authorize us to deduct any such loss, costs or expense from your account without prior notice to you. This obligation includes disputes between yourself and us involving the account and situations where we become involved in disputes between you and an authorized signer, another joint owner, or a third party claiming an interest in the account. It also includes situations where you, an authorized signer, another joint owner, or a third party takes action with respect to the account that causes us, in good faith, to seek the advice of counsel, whether or not we actually become involved in a dispute.

**ARBITRATION AND CLASS ACTION WAIVER.** This agreement to arbitrate applies to all matters between you and us (except for matters that may be taken to a small claims court) and is intended to be broadly interpreted, and expressly includes claims brought under the Telephone Consumer Protection Act, 47 U.S.C § 227 et seq., or any other statute, regulation, or legal or equitable theory. You hereby agree that the Federal

© TruStage Compliance Solutions 2001-2024

Page 5 of 7

c5-d371s-8b09445? - 2024.29.9.3

Account Agreement - Checking Account DDE001

Arbitration Act, 9 U.S.C § 1, et seq. ("FAA") applies to this agreement to arbitrate and governs all questions of whether a dispute is subject to arbitration. Unless you and we agree otherwise in writing, arbitration shall be administered by the American Arbitration Association's Consumer Arbitration Rules in effect at the time of filing of the arbitration (the "AAA's Rules"). A single arbitrator designated by the AAA will decide the Claim under applicable law. However, just as a court would, the arbitrator must honor the terms and limitations in this Agreement and can award damages and relief (including any attorneys' fees) authorized by law and/or the AAA's rules. The arbitration decision and award is final and binding, with some exceptions under the FAA, and judgment on the award may be entered in any court of competent jurisdiction. You agree that, by entering into this agreement, you are waiving the right to a trial by jury and the right to participate in any class, representative, or collective proceeding. This agreement does not allow for class arbitrations even if the procedures or rules of the AAA would. Rather, you are only entitled to pursue arbitration on an individual, bilateral basis. Further, and unless you and we agree otherwise in writing, the arbitrator(s) may not consolidate more than one individual party's claims with any other party's claims and may not otherwise preside over any form of a representative or collective proceeding. We will pay any costs that are required to be paid by us under the AAA's rules of procedure. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the AAA's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay to the arbitration administrator, you may request that we pay or reimburse them, and we will consider your request in good faith. You may represent yourself in arbitration, or you may be represented by a lawyer. Except as described above, you will be responsible for your own attorneys' fees and costs.

**LEGAL PROCESS AGAINST ACCOUNT.** You agree to be responsible for, to reimburse us, and/or have your account charged for any expenses or reasonable attorney fees we incur due to an attachment, garnishment, levy or subpoena of records of your account. Any garnishment or other levy against your account is subject to our right of set-off and security interest. We may restrict the use of your account if it is involved in any legal proceeding.

**CLOSING ACCOUNT.** We may close the account at any time, with or without cause, after sending you notice as required by the law. At our discretion, we have the authority to pay an otherwise properly payable check, which is presented after the closing of your account. Such a termination will not release you from any fees or other obligations incurred before the termination. We will send a check for the balance in our possession to which you are entitled.

**OUR WAIVER OF RIGHTS.** You understand and agree that no delay or failure on our part to exercise any right, remedy, power or privilege available to us under this Agreement shall affect or preclude our future exercise of that right, remedy, power or privilege.

**YOUR WAIVER OF NOTICE.** By signing the Account Information form, you waive any notice of non-payment, dishonor or protest regarding any items credited to or charged against your deposit account to the extent permitted by law. For example, if a check that you deposited is dishonored and returned to us, we are not required to notify you of the dishonor.

**NOTICE.** You are responsible for notifying us of any change to the name, type or address of your entity or other information affecting your account. Notices must be in a form and manner acceptable to us with enough information to allow us to identify the account. Notice sent by you to us is not effective until we have received it and have had a reasonable opportunity to act upon it. Written notice sent by us to you is effective when mailed to the last address supplied.

**CERTIFIED BENEFICIAL OWNER INFORMATION.** You are responsible for notifying us of any changes to the certified beneficial ownership information of the legal entity customer that was provided to us. Notice should be made to us as soon as practical upon a change to the beneficial ownership information in a form and manner acceptable to us.

**TELEPHONE AND ELECTRONIC COMMUNICATION.** You agree that we may call or send text messages to you at the telephone numbers that you provide to us, including a cell phone number, which may result in charges to you, for informational purposes regarding your account(s) with us. These calls and text messages may be made from an automatic telephone dialing system (i.e., an autodialer) or from an artificial or prerecorded voice message system. Additionally, you agree that we may send electronic communication to you at the email addresses you provide to us. You may contact us at any time if you no longer want to receive these communications from us. You also agree that we may monitor and record telephone and electronic communications that affect your account(s) with us to the extent permitted by law. We need not provide further notice to you or receive additional approval.

**ONLINE OR MOBILE SERVICES.** If you open an account or obtain a product or service from us using our online or mobile services, we may record your personal information from a scan or a copy of your driver's license or other personal identification card, or we may receive an image or make a copy of your driver's license or other personal identification card. We may store or retain this information to the extent permitted by law.

**AMENDMENTS AND ALTERATIONS.** Except as prohibited by law, we may amend this Agreement by adding, removing, or changing terms at any time. We will notify you of amendments as required by applicable law. Your continued use of the account evidences your agreement to any amendments. Notices will be sent to the most recent address shown on the account records.

**EFFECTIVE APPLICABLE LAWS AND REGULATIONS.** You understand that this Agreement is governed by the laws of Louisiana, except to the extent that federal law is controlling. Changes in these laws and regulations may modify the terms and conditions of your account(s). We do not have to notify you of these changes, unless required to do so by law. If any of the terms of this Agreement come into conflict with the applicable law and are declared to be invalid or unenforceable, those terms will be nullified to the extent that they are inconsistent with the law and the applicable law will govern. However, this shall not affect the validity of the remaining provisions.

© TruStage Compliance Solutions 2001-2024

c9d1871e4b696452 - 2024.39.9.3
Account Agreement - Checking Account DD8901



**NOTICE OF POTENTIAL DISCLOSURE OF NEGATIVE INFORMATION TO CONSUMER REPORTING AGENCIES**

This notice is being furnished pursuant to the Fair Credit Reporting Act (15 U.S.C. 1681) as amended by the Fair and Accurate Credit Transactions Act of 2003 (FACT Act).

## NOTICE

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**





## State of Louisiana

### LOUISIANA MOTOR VEHICLE COMMISSION

**Jeff Landry**
Governor

**Lessie A. House**
Executive Director

March 10, 2025

### *Via U.S. Mail*

Kaylon Hendricks
Manning Law Firm
3535 Youree Drive
Shreveport, LA 71105

**RE:** **Public Records Request Under La. R.S. 44:1, et seq.**

Dear Mr. Hendricks:

The Louisiana Motor Vehicle Commission "LMVC" is in receipt of your correspondence on behalf of Bobby R. Manning dated February 19, 2025 and requesting documents possessed by the LMVC pursuant to the Louisiana Public Records Law. The LMVC received this public records request on Friday, March 7, 2025.

Concerning your 1st request, documents of ownership structure, including names of owners, members, or shareholders of JPS Motors, L.L.C. and Claiborne Automotive Group were received as part of a license application pursuant to La. R.S. 32: 1254. As such, La. R.S. 44:4.1(20) provides that the information provided the LMVC accompanying its license application is excepted from the Louisiana Public Records Law. This information will not be produced pursuant to your public records request. Arcadia Motors L.L.C., Car Giant L.L.C., and Thomas Martin Enterprises L.L.C. are not licensees of the LMVC. As such, the LMVC does not possess documents concerning ownership structure, including names of owners, members, or shareholders of Arcadia Motors L.L.C., Car Giant L.L.C., and Thomas Martin Enterprises L.L.C.

Concerning your 2nd request, the LMVC possesses corporate meeting minutes of JPS Motors L.L.C. These minutes were received as part of a license application pursuant to La. R.S. 32: 1254. As such, La. R.S. 44:4.1(20) provides that the information provided the LMVC accompanying the license applications is excepted from the Louisiana Public Records Law and will not be produced pursuant to your public records request. Arcadia Motors L.L.C. and Car Giant L.L.C. are not licensees of the LMVC, and the LMVC does not possess copies of meeting minutes, board resolutions, or shareholder resolutions of Arcadia Motors L.L.C. and Car Giant L.L.C.

If you have any questions, please contact me.

Yours very truly,

**LOUISIANA MOTOR VEHICLE COMMISSION**

Ingya Cattle
Assistant Executive Director

Enclosure

cc:     Bobby R. Manning, Esq., *Via E-Mail*

# MANNING  LAW FIRM

### SHREVEPORT OFFICE

📞 PH: 318.737.2910 📍 3535 Youree Drive
Shreveport, LA 71105

🌐 Attorney Bobby Manning
(licensed in LA & TX)
bobby@bobbymanning.com

🌐 Attorney Brennan Manning
(licensed in LA)
brennan@bobbymanning.com

February 19, 2025

**Records Custodian**
Louisiana Motor Vehicle Commission
3017 Kingman Street
Metairie, La 70006

Subject: Public Records Request Under La. R.S. 44:1, et seq.

Dear Records Custodian,

Pursuant to the Louisiana Public Records Law (La. R.S. 44:1, et seq.), I hereby request access to and/or copies of the following public records maintained by the Louisiana Motor Vehicle Commission (LMVC):

1. The ownership structure, including names of owners, members, or shareholders, for the following entities:
   - JPS Motors, L.L.C.
   - Claiborne Automotive Group, L.L.C.
   - Arcadia Motors, L.L.C.
   - Car Giant, L.L.C.
   - Thomas Martin Enterprises, L.L.C.
2. Copies of the corporate meeting minutes, including any board or shareholder resolutions, for the following entities:
   - JPS Motors, L.L.C.
   - Car Giant, L.L.C.
   - Arcadia Motors, L.L.C

If possible, please provide these records in electronic format (PDF or Excel). If any portion of this request is denied, please provide a written explanation citing the specific legal exemption under Louisiana law that justifies withholding the records. If any records are available in redacted form, I request that you produce those with the necessary redactions.

Under La. R.S. 44:32(D), public records requests should be fulfilled within three (3) business days unless an extension is necessary. If additional time is required, please provide a written explanation specifying the estimated completion date.

Please confirm receipt of this request at your earliest convenience.

Yours truly,

Kaylon Hendricks obo
Bobby R. Manning

LMVC
MAR 0 7 2025

Certified: 9589 0710 5270 1053 8080 08

**MONROE | SHREVEPORT | BATON ROUGE**



Manning Law Firm
3535 Youree Drive
Shreveport, LA 71105

CERTIFIED MAIL®

Louisiana Motor Vehicle Commission
Attn: Records Custodian
3017 Kingman Street
Metairie, LA 70006

7000 6559 5552

PITNEY BOWES
$9.64
US POSTAGE FIRST-CLASS
ZIP 71105
FEB 20 2025

LMVC
MAR 07 2025

**OWNER**                    **HISTORY**            Maintenance        MV11401
N -2022-00312
**JPS Motors, L.L.C.**

| Owner | Percnt |
|---|---|
| JPS Motors, L.L.C. is owned by Jason P. Bullock (52%), John H. | 100.00 |
| Sullivan (24%) and Clinton P. Graham (24%). | |
| CHANGE: Jason P. Bullock, Dealer-Principal (64%) and Carnathan & | |
| Company, LLC (36%) effective February 21, 2022. | |
| CHANGE: Jason P. Bullock, Dealer-Principal (64%) and Arcadia Motors, | |
| LLC (36%) effective MAY 18, 2023. | |
| | |
| | |
| | |
| **Total Percentage** | 100.00 |

F12=Previous


F3=Exit                          F11=Show Address   F15=Print Licenses   Roll

❖ **VERABANK**

**OFFICIAL CHECK**

2215173

89-316
1110

(803) 657-8521 or (877) 568-2521
www.verabank.com

NOTICE TO CUSTOMER
THE PURCHASE OF AN INDEMNITY BOND MAY BE REQUIRED
BEFORE ANY OFFICIAL CHECK OR THIS BANK WILL BE
REPLACED OR REFUNDED IN THE EVENT IT IS LOST,
MISPLACED OR STOLEN.

DATE  June 4, 2024

REMITTER   VERABANK N.A.

$*******62,875.00

PAY   Sixty Two Thousand Eight Hundred Seventy Five Dollars AND 00/100

TO THE
ORDER OF   CAR GIANT

AUTHORIZED SIGNATURE

PURPOSE

25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document   Pg 148 of 235

**✖ VERABANK**                    **OFFICIAL CHECK**                    2216646

$\frac{88-315}{1119}$

(903) 657-8621 or (877) 566-2621
www.verabank.com

NOTICE TO CUSTOMERS
THE PURCHASE OF AN INDEMNITY BOND MAY BE REQUIRED
BEFORE ANY OFFICIAL CHECK OF THIS BANK WILL BE
REPLACED OR REPLACED IN THE EVENT IT IS LOST,
MISPLACED OR STOLEN

DATE  June 24, 2024

REMITTER  VERABANK                                        $*******67,150.00

PAY   Sixty Seven Thousand One Hundred Fifty Dollars AND 00/100

TO THE
ORDER OF   JPS FORD

*Diana Haskins*
AUTHORIZED SIGNATURE

PURPOSE

25-11050   #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document   Pg 149 of 235



## State of Louisiana
### LOUISIANA MOTOR VEHICLE COMMISSION

Jeff Landry
Governor

Lessie A. House
Executive Director

May 24, 2024

**VIA: CERTIFIED MAIL #7022 2410 0002 1936 2140**
**and Return Receipt Requested**

**NOTICE OF HEARING**
**#2024-092**

JPS Motors, L.L.C.
DBA JPS Ford
c/o its Registered Agent for Service of Process
Mr. Thomas Martin
224 Gap Farms Road
Arcadia, LA 71001

**RE:    JPS Motors, L.L.C. DBA JPS Ford, 224 Gap Farms Road, Arcadia, LA 71001**

Dear Mr. Martin:

This is your formal notice to be present at a **pre-hearing conference** which will be held, pursuant to *LA-R.S. 49:977.3(C)*[1], on **Tuesday, June 11, 2024 at 10:00 a.m.**, in the offices of Louisiana Motor Vehicle Commission ("the Commission"), 3017 Kingman Street, Metairie, LA 70006. The purpose of this pre-hearing is to give the decision maker of the above-referenced business the opportunity to show compliance with the law and to informally discuss the allegations set for hearing in the paragraph below.

In the event that a resolution is not achieved at said pre-hearing conference, this is your formal notice to be present at a hearing of the Commission, Monday, July 15, 2024 at 10:00 a.m. in the offices of said Commission, or such other date and time to which said action may be continued. This hearing is held under the authority of and in accordance with *LA-R.S. 49:950, et seq.* and *LA-R.S. 32:1251, et seq.*

At the hearing, JPS Motors, L.L.C. DBA JPS Ford, 224 Gap Farms Road, Arcadia, LA 71001 will be asked to answer these charges, including but not limited to:

- failed to remit consumers' sales tax, license and registration fees to the State of Louisiana in a timely manner.

- failed to produce titles of at least nineteen (19) vehicles within twenty days of the sale.

- overcharged mortgage fees of at least two (2) consumers for a total amount of $27.00.

---

[1]49:977.3(C).
No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license.

JPS Motors, L.L.C.
DBA JPS Ford
c/o its Registered Agent for Service of Process
Mr. Thomas Martin
Arcadia, LA 71001
May 24, 2024
Page 2

<u>**CERTIFIED MAIL #7022 2410 0002 1936 2140**</u>
<u>**Return Receipt Requested**</u>

<u>**HEARING #2024-092**</u>

- overcharged license fees of at least two (2) consumers for a total amount of $169.93.

- overcharged temporary registration fees of at least twenty-one (21) consumers for a total amount of $966.00.

Through these actions you have allegedly violated the following section(s) of the Louisiana Motor Vehicle Commission Law and its Rules and Regulations.

**LA-R.S. 32:705. Delivery of certificate of purchaser of vehicle**

A. No person shall sell a vehicle without delivery to the purchaser thereof, whether such purchaser be a dealer or otherwise, a certificate of title issued under this Chapter in the name of the seller with such signed endorsement of sale and assignment thereon as may be necessary to show title in the purchase; provided:

(1) A bonded dealer shall provide the purchaser the certificate of title within twenty days.

**LA-R.S. 32:728. Fees**

Unless required to be waived pursuant to R.S. 32:1729, the commissioner shall charge the following fees and no others:

(5) Each notation of a security interest, whether a chattel mortgage, other security agreement, or other financing statement evidencing such security interest is filed, on a vehicle certificate of title--five dollars.

**LA-R.S. 32:1251. Declaration of public policy**

The legislature finds and declares that the distribution and sale of motor vehicles and recreational products in the state of Louisiana vitally affects the general economy of the state, the public interest, and the public welfare, and that in order to promote the public interest, and the public welfare, and in the exercise of its police power, it is necessary to regulate and to license those persons enumerated in R.S. 32:1254 and doing business in Louisiana, in order to prevent frauds, impositions, and other abuses upon its citizens, and avoid undue control of the independent motor vehicle dealer and recreational products by their motor vehicle manufacturing and distributive organizations and foster and keep alive vigorous and healthy competition, by prohibiting unfair practices by which fair and honest competition is destroyed or prevented, and to protect the public against the creation or perpetuation of monopolies and practices detrimental to the public welfare, to prevent the practice of requiring the buying, leasing, or renting of special features, appliances, and equipment not desired or requested by the purchaser, lessee, or renter, to prevent false and misleading advertising, to prevent unfair practices by said licensees, to promote the public safety and prevent disruption of the system of distribution of motor vehicles and recreational products to the public and prevent deterioration of facilities for servicing motor vehicles and keeping same safe and properly functioning, and prevent bankrupting of motor vehicle and recreational products dealers and lessors, who might otherwise be caused to fail because of such unfair

JPS Motors, L.L.C.
DBA JPS Ford
c/o its Registered Agent for Service of Process
Mr. Thomas Martin
Arcadia, LA 71001
May 24, 2024
Page 3

<u>**CERTIFIED MAIL #7022 2410 0002 1936 2140**</u>
<u>**Return Receipt Requested**</u>

<u>**HEARING #2024-092**</u>

practices and competition, thereby resulting in unemployment, disruption of leases, and nonpayment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression.

**LA-R.S. 32:1258. Denial, revocation, grounds, imposition of a civil penalty, or suspension of license; grounds; expiration**

A. The commission may, in addition to imposing a civil penalty pursuant to the provisions of this Chapter, deny an application for a license or revoke or suspend a license after it has been granted for any of the following reasons:

(1) On satisfactory proof of unfitness of the applicant or the licensee, as the case may be, under the standards established and set out in this Chapter.

(3) For any failure to comply with any provision of this Chapter or with any rule or regulation adopted and promulgated by the commission under authority vested in it by this Chapter.

(4) Change of condition after license is granted or failure to maintain the qualifications for license.

(5) Continued or flagrant violation of any of the rules or regulations of the commission.

(6) For any violation of any law relating to the sale, lease, rental, distribution, or financing of vehicles.

(8) Upon a finding that, considering the matters set forth in the applicable paragraphs of R.S. 32:1254, the public interest is not served by the issuance of the license sought or continuance of the license previously granted.

**LA-R.S. 47:306. Returns and payment of tax; penalty for absorption**

E. Payment of tax by a licensed vehicle dealer. Notwithstanding any other provision of law to the contrary, including the provisions of Subsection A of this Section, every vehicle dealer licensed pursuant to Title 32 of the Louisiana Revised Statutes of 1950 who sells a vehicle at retail shall remit all taxes collected pursuant to R.S. 47:303(B) no later than forty days from the date of sale or ten days from receipt by the licensed vehicle dealer of the title to any vehicle accepted in trade, if the title is received by the dealer in excess of thirty days from the date of sale provided that the deadline for the submission of taxes cannot be extended under this provision beyond the ninetieth day from the date of the sale. Any licensed vehicle dealer claiming under this provision an extension for the remittance of taxes beyond the fortieth day from the date of vehicle sale shall document, through a means satisfactory to the vehicle commissioner, the actual date that the dealer received title to the vehicle accepted in trade. The vehicle commissioner, for good cause shown, may extend the time for remitting the taxes for these licensed vehicle dealers for a period not to exceed ninety days and may waive penalties on payment of taxes by a licensed vehicle dealer who remits the taxes later than forty days.

JPS Motors, L.L.C.
DBA JPS Ford
c/o its Registered Agent for Service of Process
Mr. Thomas Martin
Arcadia, LA 71001
May 24, 2024
Page 4

**CERTIFIED MAIL #7022 2410 0002 1936 2140**
**Return Receipt Requested**

**HEARING #2024-092**

### LA-R.S. 47:519. Temporary registration plates issued by dealers

A. Issuance by commissioner to dealer. The commissioner may, subject to the limitations and conditions hereinafter set forth, deliver temporary registration plates or markers designed by the commissioner to a licensed automobile, boat trailer, camper trailer, truck, motorcycle, or other motor driven cycle, or motorized camper dealer who applies for same and who enclosed with such application a fee of four dollars for each set for which application is made. Such application shall be made upon a form prescribed and furnished by the commissioner. Dealers subject to the limitations and conditions hereinafter set forth, may issue such temporary registration plates or markers to owners of vehicles, except apportioned trucks, provided that such owners shall comply with the pertinent provisions of this Section.

### LA-R.S. 32:1261. Unauthorized acts

A. It shall be a violation of this Chapter:

(2) For a motor vehicle dealer, specialty vehicle dealer, recreational product dealer, used motor vehicle dealer, or a motor vehicle salesman:

(c) To resort to or use any false or misleading advertisement in connection with his business as such vehicle dealer or motor vehicle salesman.

### Louisiana Administrative Code Title 46. Part V. Subpart 1. Chapter 7. Advertising

§709. Availability of Vehicles

B. Dealers may advertise a specific used vehicle for sale only if the specific used vehicle is in the possession of the dealer at the time the advertisement is placed and the title certificate to the used vehicle has been assigned to the dealer, except as provided in Paragraphs 1 and 2, below.

You are advised that in the event the evidence and testimony submitted at the hearing indicates that you have committed the violation(s), the Louisiana Motor Vehicle Commission may impose penalties under the provisions of *LA-R.S. 32:1258.* and *LA-R.S. 32:1260.*

For copies of Louisiana Motor Vehicle Law; Louisiana State Administrative Procedure; and Motor Vehicle Rules and Regulations, please go to the Louisiana Motor Vehicle Commission's website: www.lmvc.la.gov. You can find them under Laws & Rules.

Under the rules of the Louisiana Motor Vehicle Commission, your written response to the complaint should be filed with this agency within ten (10) days of your receipt of this notice. If you do not file a reply and do not appear at the hearing, the allegations in the complaint will be considered to be true and a default order may be entered against you.

JPS Motors, L.L.C.
DBA JPS Ford
c/o its Registered Agent for Service of Process
Mr. Thomas Martin
Arcadia, LA 71001
May 24, 2024
Page 5

<u>**CERTIFIED MAIL #7022 2410 0002 1936 2140**</u>
<u>**Return Receipt Requested**</u>

<u>**HEARING #2024-092**</u>

At the hearing, you will be accorded the following rights:

(1)  You may appear on your own behalf, or the counsel of your choice may represent you.

(2)  You may present and enter into the record evidence on all issues of fact.

(3)  You may examine the evidence entered into the record.

(4)  You may present arguments on all issues of law and fact.

(5)  You may cross-examine, as appropriate, witnesses.

(6)  You may request from the Commission office that subpoenas be issued commanding the appearance of witnesses or the production of documents at the hearing. However, if you wish to issue subpoenas, you should contact the Commission office no later than Friday, July 5, 2024.

If you wish to be furnished a transcript of the proceeding, you must request the transcript three (3) days prior to July 15, 2024 in writing, and deposit with the Louisiana Motor Vehicle Commission a cashier's check in the amount of $1,000.00 to cover the cost of transcribing this hearing.

Pursuant to the American with Disabilities Act, assistance will be provided in completing any documents required by the Commission.

In accordance with the provisions of *LA-R.S. 32:1260(C)*, the commission may render a judgment for costs against any party to these proceedings.

**LOUISIANA MOTOR VEHICLE COMMISSION**

*L A House*
L. A. House
Executive Director

LAH/njr

cc:  Gregory F. Reggie, Commission Counsel
Jason Bullock, *VIA E-MAIL*
Greg Houston, *VIA E-MAIL*

DocuSign Envelope ID: 91D6B5C5-A07D-4963-80C7-E44148B0CA4A

 # Ford Motor Company

Memphis Region

# AMENDMENT TO

| | | |
|---|---|---|
| FORD SALES AND SERVICE AGREEMENT | Dated | May 29, 2015 |
| FORD TRUCK SALES AND SERVICE AGREEMENT | Dated | N/A |
| FORD HEAVY DUTY TRUCK SALES AND SERVICE AGREEMENT | Dated | N/A |
| LINCOLN SALES AND SERVICE AGREEMENT | Dated | N/A |

SUPPLEMENTAL AGREEMENT made as of the ___17th___ day of ___May___ , ___2023___
,

by and between _____ JPS Motors, LLC _____

_____ Limited Liability Company _____      _____ Louisiana _____

doing business as _____ JPS Ford _____

and with a principal place of business at _____ 224 Gap Farms Road _____

                                            (Street Address)                        (P.O. Box)

| Arcadia | Bienville | LA | 71001 | |
|---|---|---|---|---|
| (City) | (County) | (State) | (Zip Code) | (P O Box Zip) |

(hereafter called the "Dealer") and Ford Motor Company, a Delaware corporation with its principal place of business at Dearborn, Michigan (hereinafter called the "Company").

The parties hereto have previously entered into the above designated Agreements and now desire to make certain changes therein.

NOW, THEREFORE, in consideration of these premises, the parties hereto mutually agree that said Agreements be amended by changing Paragraph F to read as follows:

F.   In view of the personal nature of this agreement and its objectives and purposes, the Company expressly reserves to itself the right to execute a Ford Sales and Service Agreement with individuals or other entities specifically selected and approved by the Company. Accordingly, this agreement and the rights and privileges conferred on the Dealer hereunder are not transferable, assignable or salable by the Dealer and no property right or interest, direct or indirect, is sold, conveyed or transferred to the Dealer under this agreement. This Agreement has been entered into by the Company with the Dealer in reliance (i) upon the representation and agreement that the following person(s), and only the following person(s), shall be the principal owners of the Dealer:

| | | PERCENTAGE OF INTEREST | |
|---|---|---|---|
| NAME | HOME ADDRESS | Equity | Voting |
| Jason P. Bullock | 222 Ladelle Loop, Monroe, LA 71203 | 64% | |
| Arcadia Motors, LLC | 3117 West 70th Street, Shreveport, LA 71108 | 36% | |
| | | | |
| | | | |
| | | | |

(ii) upon the representation and agreement that the following person(s), and only the following person(s), shall have full managerial authority for the operating management of the Dealer in the performance of this agreement:

| NAME | HOME ADDRESS | TITLE |
|---|---|---|
| Jason P. Bullock | 222 Ladelle Loop, Monroe, LA 71203 | Managing Member |
| | | |
| | | |
| | | |

and (iii) upon representation and agreement that the following person(s), and only the following person(s), shall be the remaining owners of the Dealer:

| NAME | HOME ADDRESS | PERCENTAGE OF INTEREST | |
|---|---|---|---|
| | | Equity | Voting |
| | | | |
| | | | |
| | | | |
| | | | |

The Dealer shall give the Company prior notice of any proposed change in the said ownership or managerial authority, and immediate notice of the death or incapacity of any such person. No such change or notice, and no assignment of this agreement or of any right or interest herein, shall be effective against the Company unless and until embodied in an appropriate amendment to or assignment of this agreement, as the case may be, duly executed and delivered by the Company and by the Dealer. The Company shall not unreasonably withhold it consent to any such change. If the Company's restriction regarding amendment or assignment of these Agreements is illegal under a valid law of any jurisdiction where such change is to take place, this amendment will be modified to the minimum extent necessary to comply with such law if it was effective on the date of execution of these Agreements.

This Supplemental Agreement is subject to all the terms and conditions contained in said Agreements, except insofar as such terms and conditions may be inconsistent with the express terms hereof.

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the day and year first above written and the Company is authorized to deliver the same to the Dealer by placing the Dealer's copy thereof in the United States Mail, duly stamped and addressed to the Dealer at his principal place of business, or by delivery to such place of business or to the Dealer in person.

**Ford Motor Company**

JPS Ford
(Dealer's Trade Name)

By _Ann McDonough_ Assistant Secretary
5804E6F0C6CE4E0..

By _Jason P. Bullock_
B035D8DC3A88478..
Jason P. Bullock
Managing Member

_Greg Houston_
DF722E5985524F0..
Greg Houston -Regional Manager

## BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE and ASSIGNMENT, (the "*Agreement*") is to be effective as of ˙ ˙ ˙ ˙ ˙ ˙ ˙, 2023, by and between Arcadia Motors, LLC, a Louisiana limited liability company ("*Buyer*"), on the one hand, and JPS Motors, LLC, a Louisiana limited liability company ("*Seller*").

WHEREAS, Seller, Buyer and certain other parties have entered into an Asset Purchase Agreement, dated as of the date hereof (as amended, the "*Purchase Agreement*", with capitalized terms used herein without definition having the meanings set forth therein), which provides for the purchase by Buyer from Seller of the Assets (but not including the land and building on which the Dealership resides, which is handled by a separate deed – such non immovable property assets referred to herein as the "**Transferred Assets**");

WHEREAS, effective as of the 27th of July 27, 2023 and pursuant to a separate Bill of Sale and Assignment, Seller assigned, transferred, conveyed, sold and delivered to Buyer the Transferred Assets; and

WHEREAS, in accordance with the Purchase Agreement, Seller also agreed to sell the Remaining Assets to Buyer so that Buyer could become the owner of 100% of the Assets as stated in the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1.    <u>Bill of Sale</u>.

     a.    Seller hereby assigns, transfers, conveys, sells and delivers to Buyer, its successors and assigns, each and all of the Remaining Assets, intending hereby to convey all of the right, title and interest of Seller therein. TO HAVE AND TO HOLD the Remaining Assets unto Buyer and its successors and assigns forever, to its and their own use and benefit. Seller does hereby bind itself and its successors and assigns to warrant and forever defend title to the Remaining Assets unto Buyer and its successors and assigns against every person whomsoever claiming or to claim the same or any part thereof. The parties hereto acknowledge and agree that this instrument results in Buyer owning 100% of the Assets described in the Purchase Agreement.

     b.    Seller hereby irrevocably constitutes and appoints Buyer its true and lawful attorney-in-fact, with full power of substitution and resubstitution, in the name of Seller or Buyer, but on behalf and for the benefit of Buyer, to demand, collect and receive for the account of Buyer all of the Remaining Assets; to institute or prosecute, in the name of Seller or otherwise, all proceedings that Buyer may reasonably deem necessary or convenient in order to realize upon, affirm or obtain title to or possession of or to collect, assert or enforce any claim, right, or title of any kind in or to the Remaining Assets; and to defend and compromise any and all actions, suits or proceedings in respect of any of the Remaining Assets. Seller agrees that the foregoing powers are coupled with an interest and are and shall be irrevocable by Seller.

2.    <u>Assignment of Assumed Contracts</u>.

     a.    Subject to the provisions of <u>Section 2(b)</u> hereof, Seller hereby assigns to Buyer all of Seller's right, title and interest in, to and under the Assumed Contracts.

b.     This Agreement shall not constitute or effect an assignment of any right, title or interest so long as an assignment or attempted assignment of such right, title or interest would constitute a breach or violation of the agreement, instrument or other arrangement or document pursuant to which such right, title or interest is held, in any way adversely affect the rights of Seller or Buyer under such agreement, instrument or other arrangement or document or violate any applicable Law. Subject to the foregoing sentence, with respect to Assumed Contracts that by their terms or under applicable Law are not transferable or assignable by Seller or require consents to assignment and such consents have not yet been obtained, Seller shall enter into such arrangements as are reasonably requested by Buyer (at no cost to Seller) to provide Buyer all of the benefits of and under such assets, properties and rights, including Seller's undertaking to use reasonable efforts and cooperation in obtaining any required consents.

3.     Purchase Agreement Controls.  Nothing in this Agreement shall be deemed to expand or diminish the scope of the rights of any party to the Purchase Agreement that are contained in the Purchase Agreement, and the representations and warranties contained in the Purchase Agreement are incorporated by reference herein and made a part hereof as if fully set forth herein.  If there is conflict or an apparent conflict between the provisions of this Agreement and the provisions of the Purchase Agreement, the provisions of the Purchase Agreement shall control.

4.     Further Assurances.  Each party hereby covenants and agrees with the other, its successors and assigns, to do, execute, acknowledge and deliver to, or to cause to be done, executed, acknowledged and delivered to, the other, its successors and assigns, all such further acts, instruments of sale, transfer, assignment, and conveyance and all such notices, releases, acquittances, certificates of title and other documents as may be reasonably necessary for the selling, assigning, transferring, conveying, delivering, assuring and confirming to Buyer, its successors and assigns, any or all of the Remaining Assets, and to Seller the assumption by Buyer of certain liabilities described in the Purchase Agreement.

5.     Counterparts; Deliveries.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.  This Agreement, to the extent signed and delivered by means of a facsimile machine or other electronic transmission (including electronic mail of .pdf files), shall be treated in all manner and respects and for all purposes as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

6.     Successors and Assigns.  All of the terms and provisions of this Agreement shall be binding upon Seller and Buyer and their respective, its successors and assigns, and shall inure to the benefit of them and their successors and assigns.

*[Signature Page Follows]*

IN WITNESS WHEREOF, each party has caused this BILL OF SALE AND ASSIGNMENT to be duly executed and delivered in its name and on its behalf, as of the date first above written.

*Seller:*

**JPS MOTORS, LLC**

By: _____
Name: Jason Bullock
Title: Owner./Manager

*Buyer:*

**ARCADIA MOTORS, LLC**

By: _____
Name: Thomas Martin
Title: Manager

By: _____
Name: Chad Griggs
Title: Manager



**LOUISIANA MOTOR VEHICLE COMMISSION**
**INITIAL APPLICATION FOR LICENSE AS A**
**NEW MOTOR VEHICLE DEALER**

**FOR OFFICIAL USE ONLY**

License # _____

Date Issued _____

Deposit Date _____

Check # _____

Check Amount $ _____

Return This Document and Required Data Listed On The Instruction Sheet To The:
Louisiana Motor Vehicle Commission
3017 Kingman Street, Metairie, Louisiana 70006
Phone: (504) 838-5207 ✦ FAX: (504) 838-5416 ✦ www.lmvc.la.gov

**FEE $400.00**

| | |
|---|---|
| Name of New Motor Vehicle Dealer (Hereinafter referred to as Applicant)<br>**JPS MOTORS, LLC** | Applicants' Current License No. (if applicable)<br>**N-2022-00236** |

Trade name (DBA) of Applicant
**JPS FORD**

Physical Address of Applicant
**224 GAP FARMS ROAD**

| City<br>**ARCADIA** | State<br>**Louisiana** | Zip Code<br>**71001** |
|---|---|---|

| P.O. Box/Drawer of Applicant | City | State | Zip Code |
|---|---|---|---|

| Phone Number of Applicant<br>**(318) 263-2084** | Toll Free Number of Applicant | Web Site of Applicant<br>**www.jpsford.com** | E-Mail Address of Applicant<br>**jbullock@jpsmotors.net** |
|---|---|---|---|

| Physical Address of Applicant is properly zoned in the municipality where it is located<br>☒ Yes ☐ No | Days of Business<br>**6** | Hours of Business<br>**8-6 Monday to Friday; 8-2 Saturday** |
|---|---|---|

| | | |
|---|---|---|
| Have these quarters previously been used as a new car dealership? | ☒ Yes ☐ No If yes, state when | SINCE 3/2017 |
| Is there adequate space for storage of new parts and accessories? | ☒ Yes ☐ No | |
| Are there facilities for the repair and servicing of motor vehicles within these quarters? | ☒ Yes ☐ No | |

| Description of quarters in which business will be conducted: | Total area of- | Sq. Ft. | Dimensions | Total area of- | Sq. Ft. | Dimensions |
|---|---|---|---|---|---|---|
| | Entire business plot | 18500 | 106 X 175 | Parts department | 1500 | 30 X 50 |
| | Enclosed new car showroom | 2500 | 25 X 100 | Used car lot | 75000 | 150 X 500 |
| | Service department | 10000 | 100 X 100 | Parking lot | 120000 | |

| | Total number of | | Total number of | | Total number of | |
|---|---|---|---|---|---|---|
| | Service stalls | 2 | Other type stalls | 2 | New motor vehicle salesmen | 10 |
| | Mechanical stalls | 10 | Hydraulic lifts | 8 | Mechanical personnel | 7 |
| | Body and paint stalls | 0 | Testing equipment | 12 | Product special tools | 20 |

The Business is owned by (Check One) ☐ Individual ☐ Partnership ☐ Corporation ☐ Trust ☐ L.P. (Limited Partnership) ☐ L.L.P. (Limited Liability Partnership) ☒ L.L.C. (Limited Liability Company)

| List all Stockholders, Members, or Partners and Their Percentage of Ownership (If needed, use additional paper) | Name | Title | Percentage of Ownership |
|---|---|---|---|
| | **JASON P. BULLOCK** | DEALER PRINCIPAL | 64.00 |
| | **ARCADIA MOTORS, LLC** | MEMBER | 36.00 |

| | | |
|---|---|---|
| Has the applicant, any partner, any corporate stockholder, any L.P. member or manager, any L.L.P. member or manager, any L.L.C. member or manager, any director or officer of said applicant ever been arrested, charged with, convicted of or plead nolo contest to any felony or misdemeanor/crime, in the past ten (10) years, excluding traffic violations? | ☐ Yes ☒ No |
| If yes, give full details on a separate sheet including crime, type (felony or misdemeanor), date, place of conviction, sentence received, etc. You must also attach copies of all final court judgments for these convictions. Failure to comply will result in your license being delayed or denied. | |

| Has the applicant, any partner, corporate stockholder, L.P. member or manager, any L.L.P. member or manager, or any L.L.C. member or manager, director or officer of said applicant ever | | |
|---|---|---|
| had a motor vehicle dealer's or salesperson's license subjected to denial or disciplinary action? | ☐ Yes ☒ No |
| had any other type of occupational license (excluding driver's license) subjected to denial or disciplinary action? | ☐ Yes ☒ No |
| filed or been declared bankrupt? | ☐ Yes ☒ No |

Any "yes" answer above must be explained fully in a separate letter signed and dated by the applicant.

FORM LMVC/NDA (Rev. 09/22)

| Name of Applicant | | |
|---|---|---|
| **JPS MOTORS, LLC** | | |

| Address of Applicant | City | Zip Code |
|---|---|---|
| **224 GAP FARMS ROAD** | **ARCADIA** | **71001** |

| State of Incorporation or Organization | If other than Louisiana, are you authorized by the Louisiana Secretary of State to do business in Louisiana? |
|---|---|
| **Louisiana** | ☐ Yes ☐ No |

| Name of Registered Agent for Service of Process in Louisiana |
|---|
| **Jason Paul Bullock** |

| Address of Registered Agent for Service of Process in Louisiana |
|---|
| **224 Gap Farms Road** |

| City | State | Zip Code |
|---|---|---|
| **Arcadia** | **Louisiana** | **71001** |

Reason(s) for the filing of this application:

☐ Establishment of a new dealership    ☐ Relocation of an existing dealership

☒ Change in ownership of the dealership    ☐ Change in the name of the dealership

☐ Change in the dealer-operator(s) as reflected in the Dealer Sales and Service Agreement(s) (Franchise(s))

| | Makes of motor vehicles to be offered for sale | |
|---|---|---|
| **FORD** | | |
| | | |

List the individual(s) named as Dealer-Operator or General Sales Manager in the Dealer Sales and Service (Franchise Agreement(s))

**JASON PAUL BULLOCK**

| Will this be the primary occupation of the dealer-operator? | ☒ Yes ☐ No |
|---|---|

If no, explain fully on a separate sheet of paper. Include the percentage of time to be devoted to the occupation of dealer-operator.

| | List the planning potential assigned to you by your respective manufacturer(s) | |
|---|---|---|
| $ | $ | $ |
| $ | $ | $ |
| $ | $ | $ |

Contact Person Name, Phone Number, and E-mail

**JASON P BULLOCK, 318-263-2084, jbullock@jpsmotors.net**

### CERTIFICATION BY APPLICANT

*I have read the foregoing application and I know the contents thereof. All matters and things therein set forth are true under penalty of perjury. I agree to conform to any law relating to the sale, lease or rental, distribution, or financing of motor vehicles and the rules and regulations promulgated by the Louisiana Motor Vehicle Commission.*

| Signature | Title |
|---|---|
| *[signature]* | **DEALER PRINCIPAL** |
| Print Name | Date |
| **JASON P BULLOCK** | **4/27/2023** |

*A Resolution of the Board of Directors of the Corporation or of the members of the Partnership, Trust, Limited Partnership, Limited Liability Partnership, or Limited Liability Company authorizing the person signing above to execute this application MUST be attached.*

FORM LMVC/NDA (Rev. 09/22)

Copyright 2014 Cox Global, LLC · ON DEMAND CHECK · CODIC · IMAGING

| INVOICE STOCK NO. | INVOICE DATE | PURCHASE ORDER NO. | COMMENT/V.I.N. | AMOUNT | DISCOUNT/ ACCOUNT NO. | NET AMOUNT |
|---|---|---|---|---|---|---|
| | | | | | | 400.00 |
| | 042723 | | LMVC NEW OWNER LICENSE | | | |
| | | | | 603164 | 10030A | -400.00 |
| | | | | | 93000 | 400.00 |
| | | | | TOTAL | 10030A | 400.00 |

REMITTANCE ADVICE

DETACH AT PERFORATION BEFORE DEPOSITING CHECK

CHECK BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.    WATERMARK ON BACK. HOLD AT ANGLE TO VIEW WHEN CHECKING ENDORSEMENT.

**603164**

**JPS FORD**
224 Gair Farms Road · P.O. Box 508
Arcadia, LA 71001
318-263-2084
Fax 318-536-5220

**Gibsland Bank**

603164   84-275
1111

| DATE | PAY THIS AMOUNT | | | AMOUNT OF CHECK |
|---|---|---|---|---|
| 27APR23 | *******400 DOLLARS | 00 | CENTS | ********400.00 |

JPS Ford
VOID AFTER 90 DAYS

BY _____

TO THE ORDER OF    LMVC

BY _____
AUTHORIZED SIGNATURE

TO REORDER 8800092 CALL 1-800-237-2917

⑆603164⑆ ⑈111104617⑈

License No. N -2022-00236
DPS Code: NAJD

2022-2024

Not Transferable
Valid Only at Address Below

# Louisiana Motor Vehicle Commission

This Certifies that

JPS Motors, L.L.C.
DBA JPS Ford
224 Gap Farms Road
Arcadia, LA 71001
Jason P. Bullock, Dealer-Operator

is duly licensed as a

New Motor Vehicle Dealer

of the following make or makes

Ford Light Duty Trucks, Ford Medium Duty Trucks, Ford Passenger Cars
Next-Generation Ford EV

For the period ending    July 31, 2024,    unless license is sooner revoked.

In Witness whereof, LOUISIANA MOTOR VEHICLE COMMISSION, under and by virtue of the
authority vested in it by the laws of the State of Louisiana, has caused this license to be issued with its seal
imprinted hereon.

LOUISIANA MOTOR VEHICLE COMMISSION
Dated August 1, 2022
Signed, Sealed and Attested

_Executive Director_

LMVC-7L (R2/20)

(To be conspicuously displayed in place of business)

## JPS MOTORS REIMBURSEMENT

| Description | Amount |
|---|---|
| PAYROLL-4/1/24 | $7,000.00 |
| PAYROLL-4/15/24 | $7,000.00 |
| PAYROLL-5/1/24 | $7,000.00 |
| PAYROLL-5/15/24 | $7,000.00 |
| MARION STATE BANK LOAN-5/1/24 | $5,917.25 |
| MARION STATE BANK LOAN-6/1/24 | $5,917.25 |
| MARION STATE BANK LOAN-7/1/24 | $5,917.25 |
| MARION STATE BANK LOAN-8/1/24 | $5,917.25 |
| RETURNED CAPITAL ONE ACH PAYMENT | $2,918.14 |
| EXPENSE REIMBURSEMENT-ALEXA SPRINGS | $791.39 |
| EXPENSE REIMBURSEMENT-DAVID'S MOBILE DETAIL | $225.00 |
| NERDS TO GO INVOICE-4/1/24 | $2,503.56 |
| NERDS TO GO INVOICE-5/1/24 | $2,503.56 |
| DEALER PRINICPAL CONSULTANT FEE-6/7/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-6/14/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-6/21/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-6/28/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-7/5/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-7/12/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-7/19/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-7/26/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-8/2/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-8/9/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-8/16/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-8/23/24 | $1,750.00 |
| DEALER PRINICPAL CONSULTANT FEE-8/30/24 | $1,750.00 |
| GREYSTONE RENTALS INVOICE 231113-0002454-1/24/2024 | $2,871.97 |
| FORD CREDIT PAYMENT-ACCOUNT# 62592260 | -$2,821.49 |

$83,411.13

DocuSign Envelope ID: 8DA2BC9A-CDEA-42AD-BB49-5291D0412DDE



**Ford Motor Company**
**Marketing, Sales & Service**

Memphis Region
65 Germantown Court
Suite 201
Cordova, TN 38018

April 23, 2024

PERSONAL AND CONFIDENTIAL

Jason P. Bullock
JPS Ford
224 Gap Farms Road
Arcadia, LA 71001

Dear Mr. Bullock,

We are in receipt of the Bill of Sale and Assignment between Arcadia Motors, LLC and JPS Motors, LLC. Ford Motor Company appreciates the opportunity to evaluate your proposed candidate. However, at this time we are unable to grant approval for consummation of the submitted buy sell dated August 1, 2023. Ford Motor Company reviews this type of request with certain criteria by analyzing standard performance metrics. It is our standard practice to review these criteria that we refer to as the Four Cs. The guidelines for our Four Cs are as follows:

1. **Character:** Proposed Dealer candidates must exhibit ethical and honest practices. They must have sound personal and financial reputations as well as the respect of their community.

2. **Capacity:** Extensive retail automotive knowledge and experience is necessary as a Dealer candidate. Successful Dealer candidates demonstrate a history of acceptable profitability, car and truck sales performance, and parts and service operations compared with their respective manufacturer's averages.

   Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

   - 12 month rolling numbers for Dealer Reported Sales as a % Sales Expectancy for Car AND Truck **TOTAL**
   - The minimum standard is performance that is 100% of Sales Expectancy (State Average).

3. **Customer Satisfaction:** Ford Motor Company places a high degree of importance on customer satisfaction in evaluating our Ford Lincoln dealerships. Successful Dealer candidates must demonstrate total dedication to quality and customer service.

   Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

   - 12 month rolling numbers for Sales Net Promoter Score **AND**
   - 12 month rolling numbers for Service Net Promoter Score
   - The minimum standard is performance that is 100% of Group Average

4. **Capital:** Sufficient unencumbered capital is critical to the success of a dealership, particularly given the cash required for necessary vehicle inventory, parts inventory, and accounts receivables.

Buy-Sell Rejection Letter Template w/ NPS
GIS1: 7.06
GIS2 Classification: CONFIDENTIAL

Template Revised: 1/2/2024
Retention Requirement: C+12

JPS_000567_4.10.25

Successful Dealer candidates have an established history of profitability and meet or exceed our working capital requirements.

Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

- 100% of established Working Capital guides **AND**
- Must maintain Working Capital guides for minimum of 9 out of 12 months

We trust you can understand that, in matters of this nature, Ford Motor Company must adhere to established policies to ensure continued success for our Dealer partners. A turndown letter was mailed to you on October 26, 2023 noting that the application package was incomplete. We received additional documentation from you, including on March 7, 2024. Based upon our review, Ford Motor Company must reject your request for ownership transfer because the proposed F(ii) candidate has withdrawn, and in addition, Arcadia Motors, LLC does not meet the required benchmarks of the Capital section guidelines stated above.

As always, any proposed changes to paragraph F of the Sales and Service Agreements require Ford Motor Company's prior approval. In the future, if you would like to submit any other proposals for our review, please contact your Regional Sales Performance Manager.

If you have any questions, please do not hesitate to contact me at 214-334-2744 or your Sales Performance Manager.

Sincerely,

Greg Houston
Greg Houston
Regional Manager

Buy-Sell Rejection Letter Template w/ NPS
GIS1: 7.06
GIS2 Classification: CONFIDENTIAL

Template Revised: 1/2/2024
Retention Requirement: C+12

JPS_000568_4.10.25

25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 167 of 235



**Jason P. Bullock**

t 318.263.2084 f 318.536.5220

m 318.732.4945
a 224 Gap Farms Road | Arcadia, LA 71001

Website

---

**From:** Holcombe, Jazmin (J.) <jholco15@ford.com>
**Sent:** Tuesday, March 14, 2023 2:58 AM
**To:** Jason Bullock <jbullock@jpsmotors.net>; Mcthenney, Curtisha (C.) <cmcthenn@ford.com>
**Subject:** RE: JPS FORD BILL OF SALE- CARNATHAN MOTORS TO ARCADIA MOTORS

Crossing off background applications. The individuals submitted that information separately.

After review, I still need the remaining items:

- ~~#1 Full completed background application for owners of Arcadia Motors: Thomas G. Martin, Chad Mitchell Griggs~~
- #2 Minutes for JPS Motors, LLC
- #3 Minutes for Arcadia Motors LLC, noting ownership in JPS Motors LLC
- #4 Articles of Organization/Incorporation for Arcadia Motors LLC
- #5 Operating Agreement for Arcadia Motors, LLC
- #6 Resignation Letter for Carnathan & Company, LLC

** Items #2 & #6 can be combined in the form of an Ownership Verification Letter supplied by an Attorney/CPA for JPS Motors, LLC (see attached template)

** Items #3 and #5 can be combined in the form of an Ownership Verification Letter supplied by an Attorney/CPA for JPS Motors, LLC. (see attached template)

Also, please note Arcadia Motors will be added to the Agreement upon approval as Investor Only and owners will be required to sign an Investor Only Letter.

2

JPS_000002_4.10.25

Please let me know if you have any questions.

Also, let me know if you need me to re-send the background application.

I can give you a call tomorrow later today to walk through the list any questions you may have.

**Best Wishes,**

# Jazmin Holcombe

**Retail Network Specialist**

**Ford Motor Company**

Jholco15@ford.com

---

**From:** Holcombe, Jazmin (J.)
**Sent:** Tuesday, March 14, 2023 3:37 AM
**To:** Jason Bullock <jbullock@jpsmotors.net>; Mcthenney, Curtisha (C.) <cmcthenn@ford.com>
**Subject:** RE: JPS FORD BILL OF SALE- CARNATHAN MOTORS TO ARCADIA MOTORS

Good Evening Mr. Bullock,

Thank you for your patience, while we reviewed the submitted documentation.

After review, I still need the remaining items:

- #1 Full completed background application for owners of Arcadia Motors: Thomas G. Martin, Chad Mitchell Griggs

**Anne Wilkes**

| | |
|---|---|
| **From:** | Tommy Martin <tommyswhsl@yahoo.com> |
| **Sent:** | Wednesday, April 9, 2025 1:43 PM |
| **To:** | Anne Wilkes |
| **Subject:** | Fw: Document Request for Stock Purchase - JPS |
| **Attachments:** | Background Application.xlsx; Sample simple Biography.pdf; EFT Authorization.xlsx; Ford and Lincoln Operating Plan.docx; Facility Data Sheet.docx |

----- Forwarded Message -----
**From:** Jason Bullock <jbullock@jpsmotors.net>
**To:** tommyswhsl@yahoo.com <tommyswhsl@yahoo.com>; 'chris blachford' <c.blachford@outlook.com>
**Sent:** Thursday, September 7, 2023 at 10:24:30 AM CDT
**Subject:** FW: Document Request for Stock Purchase - JPS

**From:** Holcombe, Jazmin (J.) <jholco15@ford.com>
**Sent:** Wednesday, September 6, 2023 2:41 PM
**To:** Jason Bullock <jbullock@jpsmotors.net>; chad griggs <highbidder85@gmail.com>; Wesley Weathersby <tommyswhslauto@gmail.com>
**Cc:** Mcthenney, Curtisha (C.) <cmcthenn@ford.com>
**Subject:** Document Request for Stock Purchase - JPS

Good Afternoon,

My name is Jazmin Holcombe, and I am the Memphis Region's Retail Network Specialist. We have been notified regarding the proposed Stock Purchase Agreement between Arcadia Motors, LLC and JPS Motors LLC received August 30, 2023. Curtisha Mcthenney, the Memphis Region's Network Development Manager, and I will be working with you and the Seller on evaluating and processing the proposed transaction. Please be advised that this email does not constitute approval or acceptance of any conditions placed on Ford Motor Company in the Stock Purchase Agreement, but rather is a tool that we use to gather the information necessary to begin our review of you as a Dealer candidate.

Ford Motor Company's primary goal is to become the recognized industry leader in total customer satisfaction. Our concept of customer satisfaction extends beyond the product and encompasses the vehicle buying process as well as the ownership/service experience. In this regard, we have established criteria to evaluate potential Dealer candidates that cover four basic areas, commonly referred to as the "Four Cs":

The 4 Cs include the following:

- **Character** – Good standing in the community with a sound personal and financial reputation.
- **Capacity** – Proven track record of satisfactory sales, market share performance, and successful dealership operations.
- **Customer Satisfaction** – Demonstrated customer satisfaction commitment and acceptable performance based on available measurement criteria and other "customer care" factors.
- **Capital** – Adequate cash, capital structure, and wholesale credit lines sufficient to meet established guide levels.

## REQUESTED ACTIONS

- Carefully review the attached documents and take the necessary steps to submit the required information as soon as possible so we can begin our review process.
- You will receive an email from fordscreening@aravo.com requesting you complete a Questionnaire. Complete Ford's Anti-Bribery Questionnaire as soon as possible. This questionnaire is needed as part of the evaluation process. As a business that can sell products and services, Dealers and their employees are likely to interact with government entities and officials in the community.
- A contact from the Region will be contacting you soon regarding the development and completion of your Sales & Profit Forecast for the proposed dealership operation. This forecast is an important part of the supporting rationale upon which the Company relies to approve a proposed new dealership and operator and drives the working Capital requirement and the operating investment for the dealership.
- Please provide the following required items:

### REQUIRED ITEMS

- **Operating Plan**
- **Photos of Facility**
- **Facility Data Sheet**
- **EFT Authorization Form & Voided Check**
- **Sales & Profit Forecast**
- **Purchase Agreement**
- **Verification of Funds**
- **Copies of Entity Documents**
  - Articles of Incorporation
  - Entity/Trade Name Filing
  - State Sales Tax
  - EIN
- **Amended Operating Agreement**
- **Lease/Assignment of Lease**
- **Attorney Letter** – Letter from attorney detailing the owners by legal name, dealership entity and trade name, titles of individuals, and percentage of shares owned (must total up to the capitalization of the dealership). Must confirm consent from all owners and clearly define which individuals will have managerial authority over dealership operations and be listed on paragraph F(ii) of the Sales and Service Agreement.
- **Floorplan Source** – will current remain?

When the requested documents have been received they will be reviewed by Memphis Region Management. Please note that Louisiana State statute allows Ford Motor Company **60 days, from receipt of the notice/application,** to reply to your request. Please compile all the requested documentation and provide it to me no later than **, October 6, 2023**.

Please submit by October 6, 2023 all the requested documents to me at jholco15@ford.com and copy Curtisha Mcthenney cmcthenn@ford.com

Please do not hesitate to contact Curtisha Mcthenney or I with any questions.

Thank you and have a great day!

**Best Wishes,**

**Jazmin Holcombe**

**Retail Network Specialist**

**Ford Motor Company**

Jholco15@ford.com

3



**JPS Motors, LLC**

224 Gap Farms Road
Arcadia, LA 71001
Phone: 318-263-2084
Fax: 318-536-5220

August 28, 2023

Ms. Curthisa Mcthenney
Market Representation Manager
Ford Motor Company Memphis Region

Ms. Mcthenney,

As per our discussion, please see attached fully executed Bill of Sale and Assignment for my 64% of JPS Motors, LLC to Arcadia Motors, LLC. Please let me know if you have any questions or need any additional information.

Sincerely,

Jason P. Bullock
JPS Motors, LLC DBA JPS Ford-Arcadia, LA
Dealer Principal

## BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE and ASSIGNMENT, (the "*Agreement*") is to be effective as of *August 1st*, 2023, by and between Arcadia Motors, LLC, a Louisiana limited liability company ("*Buyer*"), on the one hand, and JPS Motors, LLC, a Louisiana limited liability company ("*Seller*").

WHEREAS, Seller, Buyer and certain other parties have entered into an Asset Purchase Agreement, dated as of the date hereof (as amended, the "*Purchase Agreement*", with capitalized terms used herein without definition having the meanings set forth therein), which provides for the purchase by Buyer from Seller of the Assets (but not including the land and building on which the Dealership resides, which is handled by a separate deed – such non immovable property assets referred to herein as the "**Transferred Assets**");

WHEREAS, effective as of the 27th of July 27, 2023 and pursuant to a separate Bill of Sale and Assignment, Seller assigned, transferred, conveyed, sold and delivered to Buyer the Transferred Assets; and

WHEREAS, in accordance with the Purchase Agreement, Seller also agreed to sell the Remaining Assets to Buyer so that Buyer could become the owner of 100% of the Assets as stated in the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1. Bill of Sale.

   a. Seller hereby assigns, transfers, conveys, sells and delivers to Buyer, its successors and assigns, each and all of the Remaining Assets, intending hereby to convey all of the right, title and interest of Seller therein. TO HAVE AND TO HOLD the Remaining Assets unto Buyer and its successors and assigns forever, to its and their own use and benefit. Seller does hereby bind itself and its successors and assigns to warrant and forever defend title to the Remaining Assets unto Buyer and its successors and assigns against every person whomsoever claiming or to claim the same or any part thereof. The parties hereto acknowledge and agree that this instrument results in Buyer owning 100% of the Assets described in the Purchase Agreement.

   b. Seller hereby irrevocably constitutes and appoints Buyer its true and lawful attorney-in-fact, with full power of substitution and resubstitution, in the name of Seller or Buyer, but on behalf and for the benefit of Buyer, to demand, collect and receive for the account of Buyer all of the Remaining Assets; to institute or prosecute, in the name of Seller or otherwise, all proceedings that Buyer may reasonably deem necessary or convenient in order to realize upon, affirm or obtain title to or possession of or to collect, assert or enforce any claim, right, or title of any kind in or to the Remaining Assets; and to defend and compromise any and all actions, suits or proceedings in respect of any of the Remaining Assets. Seller agrees that the foregoing powers are coupled with an interest and are and shall be irrevocable by Seller.

2. Assignment of Assumed Contracts.

   a. Subject to the provisions of Section 2(b) hereof, Seller hereby assigns to Buyer all of Seller's right, title and interest in, to and under the Assumed Contracts.

**JPS_000079_4.10.25**

b.    This Agreement shall not constitute or effect an assignment of any right, title or interest so long as an assignment or attempted assignment of such right, title or interest would constitute a breach or violation of the agreement, instrument or other arrangement or document pursuant to which such right, title or interest is held, in any way adversely affect the rights of Seller or Buyer under such agreement, instrument or other arrangement or document or violate any applicable Law. Subject to the foregoing sentence, with respect to Assumed Contracts that by their terms or under applicable Law are not transferable or assignable by Seller or require consents to assignment and such consents have not yet been obtained, Seller shall enter into such arrangements as are reasonably requested by Buyer (at no cost to Seller) to provide Buyer all of the benefits of and under such assets, properties and rights, including Seller's undertaking to use reasonable efforts and cooperation in obtaining any required consents.

3.    Purchase Agreement Controls.  Nothing in this Agreement shall be deemed to expand or diminish the scope of the rights of any party to the Purchase Agreement that are contained in the Purchase Agreement, and the representations and warranties contained in the Purchase Agreement are incorporated by reference herein and made a part hereof as if fully set forth herein.  If there is conflict or an apparent conflict between the provisions of this Agreement and the provisions of the Purchase Agreement, the provisions of the Purchase Agreement shall control.

4.    Further Assurances.  Each party hereby covenants and agrees with the other, its successors and assigns, to do, execute, acknowledge and deliver to, or to cause to be done, executed, acknowledged and delivered to, the other, its successors and assigns, all such further acts, instruments of sale, transfer, assignment, and conveyance and all such notices, releases, acquittances, certificates of title and other documents as may be reasonably necessary for the selling, assigning, transferring, conveying, delivering, assuring and confirming to Buyer, its successors and assigns, any or all of the Remaining Assets, and to Seller the assumption by Buyer of certain liabilities described in the Purchase Agreement.

5.    Counterparts; Deliveries.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.  This Agreement, to the extent signed and delivered by means of a facsimile machine or other electronic transmission (including electronic mail of .pdf files), shall be treated in all manner and respects and for all purposes as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

6.    Successors and Assigns.  All of the terms and provisions of this Agreement shall be binding upon Seller and Buyer and their respective, its successors and assigns, and shall inure to the benefit of them and their successors and assigns.

*[Signature Page Follows]*

JPS_000080_4.10.25

IN WITNESS WHEREOF, each party has caused this BILL OF SALE AND ASSIGNMENT to be duly executed and delivered in its name and on its behalf, as of the date first above written.

*Seller:*

**JPS MOTORS, LLC**

By: _____

Name: Jason Bullock
Title: Owner./Manager

*Buyer:*

**ARCADIA MOTORS, LLC**

By: _____

Name: Thomas Martin
Title: Manager

By: _____

Name: Chad Griggs
Title: Manager

**JPS_000081_4.10.25**

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**
333 TEXAS STREET, 1400 REGIONS TOWER
SHREVEPORT, LOUISIANA 71101
TELEPHONE: (318) 227-3500
FACSIMILE: (318) 227-3980

Stephen J. Paine

Direct: 318-227-3959

Admitted in Louisiana, Alabama and
Colorado
Certified Public Accountant

Mailing address

Post Office Box 1764
Shreveport, LA 71166-1764

stephenpaine@arklatexlaw.com

October 30, 2023

To Whom It May Concern:

I, Stephen J. Paine, at Ayres, Shelton, Williams, Benson & Paine, LLC, represent Mr. Thomas G. Martin, and Arcadia Motors, LLC ("**Arcadia Motors**"), with Arcadia Motors (dba Arcadia Ford) now owning the Ford dealership in Arcadia, Louisiana, 224 Gap Farms Road, Arcadia, Louisiana 71001.

I hereby confirm the following is a true and accurate summary of the ownership structure of the Ford dealership in Arcadia, Louisiana (aka Arcadia Motors dba Arcadia Ford):

| Name | Ownership % | Title |
|------|-------------|-------|
| Mr. Thomas G. Martin | 83.0% | Manager/Member |
| Mr. Chad Griggs | 17.0% | Manager/Member |
| Mr. Chris Blachford | 0% | Manager |

Consent for the above summary of the ownership structure is consented to by the owners of Arcadia Motors below:

Thomas G. Martin
Date: 10/30/23

Chad Griggs
Date: 10/30/23

If you have any questions regarding the contents of this letter, please feel free to contact me directly at your convenience.

Regards,

/s/ Stephen J. Paine
Stephen J. Paine

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**
333 TEXAS STREET, 1400 REGIONS TOWER
SHREVEPORT, LOUISIANA 71101
TELEPHONE: (318) 227-3500
FACSIMILE: (318) 227-3980

Mailing address:

Post Office Box 1764
Shreveport, LA 71166-1764

stephenpaine@arklatexlaw.com

Stephen J. Paine

Direct: 318-227-3959

Admitted in Louisiana, Alabama and
Colorado
Certified Public Accountant

October 30, 2023

To Whom It May Concern:

I, Stephen J. Paine, at Ayres, Shelton, Williams, Benson & Paine, LLC, represent Mr. Thomas G. Martin, and Arcadia Motors, LLC ("**Arcadia Motors**"), with Arcadia Motors (dba Arcadia Ford) now owning the Ford dealership in Arcadia, Louisiana, 224 Gap Farms Road, Arcadia, Louisiana 71001.

I hereby confirm the following is a true and accurate summary of the ownership structure of the Ford dealership in Arcadia, Louisiana (aka Arcadia Motors dba Arcadia Ford):

| Name | Ownership % | Title |
|------|------------|-------|
| Mr. Thomas G. Martin | 83.0% | Manager/Member |
| Mr. Chad Griggs | 17.0% | Manager/Member |
| Mr. Chris Blachford | 0% | Manager |

Consent for the above summary of the ownership structure is consented to by the owners of Arcadia Motors below:

Thomas G. Martin
Date: 10/30/23

Chad Griggs
Date: 10/30/23

If you have any questions regarding the contents of this letter, please feel free to contact me directly at your convenience.

Regards,

/s/ Stephen J. Paine
Stephen J. Paine

| | |
|---|---|
| **From:** | Tommy Martin <tommyswhsl@yahoo.com> |
| **Sent:** | Wednesday, April 9, 2025 11:45 AM |
| **To:** | Anne Wilkes |
| **Subject:** | Fw: JPS Conversation Recap 11.30.2023 |
| **Attachments:** | Letter of Credit - blank.docx |

—— Forwarded Message ——
**From:** Holcombe, Jazmin (J.) <jholco15@ford.com>
**To:** chad griggs <highbidder85@gmail.com>; Monica Wells <monica@claiborneautomotivegroup.com>; Blachford, Chris <c.blachford@outlook.com>; tommyswhsl@yahoo.com <tommyswhsl@yahoo.com>; Moore, Mickey (M.W.) <mmoor258@ford.com>
**Sent:** Thursday, November 30, 2023 at 04:06:22 PM CST
**Subject:** JPS Conversation Recap 11.30.2023

Good Afternoon Everyone,

It was a pleasure meeting you all this afternoon. I wanted to provide a recap of what we discussed:

- Aggressive S&P forecast – S&P to be revised – I RECEIVED THE UPDATED AND WILL REVIEW WITH THE REGION
  - Acquired state contracts for enterprise
    - Consider adding fleet team to determine inventory options
  - Plan to buy wholesale inventory from other Dealers
- Negative Goodwill is due to purchase price being less than the balance sheet net worth
- The deal is confirmed as stock purchase

I did review my documents and I have the EFT Authorization form, lease, and Attorney Letter, but I don't have the voided check.

I still need:

- Voided check
- Verification of Funds

I will need equity and or debt (1:1 ratio) reflecting the Dealer Investment Required ($1,427,904) + additional capital per stock worksheet ($287,385) for a total of **$1,715,289**

The below chart shows acceptable sources for equity and debt

# Investment Fund Verification

| Equity |
|---|

| Acceptable Investments | Guidelines | Verification |
|---|---|---|
| **Cash** | The Standard<br>No encumbrances either direct or indirect | Ultimate source not just proof of deposit<br><br>3 months of bank statements<br><br>Stock sales certificates<br><br>House/business bill of sale |
| **Gifts** | Exception to the standard<br>Gift from individual | Letter from individual granting gift<br>Fund verification for individual making gift i.e., bank statements |
| **Used Vehicles** | Value not to exceed OIR guide requirements for consideration of capitalization | Title to vehicles with values recapped and verified by Blue Book |

## Debt

| | | |
|---|---|---|
| **Capital Loans** | Must be for a fixed term of at least 5 years<br><br>Must have reasonable interest rate | Letter from lending institution to include term, interest rate, and condition of loan |
| **Personal Bridge Loans** | Used only for unusual or compelling reasons<br><br>Short term loan to cover equity (home, business) portion that is for sale & intended to be invested in business within reasonable time | Proof of intention to sell asset<br><br>- Real estate listing<br><br>- Real Estate sales contract<br><br>- Business sale contract<br><br>- Be aware of cash flows |
| **Officer and Owner Notes** | Not a substitute for equity capital | Subordination letter required stating; "will not remove capital in excess of note payback requirements if it causes dealership to fall below guide |

## Equity or Debt (depending on circumstances)

| | | |
|---|---|---|
| **Money from Other Business Owned** | Sale of business<br>Excess funds from other company provided<br><br>Money must be loaned to dealership corporation or distributed to prospect as | Proof of Sale/ Bill of Sale<br><br>Document showing that business has sufficient excess funds (Financial Statement) |

2

JPS_000093_4.10.25

| | | |
|---|---|---|
| | taxable income for investment in dealership | Proof of how funds are coming in from other company |
| | Ownership in dealer corporation by another operating entity is not allowed | - Loan (terms, interest, etc.) |
| | Business owned | - Profit distribution/bonus (taxes paid) |
| **Personally Borrowed Funds** | Not preferred as they may be indirect liability of dealership entity | W-2/tax return to verify income |
| | | Personal asset statement |
| | Accepted on an case by case basis if borrower has sufficient income/collateral outside dealership to cover loan repayment | Financial Statement from other business owned |

### Unacceptable Investments

| | | |
|---|---|---|
| **Lines of Credit** | Unacceptable as a substitute for a long term loan and as source of meeting OIR | Unlike long term loans, these lines can be terminated at any time by the finance source |
| | - Used vehicle credit line | |
| | - Revolving credit | They are, however, acceptable and a good idea for Dealers to secure at start up after our capitalization requirements are met |
| | - Credit cards | |
| **Balloon Notes** | Loan amortized over a period of time which is longer than the repayment schedule | |

- Completed letter of credit (blank form attached)

Again, it was great speaking with you all. Please let me know if you have any questions.

Best Wishes,

# Jazmin Holcombe

**Retail Network Specialist**

**Ford Motor Company**

Jholco1$@ford.com

JPS_000095_4.10.25

**DEALER SOLUTIONS USA INC.**
**(O/A DEALER SOLUTIONS MERGERS & ACQUISITIONS)**

**EXCLUSIVE FINDER'S FEE AGREEMENT**

THIS EXCLUSIVE FINDER'S FEE AGREEMENT (the "Agreement") is executed and effective as of the date last signed below (the "Effective Date"), by and between Dealer Solutions USA Inc. ("DSMA") and the undersigned motor vehicle dealer ("Dealer"). DSMA and Dealer may be referred to collectively as the Parties.

**RECITALS**

A. DSMA is in the business of earning fees by facilitating the introduction of and identifying companies and individuals that might be interested in acquiring automotive businesses such as the business of the Dealer;

B. Dealer owns and operates one or more motor vehicle dealerships identified below (the "Dealership(s)") and is primarily engaged in the business of selling and servicing motor vehicles;

C. The Parties wish to establish the terms upon which DSMA will be compensated for performing and providing the Services described herein to and for the benefit of Dealer;

**NOW, THEREFORE** in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt, adequacy, and sufficiency of which are hereby acknowledged by the Parties, the Parties hereto agree as follows:

1. <u>Definitions</u>. In this Agreement:

   a. **"Closing Date"** means the effective date on which the Transaction officially closes.

   b. **"Manufacturer"** means one or more line-make motor vehicle manufacturers, distributors, or importers with whom Dealer is party to any franchise agreement, sales and service agreement, dealer agreement, or other agreement authorizing Dealer to sell new motor vehicles of such line-make.

   c. **"Prospect"** means any party, whether in the public or private sector, which is identified by DSMA as a potential purchaser, including its related companies and or persons, as well as the affiliates and associates of such related companies.

   d. **"Success Fee"** means the amount that Dealer Agrees to pay to DSMA upon the successful completion of a Transaction with a Prospect, the calculation of which is set forth in Schedule A.

   e. **"Transaction"** means the sale of all or substantially all of the Dealership assets, a sale of stock or other ownership interests in Dealer, a merger or business combination, a corporate restructuring or reorganization that may include the formation of a new entity, a partnership or joint venture, or such similar transaction, or any combination of the aforementioned.

   f. **"Real Estate Transaction Value"** is the dollar amount allocated to the Real Estate in a Transaction.

2. <u>DSMA's Services</u>. Dealer hereby engages DSMA and grants DSMA the exclusive right to identify and introduce to the Dealer one or more Prospects and to negotiate on behalf of the Dealer the terms and conditions of a Transaction (the "Services"). The exclusive rights granted by Dealer to DSMA under this Agreement shall commence on the Effective Date of this Agreement and shall continue for a period of twelve months thereafter (the "Term"). The Term will automatically renew for unlimited and consecutive one (1) year periods unless terminated in writing by either Party thirty (30) days prior to such renewal, which renewal period will be considered part of the Term for all purposes under this Agreement. During the Term of this Agreement, Dealer may be directly contacted by, or Dealer may otherwise identify, one or more persons who may be prospectively interested in pursuing a Transaction. Dealer agrees to notify DSMA

*Fa*

INITIALS: DSMA___ DEALER____

within twenty-four (24) hours of such contact or identification so that DSMA may contact or otherwise vet such persons as a Prospect.

3. <u>Success Fee</u>. As compensation for services rendered under this Agreement, Dealer agrees to pay to DSMA the Success Fee as an earned and nonrefundable fee, in the amount as set out in **Schedule A**, payable to DSMA on the Closing Date of a Transaction, as follows.

    a. <u>Transaction Completed During Term</u>. The Success Fee shall be payable to DSMA in the event a Transaction is completed during the Term of this Agreement, regardless of whether the purchaser is procured by DSMA, dealer, or another person.

    b. <u>Transaction Completed After Term</u>. The Success Fee shall also be payable to DSMA in the event the Dealer, within eighteen (18) months after the expiration or termination of this Agreement, completes a Transaction with a Prospect that was either identified by DSMA or was introduced to Dealer by a Manufacturer or Distributor where such Manufacturer or Distributor was made aware of Dealer's interest in a Transaction during the Term of this Agreement.

    c. <u>Manufacturer's or Distributor's Right of First Refusal</u>. The Success Fee shall also be payable to DSMA in the event a Manufacturer or Distributor, or any assignee of the Manufacturer or Distributor, exercises any right of first refusal with respect to the Transaction.

DSMA shall provide the Dealer with a copy of DSMA's invoice containing the Success Fee due at time of Closing. If the Dealer does not object in a writing communicated to DSMA within five (5) business days upon receipt of the invoice, then this Agreement shall serve as sufficient authorization and direction by the Dealer to authorize and direct its counsel at time of Closing to pay DSMA's Success Fees as set out in the invoice from the proceeds of the sale prior to any payment to the Dealer. In the event the Dealer objects within the five (5) business days to the Success Fees set out in the invoice then the Parties shall resolve the dispute pursuant to the terms of this Agreement. Dealer agrees to pay twelve percent (12%) per annum or, if lower, the maximum amount permitted under applicable law for any past due amount from time of Closing.

Notwithstanding anything to the contrary in this Agreement and for the sake of clarity, the decision on whether to effectuate a Transaction shall be made in the sole discretion of the Dealer.

If, at any time during the Term of this Agreement or the eighteen (18) months following its termination, any Related Parties to the Dealer concludes a transaction involving the sale of all or substantially all of the Related Party's assets, shares or securities (or any combination thereof) to a Prospect or any entity related to a Prospect, or such similar transaction, then a Success Fee shall be payable to DSMA, which fee shall be calculated on the same basis as if under Schedule A of this Agreement. For added clarity, Related Parties means individuals or entities associated with the Dealer. This incorporates both direct and indirect shareholders of the Dealer. In addition, it extends to companies owned or operated by these shareholders.

4. <u>Transaction Abandonment Fee</u>. In the event Dealer executes or countersigns an asset purchase agreement, membership interest purchase agreement, or any other written document that evidences an anticipated Transaction that, if completed, would result in a Success Fee being paid to DSMA and all conditions of the APA (including OEM Approval) have been met, but Dealer subsequently elects to abandon, withdraw from, rescind or otherwise avoid that Transaction, Dealer shall pay to DSMA a fee equal to fifty percent (50%) of the Success Fee that otherwise would have been payable to DSMA had the Transaction been completed based upon the terms of such written document (the "Transaction Abandonment Fee"). The Transaction Abandonment Fee shall be payable by wire transfer within three (3) days of the date of Dealer's abandonment, withdrawal, rescission or avoidance of the Transaction.

~~5. Hard Costs and Expenses. Dealer agrees to reimburse DSMA for all costs and expenses incurred for travel, parking, meals and accommodations that were reasonably incurred in the process of providing~~

INITIALS DSMA___ DEALER:

the Services (the "Costs"); *provided, however,* that any single item of Costs greater than two hundred fifty and 00/100 ($250.00) must be approved in writing by Dealer prior to being incurred. Payments due to DSMA for Costs shall by paid within ten (10) days of Dealer being provided with receipts for such Costs. Dealer's reimbursement of DSMA for Costs is not contingent upon the completion of a Transaction and Costs paid by Dealer shall not reduce the amount of any Service Fee due and payable to DSMA.

6. <u>Termination of Agreement</u>. Prior to the expiration of this Agreement, either party may terminate this Agreement at any time by providing at least thirty (30) days written notice. Any termination of this Agreement shall not affect or prejudice any rights and obligations accrued under this agreement, including, but not limited to, the rights and obligations related to the payment of the Success Fee, the Transaction Abandonment Fee, and the Costs.

7. <u>Nature of Relationship</u>. The relationship between the parties shall at times be solely that of an independent contractor. Dealer acknowledges that nothing in this Agreement or in the nature of DSMA's services will be deemed to create an advisory, fiduciary, or agency relationship or a partnership or joint venture between DSMA and Dealer. Dealer also acknowledges that DSMA is not offering investment advice, tax, accounting, or legal advice to any party, and that this Agreement is not intended to effectuate the buying, selling, or trading of securities.

8. <u>Non-Circumvention</u>. Dealer agrees and acknowledges that DSMA's business involves, among other activities, introducing, participating, effectuating, and consummating transactions between their respective contacts. In consideration of the foregoing, Dealer agrees that it shall not, directly or indirectly, interfere with, circumvent, attempt to circumvent, avoid, or bypass the intent of this Agreement or otherwise obviate or interfere with the DSMA's relationships and contacts for the purpose of gaining any benefit, whether such benefit is monetary or otherwise. The Parties also agree not to make use of any third party to circumvent the intent of this Agreement.

9. <u>Information Provided to DSMA</u>.

    a. <u>Accuracy of Information</u>. Dealer represents and warrants that, in connection with the performance this Agreement, any and all information provided by or on behalf of Dealer to DSMA or to any Prospect (whether written or oral) will not contain any untrue or misleading statements or omissions. Dealer acknowledges that DSMA will be relying on the accuracy and completeness of all information furnished by Dealer without independent verification and DSMA will not in any respect be responsible for the truth, accuracy, or completeness of such information.

    b. <u>Confidential Information Defined</u>. As used in this Agreement, the term "Confidential Information" means any and all proprietary information (including, without limitation, confidential financial information and projections, business plans, internal policies and procedures, and customer data) that Dealer furnishes to DSMA (directly or through any of Dealer's agents or representatives) in connection with DSMA's performance under this Agreement; provided, however, that the term "Confidential Information" does not include information which (i) is or becomes generally available to the public other than as a result of a disclosure by DSMA, (ii) is or becomes available to DSMA on a non-confidential basis, provided that such source is not prohibited to its knowledge from disclosing such information to DSMA by a contractual or fiduciary obligation to Dealer, (iii) is or becomes independently developed by DSMA without the use of Dealer's Confidential Information; or (iv) is or was made available by Dealer to a third party without similar restrictions.

    c. <u>Use of Confidential Information</u>. DSMA agrees not to use the Confidential Information for any purpose other than the exclusive purpose of performing its obligations under this Agreement and to generate Collected Data as provided in Section 9.f below.

    d. <u>Non-Disclosure</u>. DSMA shall keep confidential and shall not disclose to any third parties Dealer's Confidential Information other than as necessary or appropriate to perform its obligations under this Agreement. Dealer acknowledges that DSMA may from time to time engage the services of independent contractor(s) to assist DSMA in performing the

INITIALS: DSMA___ DEALER:

Services. To the extent DSMA discloses Dealer's Confidential Information to any Prospect, independent contractor, or otherwise in furtherance of this Agreement, DSMA shall obtain from such entity or individual prior to such disclosure a fully executed Non-Disclosure Agreement acceptable to Dealer.

e. <u>Required Disclosure</u>. In the event that DSMA receives a request (by deposition, interrogatory, request for documents, subpoena, civil investigative demand, or similar process) to disclose any part of the Confidential Information, DSMA agrees to (i) promptly notify Dealer of such request, and (ii) assist the Dealer, at Dealer's expense, in seeking a protective order or other appropriate remedy to prevent disclosure. In the event that such protective order or other remedy is not obtained, or Dealer waives compliance with this section, (a) DSMA may disclose to any tribunal only that portion of the Confidential Information which DSMA is advised by counsel is legally required to be disclosed, and (b) such disclosure shall be deemed permitted hereunder.

f. <u>Collected Data</u>. DSMA shall be permitted to collect, anonymize, and aggregate statistical and commercial information that Dealer provides to DSMA or that DSMA may gather in connection with this Agreement, the Services, and/or the Transaction (the anonymized and aggregated information hereinafter known as "Collected Data"). Collected Data shall be owned by DSMA and shall not be considered the Confidential Information of Dealer. DSMA shall be permitted to provide the Collected Data to certain of its affiliates, which affiliates shall be permitted to use such information for commercial purposes. For clarity, Collected Data will not include any personal information of a consumer, will never identify Dealer or Dealer's business operations, and will only be used on a de-identified and aggregated basis.

g. <u>Return of Documents and Survival</u>. In the event this Agreement expires, is terminated, or a Transaction is completed, DSMA will promptly return to Dealer all written Confidential Information supplied pursuant to this Agreement, DSMA will destroy all electronic copies of such Confidential Information, and DSMA will not retain any copies of such written or electronic materials.

10. <u>No Assignment</u>. This Agreement is personal to each of the Parties. Except as provided below, no Party may assign or delegate any rights or obligations hereunder without first obtaining the written consent of the other Party hereto; provided, however, that DSMA may assign this Agreement to any successor (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of DSMA.

11. <u>Post-Closing Promotion</u>. Notwithstanding anything in this Agreement to the contrary, after completion of a successful Transaction, Dealer grants DSMA the right and permission to promote the successful Transaction, which may include the name of the Dealership(s) and the names of the purchaser and seller in the Transaction. Such promotion may include, but is not limited to, DSMA's website, social media, email and direct mail pieces, and other electronic and print marketing material.

12. <u>Relationship to Parties</u>. Dealer agrees that DSMA is not liable for any acts or omissions of a Prospect and DSMA makes no representations or warranties on behalf of or in relation to a Prospect. Dealer agrees that it will indemnify and hold DSMA harmless from any liability, damages, costs or expenses resulting from any acts or omissions of a Prospect. No exclusivity is intended in the introduction of a Prospect to Dealer and Dealer acknowledges and agrees that DSMA may introduce any Prospect to other parties with whom DSMA has a business relationship. While the interests of Dealer and DSMA are aligned in that both seek to obtain the greatest possible sale price, Dealer acknowledges that DSMA may represent other dealership sellers and acquirers. Dealer acknowledges and agrees that DSMA has no obligation to disclose any such relationships to Dealer. However, in the unlikely event that DSMA encounters any conflict of interest during the Term that could alter DSMA's interest in obtaining the greatest possible sale price (for example, by representation of a Prospect of Dealer), DSMA will promptly disclose the existence of that relationship to Dealer.

*Fa*
INITIALS: DSMA___ DEALER:

13. <u>Governing Law, Jurisdiction</u>. This Agreement will be governed in all respects by the internal laws of the State of Louisiana, without giving effect to Louisiana rules of conflict of laws. In the event of any litigation arising hereunder or in connection with the matters contemplated hereby, each party submits to the exclusive jurisdiction of courts of the State of Louisiana located in the Parish of Caddo and the United States District Court for the Western District of Louisiana (Shreveport Division). Each party hereby irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this agreement in any such court and hereby further irrevocably and unconditionally waives and agrees not to plead or claim that any such action, suit, or proceeding brought in any such court has been brought in an inconvenient forum.

14. <u>Integration and Merger</u>. This Agreement contains the entire agreement between the Parties relating to the matters described herein and supersedes any and all prior agreements, understandings, representations, and statements between the Parties, whether oral or written, and whether by a Party or such Party's legal counsel. The Parties are entering into this Agreement based solely on the representations and warranties herein and not based on or in reliance on any promises, representations, and/or warranties not found herein. No modification, waiver, amendment, discharge, or change of this Agreement shall be valid unless the same is in writing.

15. <u>Severability</u>. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal, or incapable of being enforced by any rule of law or public policy, all other terms, provisions and conditions of this Agreement shall nevertheless remain in full force and effect.

16. <u>Currency; Time</u>. Unless otherwise specified herein, all monetary amounts set forth in this Agreement are in U.S. Dollars. Time is of the essence with respect to the performance of this Agreement.

17. <u>Choice of Counsel</u>. The Parties represent that the terms of this Agreement have been read and are fully understood and voluntarily accepted and that they have relied upon the legal advice of their own attorneys, who are the attorneys of their own choice, or have been advised that they are free to seek the advice of an attorney of their choice.

18. <u>Jury Trial Waiver</u>. The parties shall and they do now waive any right to a trial by jury in any action, proceeding, or counterclaim brought by either of them against the other on any matters whatsoever arising out of, relating to, or in any way connected with this agreement or the subject matter hereof.

19. <u>Enforcement Costs</u>. In the event any Party breaches this Agreement, such Party shall pay all costs and attorney's fees incurred by the non-breaching party in connection with all actions and efforts taken to enforce this Agreement. In the event any Party initiates any litigation or any other legal proceeding arising out of, relating to, or in connection with this Agreement or the subject matter hereof, the prevailing Party shall be entitled to recover any and all reasonable costs of such action, including all reasonable attorney's fees and costs incurred.

20. <u>Authority</u>. Each person signing this Agreement represents that he or she has the power and authority to enter into this Agreement on behalf of such Party.

21. <u>Counterparts; Signatures</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. The exchange of copies of this Agreement or of signature pages by electronic transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by a combination of such means, shall constitute effective execution and delivery of this Agreement and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

INITIALS: DSMA___ DEALER_____

**Agreed to and signed by:**

| | |
|---|---|
| **DEALER SOLUTIONS USA INC.**<br>(O/A DEALER SOLUTIONS MERGERS & ACQUISITIONS)<br><br>*Farid ahmad*<br>_____<br>By: Farid Ahmad, Owner<br><br>11/25/23<br>Dated: _____ | **DEALER: TOMMY MARTIN**<br><br>*Tommy Martin*<br>_____<br>Signature<br><br>Tommy Martin<br>_____<br>Print Name and Title<br><br>**Car Giant Chevrolet GMC of Homer**<br>**o/a Car Giant of Homer Chevrolet**<br>**5136 US-79,**<br>**Homer, LA,**<br>**71040**<br><br>**JPS Ford**<br>**224 Gap Farms Rd,**<br>**Arcadia, LA,**<br>**71001**<br>_____<br>Dealership(s) Name and Address<br><br>11/25/2023<br>Dated: _____<br><br><br>**For Property Landco Consent**<br><br>Agreed and consented to:<br><br>*Tommy Martin*<br>_____<br>OWNER<br>*I/We have the authority to bind the corporations* |

DocuSign Envelope ID: 8DA2BC9A-CDEA-42AD-BB49-5291D0412DDE



**Ford Motor Company**
**Marketing, Sales & Service**

Memphis Region
65 Germantown Court
Suite 201
Cordova, TN 38018

April 23, 2024

Jason P. Bullock
JPS Ford
224 Gap Farms Road
Arcadia, LA 71001

Dear Mr. Bullock,

We are in receipt of the Bill of Sale and Assignment between Arcadia Motors, LLC and JPS Motors, LLC. Ford Motor Company appreciates the opportunity to evaluate your proposed candidate. However, at this time we are unable to grant approval for consummation of the submitted buy sell dated August 1, 2023. Ford Motor Company reviews this type of request with certain criteria by analyzing standard performance metrics. It is our standard practice to review these criteria that we refer to as the Four Cs. The guidelines for our Four Cs are as follows:

1. **Character:** Proposed Dealer candidates must exhibit ethical and honest practices. They must have sound personal and financial reputations as well as the respect of their community.

2. **Capacity:** Extensive retail automotive knowledge and experience is necessary as a Dealer candidate. Successful Dealer candidates demonstrate a history of acceptable profitability, car and truck sales performance, and parts and service operations compared with their respective manufacturer's averages.

   Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

   • 12 month rolling numbers for Dealer Reported Sales as a % Sales Expectancy for Car **AND** Truck **TOTAL**
   • The minimum standard is performance that is 100% of Sales Expectancy (State Average).

3. **Customer Satisfaction:** Ford Motor Company places a high degree of importance on customer satisfaction in evaluating our Ford Lincoln dealerships. Successful Dealer candidates must demonstrate total dedication to quality and customer service.

   Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

   • 12 month rolling numbers for Sales Net Promoter Score **AND**
   • 12 month rolling numbers for Service Net Promoter Score
   • The minimum standard is performance that is 100% of Group Average

4. **Capital:** Sufficient unencumbered capital is critical to the success of a dealership, particularly given the cash required for necessary vehicle inventory, parts inventory, and accounts receivables.

Buy-Sell Rejection Letter Template w/ NPS
GIS1: 7.06
GIS2 Classification: CONFIDENTIAL

Template Revised: 1/2/2024
Retention Requirement: C+12

**JPS_000567_4.10.25**

Successful Dealer candidates have an established history of profitability and meet or exceed our working capital requirements.

Metrics used to determine the acceptability of a prospective Dealer candidate's previous experience or performance at other dealerships (Ford, Lincoln and/or competitive makes) owned or operated are as follows:

- 100% of established Working Capital guides **AND**
- Must maintain Working Capital guides for minimum of 9 out of 12 months

We trust you can understand that, in matters of this nature, Ford Motor Company must adhere to established policies to ensure continued success for our Dealer partners. A turndown letter was mailed to you on October 26, 2023 noting that the application package was incomplete. We received additional documentation from you, including on March 7, 2024. Based upon our review, Ford Motor Company must reject your request for ownership transfer because the proposed F(ii) candidate has withdrawn, and in addition, Arcadia Motors, LLC does not meet the required benchmarks of the Capital section guidelines stated above.

As always, any proposed changes to paragraph F of the Sales and Service Agreements require Ford Motor Company's prior approval. In the future, if you would like to submit any other proposals for our review, please contact your Regional Sales Performance Manager.

If you have any questions, please do not hesitate to contact me at 214-334-2744 or your Sales Performance Manager.

Sincerely,

Greg Houston
Greg Houston
Regional Manager

Buy-Sell Rejection Letter Template w/ NPS
GIS1: 7.06
GIS2 Classification: CONFIDENTIAL

Template Revised: 1/2/2024
Retention Requirement: C+12

JPS_000568_4.10.25

25-11050 - #24  File 01/13/26  Enter 01/13/26 15:24:40  Main Document  Pg 190 of 235

**Anne Wilkes**

| | |
|---|---|
| **From:** | Tommy Martin <tommyswhsl@yahoo.com> |
| **Sent:** | Wednesday, April 9, 2025 6:28 PM |
| **To:** | Anne Wilkes |
| **Subject:** | Fw: Ford ownership letter |
| **Attachments:** | Scan06-28-2024-115216.pdf |

----- Forwarded Message -----
**From:** Tommy Martin <tommyswhsl@yahoo.com>
**To:** Moore, Mickey (M.W.) <mmoor258@ford.com>; Houston Gregory (G.A.) <ghouston@ford.com>
**Sent:** Friday, June 28, 2024 at 12:54:42 PM CDT
**Subject:** Fw: Ford ownership letter

----- Forwarded Message -----
**From:** Stephen J. Paine <stephenpaine@arklatexlaw.com>
**To:** Tommy Martin <tommyswhsl@yahoo.com>
**Sent:** Friday, June 28, 2024 at 12:53:01 PM CDT
**Subject:** RE: Ford ownership letter

Here you go.

Stephen J. Paine

Main: 318-227-3500

Direct: 318-227-3959

spaine@arklatexlaw.com

**From:** Tommy Martin <tommyswhsl@yahoo.com>
**Sent:** Friday, June 28, 2024 12:01 PM
**To:** Stephen J. Paine <stephenpaine@arklatexlaw.com>
**Subject:** Ford ownership letter

Ford has is requiring a signed copy of your letter stating ownership

Thanks

1

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**
333 TEXAS STREET, 1400 REGIONS TOWER
SHREVEPORT, LOUISIANA 71101
TELEPHONE: (318) 227-3500
FACSIMILE: (318) 227-3980

Stephen J. Paine

Direct: 318-227-3959

Admitted in Louisiana, Alabama and
Colorado
Certified Public Accountant

Mailing address:

Post Office Box 1764
Shreveport, LA 71166-1764

stephenpaine@arklatexlaw.com

June 25, 2024

Mr. Mickey Moore - mmoor258@ford.com
Mr. Gregory Houston – ghouston@ford.com
Mr. Jason Bullock – jbullock1977@gmail.com

I, Stephen J. Paine, at Ayres, Shelton, Williams, Benson & Paine, LLC, represent Mr. Thomas G. Martin, and Arcadia Motors, LLC ("**Arcadia Motors**"), with Arcadia Motors (dba JPS Ford) now owning one hundred percent of the Ford dealership in Arcadia, Louisiana, 224 Gap Farms Road, Arcadia, Louisiana 71001. This purchase was completed via asset purchase agreement August 1, 2023.

Arcadia Motors ownership is as follows:
83% Tommy Martin
17% Chad Griggs

If you have any questions regarding the contents of this letter, please feel free to contact me directly at your convenience.

Regards,

Stephen J. Paine

Cc: tommyswhsl@yahoo.com

*2208*

```
2024 SILVERADO 1500 CREW CUSTOM 2WD        GENERAL MOTORS LLC
GAZ   SUMMIT WHITE              /L4G
HOU   JET BLACK                              RENAISSANCE CENTER
ORDER NO. DDJZQT/TRE        STOCK NO.        DETROIT      MI  48243-1114
VIN 3GC PABE K3 RG221361                     VEHICLE INVOICE 10D71932171
*****************************************8069**************S
MODEL & FACTORY OPTIONS          MSRP     INV AMT  RETAIL - STOCK
CC10543 SILVERADO 1500 CREW CUSTO 45900.00 43650.90 INVOICE 01/16/24
C5U GVWR: 6,800 LBS. (3,084 KG)    N/C      N/C    SHIPPED 12/22/23
FE9 50-STATE EMISSIONS             N/C      N/C    EXP I/T 01/07/24
GU6 REAR AXLE:  3.42 RATIO         N/C      N/C    INT COM 01/18/24
G80 AUTO LOCKING REAR DIFFERENTIAL 395.00  359.45  PRC EFF 12/22/23
L3B ENGINE: TURBOMAX               N/C      N/C    KEYS Z1014 Z1014
MFC TRANSMISSION: 8-SPEED AUTO     N/C      N/C    WFP-S QTR   OPT-1
NZP 20" BRIGHT SILVER PAINTED      N/C      N/C    BANK: VERABANK N.
    ALUMINUM WHEELS                               CHG-TO    56-254
PCX CUSTOM CONVENIENCE PACKAGE     N/C      N/C
PDX CUSTOM VALUE PACKAGE           N/C      N/C    SHIP WT:  4676
R1A ALL-WEATHER FLOOR LINERS       230.00  209.30  HP:      21.1
    (DEALER INSTALLED)                            GVWR:     6800
1SZ TURBOMAX ENGINE CREDIT        1350.00- 1228.50- GAWR.FT:  3700
                                                  GAWR.RR:  3800
                                                  EMPLOY: 43566.50
                                                  SUPPLR: 45286.15
                                                  NTR: 1/2
                                                  EMPINC:  2548.09
                                                  SUPINC:   828.45




TOTAL MODEL & OPTIONS          45175.00 42991.15 ACT 237 43630.90
DESTINATION CHARGE              1995.00  1995.00 H/B 261  1355.25


TOTAL                          47170.00 44986.15 PAY 310 44986.15
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT   42667.00
*****************************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
*****************************************************************


CAR GIANT CHEVROLET GMC OF HOMER
```

```
2024 SILVERADO 3500 DRW CREW LT 4WD        GENERAL MOTORS LLC

GNO  SLATE GRAY METALLIC              /V8D
HOU  JET BLACK                             RENAISSANCE CENTER
ORDER NO. DJFRZK/TRE      STOCK NO.        DETROIT     MI  48243-1114
VIN 1GC 4YTE Y3 RF380424                   VEHICLE INVOICE 10D77085792
*************************************************3175******13*56254S

MODEL & FACTORY OPTIONS           MSRP    INV AMT  RETAIL - STOCK
CK30943 SILVERADO 3500 DRW CREW L 57800.00 54100.80 INVOICE 03/26/24
A50  FRONT BUCKET SEATS WITH CENTER 620.00   564.20 SHIPPED 03/26/24
     CONSOLE                                        EXP I/T 04/12/24
BVQ  CHROME ASSIST STEPS          795.00   723.45  INT COM 04/12/24
B59  REMOTE START PACKAGE         525.00   477.75  PRC EFF 03/25/24
       * REMOTE START                              KEYS XXXXX XXXXX
       * THEFT-DETERRENT SYSTEM                    WFP-S QTR  OPT-1
       * REAR-WINDOW DEFOGGER                      BANK: VERABANK N.
DWI  TRAILERING MIRRORS - HEATED, 530.00   482.30  CHG-TO   56-254
     POWER-ADJUSTABLE, AUTO-DIMMING
     W/ TURN INDICATORS                            SHIP WT:   8380
FE9  50-STATE EMISSIONS           N/C       N/C    HP:        52.6
GU6  REAR AXLE:  3.42 RATIO       N/C       N/C    GVWR:     14000
G9Y  GVWR: 14,000 LBS. (6,350 KG) N/C       N/C    GAWR.FT:   6000
L5P  ENG: DURAMAX 6.6L TURBO-DIESEL 9490.00 8635.90 GAWR.RR: 10400
MGM  TRANS:  ALLISON 10-SPEED AUTO N/C      N/C    EMPLOY: 68353.51
PDU  ALL STAR EDITION             2470.00  2247.70 SUPPLR: 71105.95
       * 120V INSTRUMENT PANEL &                   NTR: 1
     CARGO BED POWER OUTLETS                       EMPINC:  4210.80
       * 2ND ROW USB PORTS                         SUPINC:  1458.36
       * DUAL-ZONE CLIMATE CONTROL
       * 10-WAY POWER DRIVER SEAT
       * MANUAL TILT AND TELESCOPING
     STEERING COLUMN
       * LED FOG LAMPS
       * REAR PARK ASSIST
       * REAR CROSS TRAFFIC ALERT
       * TRAILER SIDE BLIND ZONE ALERT
       * BED VIEW CAMERA
       * TRAILERING APP
       * TRAILER CAMERA PROVISIONS
       * HD SURROUND VISION
PYW  17" PAINTED STEEL WHEELS     N/C       N/C
RIA  ALL-WEATHER FLOOR LINERS     220.00    200.20
     (DEALER INSTALLED)
SNO  HITCH PACKAGE                325.00    295.75
     (DEALER INSTALLED)
UF3  HIGH IDLE SWITCH             200.00    182.00
ZM9  HEAT PACKAGE                 400.00    364.00
       * HEATED DRIVER AND FRONT
     PASSENGER SEATS
       * HEATED STEERING WHEEL
Z6A  GOOSENECK/5TH WHEEL PACKAGE  1090.00   991.90
       * STAMPED BED HOLES W/ CAPS
       * 7-PIN TRAILER HARNESS
       * CHEVYTEC SPRAY-ON BEDLINER
1SZ  ALL STAR EDITION DISCOUNT    500.00-   455.00-

** CONTINUED ON PAGE  2 **


CAR GIANT CHEVROLET GMC OF HOMER
2024 SILVERADO 3500 DRW CREW LT 4WD        GENERAL MOTORS LLC
GNO  SLATE GRAY METALLIC          /V8D
HOU  JET BLACK                             RENAISSANCE CENTER
ORDER NO. DJFRZK/TRE      STOCK NO.        DETROIT     MI  48243-1114
```

** CONTINUED ON PAGE  2 **

VIN 1GC 4YTE Y3 RF380424

VEHICLE INVOICE 1OD77085792

*****************************************3175*****13*56254S

MODEL & FACTORY OPTIONS

MSRP    INV AMT    RETAIL ~ STOCK

** CONTINUED FROM PAGE 1 **

| | MSRP | INV AMT | | RETAIL ~ STOCK |
|---|---|---|---|---|
| TOTAL MODEL & OPTIONS | 73965.00 | 68810.95 | ACT 237 | 68587.00 |
| DESTINATION CHARGE | 1995.00 | 1995.00 | H/B 261 | 2218.95 |
| TOTAL | 75960.00 | 70805.95 | PAY 310 | 70805.95 |

MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT        67373.20

**************************************************************

INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.

**************************************************************

CAR GIANT CHEVROLET GMC OF HOMER

```
2024 SILVERADO 1500 CREW CUSTOM 4WD        GENERAL MOTORS LLC
GAZ  SUMMIT WHITE                /L4G
H0U  JET BLACK                             RENAISSANCE CENTER
ORDER NO. DJFTTN/TRE      STOCK NO.        DETROIT     MI  48243-1114
VIN 3GC PDBE K5 RG314406                   VEHICLE INVOICE 10D77209087
*******************************************1074*****13*562543
MODEL & FACTORY OPTIONS         MSRP   INV AMT  RETAIL - STOCK
CK10543 SILVERADO 1500 CREW CUSTO 49300.00  46884.30  INVOICE 03/27/24
C5W GVWR: 7,000 LBS. (3,175 KG)    N/C      N/C  SHIPPED 03/21/24
FE9 50-STATE EMISSIONS             N/C      N/C  EXP I/T 04/09/24
GU6 REAR AXLE: 3.42 RATIO          N/C      N/C  INT COM 04/09/24
G80 AUTO LOCKING REAR DIFFERENTIAL 395.00  359.45  PRC EFF 03/21/24
L3B ENGINE: TURBOMAX               N/C      N/C  KEYS XXXXX XXXXX
MFC TRANSMISSION: 8-SPEED AUTO     N/C      N/C  WFP-S QTR OPT-1
PCX CUSTOM CONVENIENCE PACKAGE     N/C      N/C  BANK: VERABANK N.
PDX CUSTOM VALUE PACKAGE           N/C      N/C  CHG-TO    56-254
QAZ ALL-TERRAIN TIRES              200.00   182.00
RD5 20" BLACK PAINTED ALUMINUM     300.00   273.00  SHIP WT: 4948
    WHEELS                                          HP:       21.1
RIA ALL-WEATHER FLOOR LINERS       230.00   209.30  GVWR:     7000
    (DEALER INSTALLED)                              GAWR.FT:  3800
1SZ TURBOMAX ENGINE CREDIT        1350.00- 1228.50- GAWR.RR:  3800
                                                    EMPLOY: 47107.37
                                                    SUPPLR: 48974.55
                                                    NTR: 1/2
                                                    EMPINC:  2791.84
                                                    SUPINC:   924.66




TOTAL MODEL & OPTIONS            49075.00  46679.55  ACT 237 47202.30
DESTINATION CHARGE                1995.00   1995.00  H/B 261  1472.25


TOTAL                            51070.00  48674.55  PAY 310 48674.55
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT       46167.00
*****************************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
*****************************************************************


CAR GIANT CHEVROLET GMC OF HOMER
```

```
2024 COLORADO 4WD ZR2 CREW CAB          GENERAL MOTORS LLC
GAZ  SUMMIT WHITE              /L4G
HV3  JET BLACK / ARTEMIS                RENAISSANCE CENTER
ORDER NO. DPBVCG/TRZ      STOCK NO.     DETROIT      MI  48243-1114
VIN 1GC PTFE K4 R1151837                VEHICLE INVOICE 10D77169307
*******************************************0664******13*56254B
MODEL & FACTORY OPTIONS       MSRP    INV AMT  RETAIL - STOCK
14H43 COLORADO 4WD ZR2 CREW CAB 46800.00  44647.20  INVOICE 03/27/24
B26 SAFETY PACKAGE:            445.00    404.95  SHIPPED 03/27/24
     * REAR CROSS TRAFFIC BRAKING                 EXP I/T 04/02/24
     * BLIND ZONE STEERING ASSIST                 INT COM 04/02/24
     * REAR PARK ASSIST                           PRC EFF 03/25/24
CWM TECHNOLOGY PACKAGE:        950.00    864.50  KEYS XXXXX XXXXX
     * HD SURROUND VISION                         WFP-S QTR  OPT-1
     * REAR PEDESTRIAN ALERT                      BANK: VERABANK N.
     * ADAPTIVE CRUISE CONTROL                    CHG-TO    56-254
FE9 50-STATE EMISSIONS         N/C       N/C
GU6 REAR AXLE 3.42 RATIO       N/C       N/C     SHIP WT:  4849
L3B ENGINE, 2.7L TURBOMAX      N/C       N/C     HP:       21.1
NFC TRANSMISSION, 8-SPEED AUTOMATIC N/C  N/C     GVWR:     6250
MM1 TRANSMISSION, 8-SPEED AUTOMATIC N/C  N/C     GAWR.FT:  3500
RIA ALL-WEATHER FLOOR LINER    225.00    204.75  GAWR.RR:  3400
    (DEALER INSTALLED)                           EMPLOY:  46813.64
RIK BLACK NAMEPLATE BADGE      195.00    177.45  SUPPLR:  48685.25
    (DEALER INSTALLED)                           NTR: 1/2
UQA AUDIO SYSTEM- PREMIUM       500.00   455.00  EMPINC:   2802.56
VK3 FRONT LICENSE PLATE MOUNT    40.00    36.40  SUPINC:    930.95


TOTAL MODEL & OPTIONS         49155.00  46790.25  ACT 237 46910.60
DESTINATION CHARGE             1595.00   1595.00  H/B 261  1474.65


TOTAL                         50750.00  48385.25  PAY 310 48385.25
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT     46021.40
**********************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
**********************************************************


CAR GIANT CHEVROLET GMC OF HOMER
```

```
2024 COLORADO 4WD Z71 CREW CAB          GENERAL MOTORS LLC
GBA  BLACK                      /L4G
HZY  JET BLACK / ADRENALINE RED         RENAISSANCE CENTER
ORDER NO. DFMKWT/TRE     STOCK NO.      DETROIT      MI  48243-1114
VIN 1GC PTDE K7 R1151142                VEHICLE INVOICE 10D77368420
*****************************************4429******13*56254S
MODEL & FACTORY OPTIONS        MSRP    INV AMT  RETAIL - STOCK
14G43 COLORADO 4WD Z71 CREW CAB 40200.00 38350.80 INVOICE 03/31/24
B26 SAFETY PACKAGE:            445.00   404.95  SHIPPED 03/31/24
    * REAR CROSS TRAFFIC BRAKING                EXP I/T 04/05/24
    * BLIND ZONE STEERING ASSIST                INT COM 04/05/24
    * REAR PARK ASSIST                          PRC EFF 03/23/24
CWM TECHNOLOGY PACKAGE:        950.00   864.50  KEYS XXXXX XXXXX
    * HD SURROUND VISION                        WFP-S QTR  OPT-1
    * REAR PEDESTRIAN ALERT                     BANK: VERABANK N.
    * ADAPTIVE CRUISE CONTROL                   CHG-TO    56-254
FE9 50-STATE EMISSIONS         N/C       N/C
GU6 REAR AXLE 3.42 RATIO       N/C       N/C    SHIP WT: 4595
KW5 220 AMP ALTERNATOR         150.00   136.50  HP:      21.1
L3B ENGINE, 2.7L TURBOMAX      N/C       N/C    GVWR:    6250
MFC TRANSMISSION, 8-SPEED AUTOMATIC N/C  N/C    GAWR.FT: 3500
MM1 TRANSMISSION, 8-SPEED AUTOMATIC N/C  N/C    GAWR.RR: 3600
PCX 271 CONVENIENCE PACKAGE II: 1625.00 1478.75 EMPLOY: 42691.02
    * EZ LIFT AND LOWER TAILGATE                SUPPLR: 44390.85
    * TAILGATE KEYED CYLINDER LOCK              NTR: 1/2
    * TILT AND TELESCOPING                      EMPINC:  2514.92
      STEERING WHEEL                            SUPINC:   815.09
    * TAILGATE, STORAGE COMPARTMENT
    * REMOTE VEHICLE START
    * 8-WAY DRIVER POWER SEAT
      ADJUSTER
    * INSIDE REARVIEW MIRROR, AUTO
      DIMMING
    * DUAL-ZONE AUTOMATIC CLIMATE
      CONTROL
    * DRIVER & FRONT PASSENGER
      HEATED SEATS
    * WIRELESS DEVICE CHARGING
    * POWER LUMBAR, DRIVER SEAT
RIA ALL-WEATHER FLOOR LINER    225.00   204.75
    (DEALER INSTALLED)
UQA AUDIO SYSTEM- PREMIUM      500.00   455.00
VK3 FRONT LICENSE PLATE MOUNT   40.00    36.40
ZL6 ADVANCED TRAILERING PACKAGE: 620.00 564.20
    * IN-VEHICLE TRAILERING APP
```

** CONTINUED ON PAGE 2 **

```
CAR GIANT CHEVROLET GMC OF HOMER
2024 COLORADO 4WD Z71 CREW CAB          GENERAL MOTORS LLC
GBA  BLACK                      /L4G
HZY  JET BLACK / ADRENALINE RED         RENAISSANCE CENTER
ORDER NO. DFMKWT/TRE     STOCK NO.      DETROIT      MI  48243-1114
```

```
************************************************4429*****13*56254S
```

MODEL & FACTORY OPTIONS          MSRP    INV AMT  RETAIL - STOCK
** CONTINUED FROM PAGE 1 **

| | | | |
|---|---|---|---|
| TOTAL MODEL & OPTIONS | 44755.00 | 42495.85 | ACT 237 42748.20 |
| DESTINATION CHARGE | 1595.00 | 1595.00 | H/B 261 1342.65 |

| | | | |
|---|---|---|---|
| TOTAL | 46350.00 | 44090.85 | PAY 310 44090.85 |

MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT      41984.40

```
*****************************************************************
```
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
```
*****************************************************************
```

CAR GIANT CHEVROLET GMC OF HOMER

```
2024 SILVERADO CREW CUSTOM TB 4WD          GENERAL MOTORS LLC
GXD  STERLING GRAY METALLIC        /V8G
H0U  JET BLACK                             RENAISSANCE CENTER
ORDER NO. DFMVD7/TRE        STOCK NO.      DETROIT      MI  48243-1114
VIN 3GC UDCE D9 RG266841                   VEHICLE INVOICE 10D74182550
*******************************************7086*****13*56254S
MODEL & FACTORY OPTIONS         MSRP    INV AMT  RETAIL - STOCK
CK10543 SILVERADO CREW CUSTOM TB 51800.00 49261.80  INVOICE 02/16/24
AAK ALL-WEATHER FLOOR LINERS    295.00   268.45  SHIPPED 02/10/24
    (DEALER INSTALLED)                            EXP I/T 02/27/24
CGN CHEVYTEC SPRAY-ON BEDLINER  545.00   495.95  INT COM 02/27/24
C5Y GVWR: 7,100 LBS. (3,221 KG) N/C      N/C     PRC EFF 02/10/24
FE9 50-STATE EMISSIONS          N/C      N/C     KEYS XXXXX XXXXX
GU5 REAR AXLE: 3.23 RATIO       N/C      N/C     WFP-S QTR  OPT-1
L84 ENGINE:  5.3L ECOTEC3 V8    1795.00  1633.45 BANK: VERABANK N.
    WITH DYNAMIC FUEL MANAGEMENT                  CHG-TO    56-254
MHT TRANSMISSION:  10-SPEED AUTO N/C     N/C
PCX CUSTOM CONVENIENCE PACKAGE  N/C      N/C     SHIP WT: 5209
RD1 18" HIGH GLOSS BLACK PAINTED N/C     N/C     HP:       45.7
    ALUMINUM WHEELS                               GVWR:     7100
RVS BLACK ASSIST STEPS          795.00   723.45  GAWR.FT:  3800
    (DEALER INSTALLED)                            GAWR.RR:  3800
                                                 EMPLOY: 52582.70
                                                 SUPPLR: 54678.10
                                                 NTR: 1/2
                                                 EMP1NC:  3165.68
                                                 SUPINC:  1070.36


TOTAL MODEL & OPTIONS           55230.00 52383.10 ACT 237 52721.20
DESTINATION CHARGE              1995.00  1995.00  H/B 261  1656.90


TOTAL                           57225.00 54378.10 PAY 310 54378.10
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT       51633.40
*******************************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
*******************************************************************


CAR GIANT CHEVROLET GMC OF HOMER
```

```
2024 SILVERADO 2500 CREW CUSTOM 4WD          GENERAL MOTORS LLC
GBA   BLACK                      /V8G
HOU   JET BLACK                              RENAISSANCE CENTER
ORDER NO. DCVZ2H/TRE        STOCK NO.        DETROIT      MI  48243-1114
VIN 2GC 4YME 73 R1194578                     VEHICLE INVOICE 1OD72259012
*******************************************4554*****13*56254S
```

| MODEL & FACTORY OPTIONS | MSRP | INV AMT | RETAIL - STOCK |
|---|---|---|---|
| CK20743 SILVERADO 2500 CREW CUSTO | 52400.00 | 49570.40 | INVOICE 01/22/24 |
| CGN CHEVYTEC SPRAY-ON BEDLINER | 545.00 | 495.95 | SHIPPED 01/22/24 |
| DWI TRAILERING MIRRORS - HEATED, | 530.00 | 482.30 | EXP I/T 02/09/24 |
| POWER-ADJUSTABLE, AUTO-DIMMING | | | INT COM 02/09/24 |
| W/ TURN INDICATORS | | | PRC EFF 01/22/24 |
| FE9 50-STATE EMISSIONS | N/C | N/C | KEYS XXXXX XXXXX |
| GT4 REAR AXLE: 3.73 RATIO | N/C | N/C | WFP-S QTR  OPT-1 |
| JGH GVWR: 10,850 LBS. (4,921 KG) | N/C | N/C | BANK: VERABANK N. |
| L8T ENGINE: 6.6L V8 GASOLINE | N/C | N/C | CHG-TO    56-254 |
| MKM TRANS: ALLISON 10-SPEED AUTO | N/C | N/C | |
| PCX CUSTOM CONVENIENCE PACKAGE | 1590.00 | 1446.90 | SHIP WT: 7052 |
| * REMOTE VEHICLE STARTER SYSTEM | | | HP:      52.7 |
| * THEFT-DETERRENT SYSTEM | | | GVWR:    10850 |
| * 120V INTERIOR AND CARGO BED | | | GAWR.FT: 4800 |
| POWER OUTLETS | | | GAWR.RR: 6600 |
| * 2ND ROW USB CHARGE PORTS | | | EMPLOY: 53778.84 |
| * REAR-WINDOW DEFOGGER | | | SUPPLR: 55924.00 |
| * 10-WAY POWER DRIVER SEAT | | | NTR: 3/4 |
| * LED CARGO AREA LIGHTING | | | EMPINC:  3238.25 |
| * EZ LIFT, POWER LOCK | | | SUPINC:  1093.09 |
| & RELEASE TAILGATE | | | |
| * TRAILER BRAKE CONTROLLER | | | |
| PQA CX SAFETY PACKAGE: | 645.00 | 586.95 | |
| * REAR PARK ASSIST | | | |
| * LANE CHANGE ALERT WITH SIDE | | | |
| BLIND ZONE ALERT | | | |
| * REAR CROSS TRAFFIC ALERT | | | |
| Q86 20" MACHINED ALUM WHEELS | N/C | N/C | |
| W/ ACCENTS & SPOKES | | | |
| RFO CREDIT - NOT EQUIPPED WITH REAR | 25.00- | 22.75- | |
| USB PORT | | | |
| RVQ BLACK TUBULAR ASSIST STEPS | 795.00 | 723.45 | |
| (DEALER INSTALLED) | | | |
| U01 LED ROOF MARKER LAMPS | 55.00 | 50.05 | |
| Z71 Z71 OFF-ROAD PACKAGE | 325.00 | 295.75 | |
| * OFF-ROAD SUSPENSION INCLUDING | | | |
| TWIN TUBE SHOCKS | | | |
| * HILL DESCENT CONTROL | | | |
| * SKID PLATES | | | |

** CONTINUED ON PAGE  2 **

```
CAR GIANT CHEVROLET GMC OF HOMER
2024 SILVERADO 2500 CREW CUSTOM 4WD          GENERAL MOTORS LLC
GBA   BLACK                      /V8G
HOU   JET BLACK                              RENAISSANCE CENTER
ORDER NO. DCVZ2H/TRE        STOCK NO.        DETROIT      MI  48243-1114
```

MODEL & FACTORY OPTIONS          MSRP    INV AMT  RETAIL - STOCK
** CONTINUED FROM PAGE 1 **

TOTAL MODEL & OPTIONS          56860.00  53629.00  ACT 237 53918.20
DESTINATION CHARGE              1995.00   1995.00  H/B 261  1705.80


TOTAL                          58855.00  55624.00  PAY 310 55624.00
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT       52817.80
*****************************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
*****************************************************************


CAR GIANT CHEVROLET GMC OF HOMER

```
2024 SILVERADO 1500 CREW LT 4WD          GENERAL MOTORS LLC
GNT  RADIANT RED TINTCOAT          /V8G
HVC  GIDEON / VERY DARK ATMOSPHERE       RENAISSANCE CENTER
ORDER NO. DFMXWP/TRE     STOCK NO.       DETROIT     MI 48243-1114
VIN 1GC UDDE D9 RZ265713                 VEHICLE INVOICE 10D74010686
*******************************************1180******13*562548
```

| MODEL & FACTORY OPTIONS | MSRP | INV AMT | RETAIL - STOCK |
|---|---|---|---|
| CK10543 SILVERADO 1500 CREW LT 4W | 53700.00 | 50531.70 | INVOICE 02/14/24 |
| AAK ALL-WEATHER FLOOR LINERS | 295.00 | 268.45 | SHIPPED 02/14/24 |
| (DEALER INSTALLED) | | | EXP I/T 02/26/24 |
| A50 FRONT BUCKET SEATS WITH CENTER | 620.00 | 564.20 | INT COM 02/26/24 |
| CONSOLE | | | PRC EFF 02/13/24 |
| CXH LEATHER PACKAGE WITH | 985.00 | 896.35 | KEYS XXXXX XXXXX |
| REAR 60/40 FOLDING BENCH | | | WFP-S QTR  OPT-1 |
| SEAT WITH SEATBACK AND | | | BANK: VERABANK N. |
| UNDERSEAT STORAGE | | | CRG-TO    56-254 |
| C5Y GVWR: 7,100 LBS. (3,221 KG) | N/C | N/C | |
| FE9 50-STATE EMISSIONS | N/C | N/C | SHIP WT: 5166 |
| GNT RADIANT RED TINTCOAT | 495.00 | 450.45 | HP:      45.7 |
| GU5 REAR AXLE: 3.23 RATIO | N/C | N/C | GVWR:    7100 |
| L84 ENGINE: 5.3L ECOTEC3 V8 | 1595.00 | 1451.45 | GAWR.FT: 3800 |
| WITH DYNAMIC FUEL MANAGEMENT | | | GAWR.RR: 3800 |
| MHS TRANSMISSION, 10-SPEED AUTO | N/C | N/C | EMPLOY: 58126.20 |
| PCL CONVENIENCE PACKAGE | N/C | N/C | SUPPLR: 60452.50 |
| PDD ALL STAR EDITION PLUS | 1940.00 | 1765.40 | NTR: 1/2 |
| * UNIVERSAL HOME REMOTE | | | EMPINC:  3524.69 |
| * REAR SLIDING POWER WINDOW | | | SUPINC:  1198.39 |
| * HITCH GUIDANCE W/ HITCH VIEW | | | |
| * TRAILER BRAKE CONTROLLER | | | |
| * TRAILERING APP | | | |
| * 20" ALUMINUM WHEELS W/ | | | |
| GRAZEN PAINTED POCKETS | | | |
| PDU ALL STAR EDITION | N/C | N/C | |
| PQB SAFETY PACKAGE | 1065.00 | 969.15 | |
| * HD SURROUND VISION | | | |
| * TRAILER CAMERA PROVISIONS | | | |
| * TRAILER SIDE BLIND ZONE ALERT | | | |
| * REAR CROSS TRAFFIC BRAKING | | | |
| * REAR PEDESTRIAN ALERT | | | |
| * FRONT AND REAR PARK ASSIST | | | |
| * PERIMETER LIGHTING | | | |
| QAE ALL-TERRAIN TIRES | 200.00 | 182.00 | |
| WPQ PROTECTION PACKAGE | 685.00 | 623.35 | |
| * CHEVYTEC SPRAY-ON BEDLINER | | | |
| * REAR WHEELHOUSE LINERS | | | |
| Z71 Z71 OFF-ROAD PACKAGE | 750.00 | 682.50 | |
| * TWIN TUBE SHOCKS | | | |
| * SKID PLATES | | | |
| * HILL DESCENT CONTROL | | | |
| * HEAVY-DUTY AIR FILTER | | | |
| * 2-SPEED AUTOTRAC TRANSFER | | | |
| CASE | | | |
| * INTEGRATED DUAL EXHAUST | | | |
| * Z71 BADGING | | | |
| 1SZ ALL STAR EDITION PLUS DISCOUNT | 250.00- | 227.50- | |

** CONTINUED ON PAGE  2 **

```
CAR GIANT CHEVROLET GMC OF HOMER
2024 SILVERADO 1500 CREW LT 4WD          GENERAL MOTORS LLC
GNT  RADIANT RED TINTCOAT          /V8G
HVC  GIDEON / VERY DARK ATMOSPHERE       RENAISSANCE CENTER
ORDER NO. DFMXWP/TRE     STOCK NO.       DETROIT     MI 48243-1114
```

MODEL & FACTORY OPTIONS        MSRP    INV AMT  RETAIL - STOCK
\*\* CONTINUED FROM PAGE 1 \*\*

| | MSRP | INV AMT | RETAIL - STOCK |
|---|---|---|---|
| TOTAL MODEL & OPTIONS | 62080.00 | 58157.50 | ACT 237 58290.10 |
| DESTINATION CHARGE | 1995.00 | 1995.00 | H/B 261 1862.40 |
| TOTAL | 64075.00 | 60152.50 | PAY 310 60152.50 |

MEMO: TOTAL LESS HOLDBACK AND
     APPROX WHOLESALE FINANCE CREDIT    57162.40
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CAR GIANT CHEVROLET GMC OF HOMER

```
2024 SILVERADO 2500 CREW CUSTOM 4WD      GENERAL MOTORS LLC
GXP  LAKESHORE BLUE METALLIC         /V8D
HOU  JET BLACK                           RENAISSANCE CENTER
ORDER NO. DFMN7H/TRE      STOCK NO.      DETROIT      MI  48243-1114
VIN 2GC 4YME Y2 R1209743                 VEHICLE INVOICE 10D74981383
*************************************************1834******13*56254S

MODEL & FACTORY OPTIONS        MSRP    INV AMT  RETAIL - STOCK
CK20743 SILVERADO 2500 CREW CUSTO 52400.00  49570.40  INVOICE 02/26/24
FE9 50-STATE EMISSIONS          N/C      N/C  SHIPPED 02/26/24
GU6 REAR AXLE:  3.42 RATIO      N/C      N/C  EXP I/T 03/15/24
JGL GVWR: 11,350 LBS. (5,148 KG) N/C     N/C  INT COM 03/15/24
L5P ENG: DURAMAX 6.6L TURBO-DIESEL 9490.00 8635.90  PRC EFF 02/26/24
MGM TRANS:  ALLISON 10-SPEED AUTO N/C    N/C  KEYS XXXXX XXXXX
PDX CUSTOM VALUE PACKAGE        2765.00  2516.15  WFP-S QTR  OPT-1
    * REMOTE VEHICLE STARTER SYSTEM               BANK: VERABANK N.
    * THEFT-DETERRENT SYSTEM                      CHG-TO  56-254
    * 120V INTERIOR AND CARGO BED
      POWER OUTLETS                               SHIP WT:  7797
    * 2ND ROW USB CHARGE PORTS                    HP:       52.6
    * REAR-WINDOW DEFOGGER                        GVWR:     11350
    * 10-WAY POWER DRIVER SEAT                    GAWR.FT:  5600
    * LED CARGO AREA LIGHTING                     GAWR.RR:  6600
    * EZ LIFT, POWER LOCK                         EMPLOY:   61872.74
    & RELEASE TAILGATE                            SUPPLR:   64355.15
    * TRAILER BRAKE CONTROLLER                    NTR: 3/4
    * REAR PARK ASSIST                            EMPINC:   3786.73
    * LANE CHANGE ALERT WITH SIDE                 SUPINC:   1304.33
      BLIND ZONE ALERT
    * REAR CROSS TRAFFIC ALERT
    * TRAILERING MIRRORS, HEATED
    & POWER-ADJUSTABLE, MANUAL
      MIRROR, REARVIEW AUTO-DIMMING
Q86 20" MACHINED ALUM WHEELS     N/C      N/C
    W/ ACCENTS & SPOKES
RFO CREDIT - NOT EQUIPPED WITH REAR 25.00-  22.75-
    USB PORT
SNO HITCH PACKAGE               325.00   295.75
    (DEALER INSTALLED)
UF3 HIGH IDLE SWITCH            200.00   182.00
U01 LED ROOF MARKER LAMPS        55.00    50.05
Z6A GOOSENECK/5TH WHEEL PACKAGE 1090.00  991.90
    * STAMPED BED HOLES W/ CAPS
    * 7-PIN TRAILER HARNESS
    * CHEVYTEC SPRAY-ON BEDLINER
Z71 Z71 OFF-ROAD PACKAGE        325.00   295.75
    * OFF-ROAD SUSPENSION INCLUDING
      TWIN TUBE SHOCKS
    * HILL DESCENT CONTROL
    * SKID PLATES
1SZ CUSTOM VALUE PACKAGE DISCOUNT 500.00-  455.00-


** CONTINUED ON PAGE  2 **
```

** CONTINUED ON PAGE  2 **

```
CAR GIANT CHEVROLET GMC OF HOMER
2024 SILVERADO 2500 CREW CUSTOM 4WD      GENERAL MOTORS LLC
GXP  LAKESHORE BLUE METALLIC         /V8D
HOU  JET BLACK      \                    RENAISSANCE CENTER
ORDER NO. DFMN7H/TRE      STOCK NO.      DETROIT      MI  48243-1114
```

MODEL & FACTORY OPTIONS          MSRP    INV AMT  RETAIL - STOCK
** CONTINUED FROM PAGE  1 **

TOTAL MODEL & OPTIONS          66125.00   62060.15  ACT 237 62071.40
DESTINATION CHARGE              1995.00    1995.00  H/B 261  1983.75


TOTAL                          68120.00   64055.15  PAY 310 64055.15
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT      60971.00
****************************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
****************************************************************


CAR GIANT CHEVROLET GMC OF HOMER

```
2024 SILVERADO CREW CUSTOM TB 4WD        GENERAL MOTORS LLC
GNO   SLATE GRAY METALLIC          /V8G
R0U   JET BLACK                          RENAISSANCE CENTER
ORDER NO. DFMSV2/TRE      STOCK NO.      DETROIT      MI 48243-1114
VIN 3GC UDCE DX RG247828                 VEHICLE INVOICE 10D72992042
*****************************************2356*****13*56254S
MODEL & FACTORY OPTIONS            MSRP   INV AMT  RETAIL - STOCK
CK10543 SILVERADO CREW CUSTOM TB 51800.00 49261.80 INVOICE 01/30/24
AAK ALL-WEATHER FLOOR LINERS      295.00   268.45 SHIPPED 01/24/24
    (DEALER INSTALLED)                            EXP I/T 02/09/24
C5Y GVWR: 7,100 LBS. (3,221 KG)     N/C      N/C  INT COM 02/09/24
FE9 50-STATE EMISSIONS              N/C      N/C  PRC EFF 01/24/24
GU5 REAR AXLE: 3.23 RATIO           N/C      N/C  KEYS XXXXX XXXXX
L84 ENGINE:  5.3L ECOTEC3 V8      1795.00  1633.45 WFP-S QTR  OPT-1
    WITH DYNAMIC FUEL MANAGEMENT                  BANK: VERABANK N.
MHT TRANSMISSION:  10-SPEED AUTO    N/C      N/C  CHG-TO     56-254
PCX CUSTOM CONVENIENCE PACKAGE      N/C      N/C
RD1 18" HIGH GLOSS BLACK PAINTED    N/C      N/C  SHIP WT: 5129
    ALUMINUM WHEELS                               HP:      45.7
                                                  GVWR:    7100
                                                  GAWR,FT: 3800
                                                  GAWR,RR: 3800
                                                  EMPLOY:  51412.15
                                                  SUPPLR:  53458.70
                                                  NTR: 1/2
                                                  EMPINC:  3086.35
                                                  SUPINC:  1039.80


TOTAL MODEL & OPTIONS         53890.00  51163.70 ACT 237 51542.00
DESTINATION CHARGE             1995.00   1995.00 H/B 261  1616.70


TOTAL                         55885.00  53158.70 PAY 310 53158.70
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT   50454.20
*******************************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
*******************************************************************


CAR GIANT CHEVROLET GMC OF HOMER
```

```
2024 SILVERADO 1500 CREW CUSTOM 2WD        GENERAL MOTORS LLC
GXD   STERLING GRAY METALLIC          /L4G
HOU   JET BLACK                             RENAISSANCE CENTER
ORDER NO. DDSKWJ/TRE      STOCK NO.         DETROIT      MI 48243-1114
VIN 3GC PABE K1 RG229166                    VEHICLE INVOICE 10D72541997
*************************************************4702******13*56254S
MODEL & FACTORY OPTIONS         MSRP    INV AMT  RETAIL - STOCK
CC10543 SILVERADO 1500 CREW CUSTO 45900.00  43650.90  INVOICE 01/24/24
C5U GVWR: 6,800 LBS. (3,084 KG)   N/C      N/C  SHIPPED 01/08/24
FE9 50-STATE EMISSIONS            N/C      N/C  EXP I/T 01/24/24
GU6 REAR AXLE:  3.42 RATIO        N/C      N/C  INT COM 01/26/24
L3B ENGINE: TURBOMAX              N/C      N/C  PRC EFF 01/08/24
MFC TRANSMISSION: 8-SPEED AUTO    N/C      N/C  KEYS XXXXX XXXXX
PCX CUSTOM CONVENIENCE PACKAGE    N/C      N/C  WFP-S QTR  OPT-1
PDB DARK ESSENTIALS PACKAGE      350.00  318.50  BANK: VERABANK N.
    (DEALER INSTALLED)                            CHG-TO    56-254
    * BLACK NAMEPLATES
    * BLACK TAILGATE LETTERING                   SHIP WT:  4726
PDX CUSTOM VALUE PACKAGE          N/C      N/C  HP:        21.1
RD5 20" BLACK PAINTED ALUMINUM   300.00  273.00  GVWR:      6800
    WHEELS                                       GAWR.FT:   3700
1SZ TURBOMAX ENGINE CREDIT      1350.00- 1228.50- GAWR.RR:   3800
                                                 EMPLOY: 43588.34
                                                 SUPPLR: 45308.90
                                                 NTR: 1/2
                                                 EMPINC:  2549.57
                                                 SUPINC:   829.02


TOTAL MODEL & OPTIONS           45200.00 43013.90 ACT 237 43652.90
DESTINATION CHARGE               1995.00  1995.00 H/B 261  1356.00


TOTAL                           47195.00 45008.90 PAY 310 45008.90
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT      42689.00
************************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
************************************************************


CAR GIANT CHEVROLET GMC OF HOMER
```

```
2024 SILVERADO 1500 CREW CUSTOM 2WD        GENERAL MOTORS LLC

GAZ  SUMMIT WHITE                   /L4G
H0U  JET BLACK                             RENAISSANCE CENTER
ORDER NO. DDJZQT/TRE      STOCK NO.        DETROIT      MI 48243-1114
VIN 3GC PABE K3 RG221361                   VEHICLE INVOICE 10D71932171
**********************************************8069*****13*56254S
MODEL & FACTORY OPTIONS          MSRP   INV AMT  RETAIL - STOCK
CC10543 SILVERADO 1500 CREW CUSTO 45900.00 43650.90 INVOICE 01/16/24
C5U GVWR: 6,800 LBS. (3,084 KG)    N/C     N/C   SHIPPED 12/22/23
FE9 50-STATE EMISSIONS             N/C     N/C   EXP I/T 01/07/24
GU6 REAR AXLE: 3.42 RATIO          N/C     N/C   INT COM 01/18/24
G80 AUTO LOCKING REAR DIFFERENTIAL 395.00 359.45 PRC EFF 12/22/23
L3B ENGINE: TURBOMAX               N/C     N/C   KEYS XXXXX XXXXX
MFC TRANSMISSION: 8-SPEED AUTO     N/C     N/C   WFP-S QTR OPT-1
NZP 20" BRIGHT SILVER PAINTED      N/C     N/C   BANK: VERABANK N.
    ALUMINUM WHEELS                              CHG-TO   56-254
PCX CUSTOM CONVENIENCE PACKAGE     N/C     N/C
PDX CUSTOM VALUE PACKAGE           N/C     N/C   SHIP WT: 4676
RIA ALL-WEATHER FLOOR LINERS       230.00 209.30 HP:      21.1
    (DEALER INSTALLED)                           GVWR:    6800
1SZ TURBOMAX ENGINE CREDIT        1350.00- 1228.50- GAWR.FT: 3700
                                                 GAWR.RR: 3800
                                                 EMPLOY:  43566.50
                                                 SUPPLR:  45286.15
                                                 NTR: 1/2
                                                 EMPINC:   2548.09
                                                 SUPINC:    828.45




TOTAL MODEL & OPTIONS          45175.00  42991.15 ACT 237 43630.90
DESTINATION CHARGE              1995.00   1995.00 H/B 261  1355.25



TOTAL                          47170.00  44986.15 PAY 310 44986.15
MEMO: TOTAL LESS HOLDBACK AND
      APPROX WHOLESALE FINANCE CREDIT       42667.00
*********************************************************
INVOICE DOES NOT REFLECT DEALER'S ULTIMATE COST BECAUSE OF MANUFACTURER
REBATES, ALLOWANCES, INCENTIVES, HOLDBACK, FINANCE CREDIT AND RETURN TO
DEALER OF ADVERTISING MONIES, ALL OF WHICH MAY APPLY TO VEHICLE.
*********************************************************


CAR GIANT CHEVROLET GMC OF HOMER
```

R892X@

## CERTIFICATE OF ORIGIN FOR A VEHICLE

*Ford*

DATE
**MARCH 13, 2024**

INVOICE NO.
**KA16188** 2

VEHICLE IDENTIFICATION NO.
**1FTRU8XG3RKA16188**

YEAR
**2024**

MAKE
**FORD**

BODY TYPE
**148 TRANSIT 350 HD VAN DRW**

SHIPPING WEIGHT
**5734 LBS.**

H.P.(S.A.E.)
**31.83**

G.V.W.R.
**11000 LBS**

NO. CYLS.
**6**

SERIES OR MODEL
**U8XL**

**NOMINAL TONNAGE 1     INVOICE DATE: JANUARY 02, 2024**

### CERTIFIED FOR SALE IN CALIFORNIA

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

**OWNER:**
**JPS Ford**
**224 Gap Farms Road**
**Arcadia   LA   71001**

**23X636**

It is further certified that this was the first transfer of such new motor vehicle in ordinary trade and commerce.

B61110155

| MEMO DATA | FORD MOTOR COMPANY |
|---|---|
| **FINANCE SOURCE  849853** | BY *Jonathan E Osgood* |
| **Gibsland Bank and Trus** | JONATHAN E. OSGOOD, SECRETARY          (AGENT) |
| **1820 Second Street** | |
| **Arcadia            LA** | **DEARBORN, MICHIGAN** |
| **71001** | CITY · STATE |

R892X0



# CERTIFICATE OF ORIGIN FOR A VEHICLE

**DATE** MARCH 13, 2024

**INVOICE NO.** KA16188  2

**VEHICLE IDENTIFICATION NO.** 1FTRU8XG3RKA16188

**YEAR** 2024

**MAKE** FORD

**BODY TYPE** 148 TRANSIT 350 HD VAN DRW

**SHIPPING WEIGHT** 5734 LBS.

**HP(SAE)** 31.83

**G.V.W.R.** 11000 LBS

**NO. CYLS.** 6

**SERIES OR MODEL** U8XL

**NOMINAL TONNAGE** 1

**INVOICE DATE:** JANUARY 02, 2024

### CERTIFIED FOR SALE IN CALIFORNIA

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

**NAME OF DISTRIBUTOR, DEALER, ETC.**

OWNER:
JPS Ford
224 Gap Farms Road
Arcadia   LA  71001

23X636

It is further certified that this was the first transfer of such new motor vehicle in ordinary trade and commerce.

B61110155

**MEMO DATA**
-----------------------

FINANCE SOURCE  849853

Gibsland Bank and Trus
1820 Second Street
Arcadia                LA
                  71001

**FORD MOTOR COMPANY**

BY *Jonathan E. Osgood*

JONATHAN E. OSGOOD, SECRETARY          (AGENT)

DEARBORN, MICHIGAN
CITY - STATE



MEMBER
**FDIC**

P.O. Box 180, Gibsland, Louisiana 71028-0180

*****************EXCLUDE-Email
002398 0.2680 EX 00.000

| | |
|---|---|
| Page Number | 1 of 22 |
| Account Number: | ***9853 |
| Date | 05/31/24 |

JASON PAUL BULLOCK
224 GAP FARM RD
ARCADIA LA 71001-5227

YOUR FINANCIAL SAFETY AND SECURITY IS OUR TOP PRIORITY.
Visit our website for Customer Education tips and best practices
for keeping your information secure and learn how to identiy
potential fraud.
www.gbt.bank

## STATEMENT SUMMARY AS OF 05/31/24

| Account Name | Account Number | Balance |
|---|---|---|
| GBT SMALL BUSINESS CHECKI | | 545.67- |

**GBT SMALL BUSINESS CHECKI**     **JPS MOTORS LLC**                    Acct   **1179853**

| | | | |
|---|---|---|---|
| Beginning Balance | 5/01/24 | 585.19- | |
| Deposits / Misc Credits | 42 | 2,142,055.22 | |
| Withdrawals / Misc Debits | 185 | 2,142,015.70 | |
| ** Ending Balance | 5/31/24 | 545.67- ** | |
| Service Charge | | 9.99 | |
| Minimum Balance | | 45,198- | |
| Enclosures | | 149 | |

## Deposits and Other Credits

| Date | Deposits | Activity Description | |
|---|---|---|---|
| 5/01 | 67,159.78 | DEPOSIT | |
| 5/01 | 611.15 | Rev: NSF Charge-Item Returned | |
| | | # | 1763 | 1764 |
| | | # | 100975 | 100993 |
| | | # | 101045 | 101215 |
| | | # | 101570 | 101571 |
| | | # | 102207 | 102232 |
| | | # | 102267 | 102315 |
| | | # | 102379 | 102384 |
| | | # | 102394 | 102395 |
| 5/02 | 59,573.27 | DEPOSIT | |
| 5/02 | 253.41 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC | |
| 5/02 | 43,601.70 | ARCADIA MOTO-8850 Internet Transfer Fro | |
| 5/03 | 93,106.02 | DEPOSIT | |







P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

| | |
|---|---|
| Page Number | 2 of 22 |
| Account Number: | ***9853 |
| Date: | 05/31/24 |

## Deposits and Other Credits

| Date | Deposits | Activity Description |
|---|---|---|
| 5/03 | 2,500.00 | FORD MOTOR CO/USNASA CRT 100485607 JPS MOTORS LLC |
| 5/03 | 85,330.50 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC |
| 5/06 | 908.09 | ELEMENT FT CORP/PAYMENT 0003014006 JPS MOTORS INC J |
| 5/06 | 60,972.64 | WELLS FARGO AUTO/PURCHASE JPS Motors L.L.C. |
| 5/07 | 57,978.43 | DEPOSIT |
| 5/07 | 19,325.41 | Capital One Auto/DEALERFUND 000040185 JPS FORD |
| 5/08 | 33,768.22 | DEPOSIT |
| 5/09 | 116,577.08 | DEPOSIT |
| 5/10 | 60,070.55 | DEPOSIT |
| 5/10 | 1,000.00 | FORD MOTOR CO/USNASA CRT 100485607 JPS MOTORS LLC |
| 5/14 | 2,707.24 | DEPOSIT |
| 5/15 | 41,792.80 | DEPOSIT |
| 5/16 | 89,155.66 | DEPOSIT |
| 5/16 | 16,000.00 | ACV Auctions Inc/PAYMENTS NTE*ZZZ*00013955/276\NTE*ZZZ*NA\ 955-00013955276 JPS Ford |
| 5/16 | 35,467.50 | Capital One Auto/DEALERFUND 000040185 JPS FORD |
| 5/17 | 44,204.69 | DEPOSIT |
| 5/17 | 111,235.75 | ARCADIA MOTO-8850 Internet Transfer Fro |
| 5/21 | 106.17 | ELEMENT FT CORP/PAYMENT 0003014006 JPS MOTORS INC J |
| 5/22 | 155,405.88 | DEPOSIT |
| 5/23 | 144.17 | DEPOSIT |
| 5/24 | 39,316.46 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FMCU9NA0RUA82496*24 ESCAPE \REF*IV*144E02455 \REF*IT*23636\ 144E02455F23636 JPS Ford |
| 5/24 | 51,251.92 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FT7W2BA3REE06613*24 F-SERIES SD \REF*IV*144E02454 \REF*IT*23636\ 144E02454F23636 JPS Ford |
| 5/24 | 52,040.24 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FT7W2BA8RED94796*24 F-SERIES SD \REF*IV*144E02453 \REF*IT*23636\ 144E02453F23636 JPS Ford |
| 5/24 | 53,854.68 | FORD MOTOR CO/FLOOR PLAN |



**GBT**.bank

P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Deposits and Other Credits

| Date | Deposits | Activity Description |
|---|---|---|
| | | REF*VT*1FTEW3K89RKE06661*24 F-150 \REF*IV*144E02452 \REF*IT*23636\ 144E02452F23636 JPS Ford |
| 5/24 | 77,069.40 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FMJK1K85REA66580*24 EXPEDITION \REF*IV*144E02451 \REF*IT*23636\ 144E02451F23636 JPS Ford |
| 5/24 | 77,986.70 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC |
| 5/24 | 81,804.24 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FT8W3BN6RED82305*24 F-SERIES SD \REF*IV*144E02450 \REF*IT*23636\ 144E02450F23636 JPS Ford |
| 5/24 | 89,398.96 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FT8W3DT8RED82270*24 F-SERIES SD \REF*IV*144E02449 \REF*IT*23636\ 144E02449F23636 JPS Ford |
| 5/24 | 90,494.18 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FT8W2BM3RED82506*24 F-SERIES SD \REF*IV*144E02448 \REF*IT*23636\ 144E02448F23636 JPS Ford |
| 5/28 | 82,996.10 | DEPOSIT |
| 5/29 | 50,269.35 | DEPOSIT |
| 5/30 | 58,801.01 | DEPOSIT |
| 5/30 | 47,060.70 | ARCADIA MOTO-8850 Internet Transfer Fro |
| 5/31 | 41,843.26 | DEPOSIT |
| 5/31 | 59.78 | PDS Inc Oprtng/CASH DISB FMC1507010 JPS Ford |
| 5/31 | 48,852.13 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC |

## Miscellaneous Debits

| Date | Withdrawals | Activity Description | |
|---|---|---|---|
| 5/01 | 611.15 | Overdraft Charge-Item Paid | |
| | | # 1763 | 1764 |
| | | # 100975 | 100993 |
| | | # 101045 | 101215 |
| | | # 101570 | 101571 |
| | | # 102207 | 102232 |
| | | # 102267 | 102315 |
| | | # 102379 | 102384 |
| | | # 102394 | 102395 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| 5/01 | 4,720.20 | Paragon Insuranc/Insurance A202300X75<br>JPS Ford |
| 5/01 | 179.75 | Overdraft Charge-Item Paid<br>#     1761     1762<br>#     1766     1767<br>#     102409 |
| 5/02 | 71.90 | Overdraft Charge-Item Paid |
| 5/02 | 61,271.92 | FORD MOTOR CO/FLOOR PLAN<br>REF*VT*1FTFW3L81RFA74372*24 F-150<br>\REF*IV*122E03437 \REF*IT*23636\<br>122E03437F23636 JPS Ford |
| 5/02 | 78,081.36 | FORD MOTOR CO/FLOOR PLAN<br>REF*VT*1FT8W3BT2RED67993*24 F-SERIES SD<br>\REF*IV*122E03438 \REF*IT*23636\<br>122E03438F23636 JPS Ford |
| 5/06 | 49,909.24 | FORD MOTOR CO/FLOOR PLAN<br>REF*VT*1FT7W2AA4RED76524*24 F-SERIES SD<br>\REF*IV*124E02640 \REF*IT*23636\<br>124E02640F23636 JPS Ford |
| 5/06 | 80,738.92 | FORD MOTOR CO/FLOOR PLAN<br>REF*VT*1FT8W2BN9RED65251*24 F-SERIES SD<br>\REF*IV*124E02641 \REF*IT*23636\<br>124E02641F23636 JPS Ford |
| 5/06 | 35.95 | Overdraft Charge-Item Paid<br>#     102423 |
| 5/07 | 631.24 | STATE OF LOUISIA/LA UI TAX 6470513 |
| 5/07 | 2,821.49 | FORD CREDIT/DEFT DEBIT 900485601 JPS<br>MOTORS LLC |
| 5/07 | 143.80 | Overdraft Charge-Item Paid<br>#     102380     102425<br>#     102427     102428 |
| 5/08 | 143.80 | Overdraft Charge-Item Paid<br>#     102405 |
| 5/08 | 29,035.00 | MECHANICAL BREAK/8163470900<br>M80431763535 UNKNOWN |
| 5/08 | 37,336.68 | FORD MOTOR CO/FLOOR PLAN<br>REF*VT*1FTMF1KP6RKD78244*24 F-150<br>\REF*IV*128E02609 \REF*IT*23636\<br>128E02609F23636 JPS Ford |
| 5/08 | 48,158.68 | FORD MOTOR CO/FLOOR PLAN<br>REF*VT*1FTEW1LP7RKD78238*24 F-150<br>\REF*IV*128E02610 \REF*IT*23636\<br>128E02610F23636 JPS Ford |





P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC


Account Number: ***9853
Date: 05/31/24

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| 5/09 | 179.75 | Overdraft Charge-Item Paid |
| | | # 102413 102439 |
| 5/09 | 15,101.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 5/09 | 18,768.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 5/09 | 20,478.00 | MECHANICAL BREAK/8163470900 M80433409769 UNKNOWN |
| 5/10 | 359.50 | NSF Charge-Item Returned |
| | | # 1775 1776 |
| | | # 1778 1780 |
| | | # 1781 102416 |
| | | # 102438 102441 |
| | | # 102442 102445 |
| 5/13 | 107.85 | NSF Charge-Item Returned |
| 5/13 | 179.75 | Overdraft Charge-Item Paid |
| | | # 1777 1779 |
| | | # 102209 102357 |
| | | # 102389 |
| 5/14 | 35.95 | NSF Charge-Item Returned |
| | | # 102440 |
| 5/14 | 359.50 | Overdraft Charge-Item Paid |
| | | # 102158 102229 |
| | | # 102238 102245 |
| | | # 102247 102250 |
| | | # 102399 102451 |
| | | # 102453 |
| 5/14 | 2,411.14 | ALLY INSURANCE D/COLLECT WN796908 JPS MOTORS, L.L.C. |
| 5/15 | 48.30 | CPENERGY ENTEX/ENT ACH DR CNP |
| 5/15 | 251.65 | Overdraft Charge-Item Paid |
| | | # 1783 1784 |
| | | # 1790 102429 |
| | | # 102430 |
| 5/15 | 65,443.50 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FMJU1H86REA56268*24 EXPEDITION \REF*IV*135E02068 \REF*IT*23636\ 135E02068F23636 JPS Ford |
| 5/15 | 69,906.40 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FMJK1H84REA52970*24 EXPEDITION \REF*IV*135E02069 \REF*IT*23636\ 135E02069F23636 JPS Ford |
| 5/16 | 90.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 5/16 | 359.50 | Overdraft Charge-Item Paid |
| | | # 1774 1782 |





P.O. Box 180, Gibsland, Louisiana 71028-0180

| | |
|---|---|
| Page Number | 6 of 22 |
| Account Number: | ***9853 |
| Date: | 05/31/24 |

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| | | #      1785      1787 |
| | | #      1788      1789 |
| | | #      1792     102437 |
| | | #     102448     102450 |
| 5/17 | 97,052.88 | FORD MOTOR CO/USNASA DBT 900485607 JPS MOTORS LLC |
| 5/21 | 143.80 | Overdraft Charge-Item Paid |
| | | #     101710     102471 |
| 5/21 | 323.55 | NSF Charge-Item Returned |
| 5/21 | 48,158.68 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FTEW1LP8RKD92794*24 F-150 \REF*IV*141E03166 \REF*IT*23636\ 141E03166F23636 JPS Ford |
| 5/21 | 51,251.92 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FT7W2BA3REE06613*24 F-SERIES SD \REF*IV*141E03168 \REF*IT*23636\ 141E03168F23636 JPS Ford |
| 5/22 | 35.95 | Overdraft Charge-Item Paid |
| | | #     102476 |
| 5/23 | 251.65 | Overdraft Charge-Item Paid |
| | | #     102469     102486 |
| 5/23 | 1,040.00 | DEALERSLINK/SALE JPS FORD |
| 5/23 | 1,040.00 | DEALERSLINK/SALE JPS FORD |
| 5/23 | 1,040.00 | DEALERSLINK/SALE JPS FORD |
| 5/23 | 23,335.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 5/23 | 53,854.68 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FTEW3K89RKE06661*24 F-150 \REF*IV*143E02413 \REF*IT*23636\ 143E02413F23636 JPS Ford |
| 5/24 | 516,918.03 | DEBIT MEMO |
| 5/24 | 251.65 | Overdraft Charge-Item Paid |
| | | #      1801      1802 |
| | | #      1803      1804 |
| | | #      1805     101709 |
| | | #     102485 |
| 5/28 | 215.70 | Overdraft Charge-Item Paid |
| | | #      1799     102472 |
| | | #     102473     102487 |
| 5/28 | 44,874.68 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FTEX2KP3RKE25687*24 F-150 \REF*IV*145E03078 \REF*IT*23636\ 145E03078F23636 JPS Ford |
| 5/28 | 48,158.68 | FORD MOTOR CO/FLOOR PLAN |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description | |
|---|---|---|---|
| | | REF*VT*1FTEW1LP1RKD93317*24 F-150 | |
| | | \REF*IV*145E03079 \REF*IT*23636\ | |
| | | 145E03079F23636 JPS Ford | |
| 5/29 | 323.55 | Overdraft Charge-Item Paid | |
| | | #           1809 | 101014 |
| | | #        101015 | 102071 |
| | | #        102228 | 102449 |
| | | #        102475 | 102488 |
| 5/29 | 4,720.19 | Paragon Insuranc/Insurance A2023JIOIR | |
| | | JPS Ford | |
| 5/30 | 71.90 | Overdraft Charge-Item Paid | |
| | | #        102497 | 102501 |
| 5/31 | 539.25 | NSF Charge-Item Returned | |
| | | #           1812 | 1814 |
| | | #           1816 | 1817 |
| | | #           1820 | 1822 |
| | | #           1825 | 1826 |
| | | #        101066 | 102495 |
| | | #        102507 | |
| 5/31 | 9.99 | SERVICE CHARGE | |

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|---|---|---|---|---|---|
| 5/01 | 1761 | 334.49 | 5/16 | 1785 | 1,908.38 |
| 5/01 | 1762 | 2,245.37 | 5/17 | 1786 | 613.74 |
| 5/01 | 1763 | 613.74 | 5/16 | 1787 | 1,084.45 |
| 5/01 | 1764 | 1,772.58 | 5/16 | 1788 | 1,026.93 |
| 5/06 | 1765 | 1,084.45 | 5/16 | 1789 | 1,124.27 |
| 5/01 | 1766 | 1,527.99 | 5/15 | 1790 | 1,199.22 |
| 5/01 | 1767 | 1,411.06 | 5/20 | 1791 | 499.88 |
| 5/03 | 1768 | 590.45 | 5/16 | 1792 | 1,511.28 |
| 5/03 | 1769 | 1,815.06 | 5/17 | 1793 | 144.43 |
| 5/03 | 1770 | 252.04 | 5/17 | 1794 | 374.39 |
| 5/03 | 1771 | 1,195.37 | 5/17 | 1795 | 902.13 |
| 5/06 | 1772 | 86.44 | 5/17 | 1796 | 209.41 |
| 5/03 | 1773 | 449.13 | 5/17 | 1797 | 366.58 |
| 5/16. | 1774 | 669.65 | 5/21 | 1798 | 1,198.36 |
| 5/13 | 1777* | 453.42 | 5/28 | 1799 | 560.98 |
| 5/13 | 1779* | 239.96 | 5/24 | 1801* | 130.14 |
| 5/16 | 1782* | 1,214.23 | 5/24 | 1802 | 425.23 |
| 5/15 | 1783 | 1,552.02 | 5/24 | 1803 | 1,133.75 |
| 5/15 | 1784 | 332.86 | 5/24 | 1804 | 405.99 |



STATEMENT

MEMBER
**FDIC**

P.O. Box 180, Gibsland, Louisiana 71028-0180

Page Number      8 of 22
Account Number:      ***9853
Date:      05/31/24

JPS MOTORS LLC

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|------|----------|--------|------|----------|--------|
| 5/24 | 1805 | 467.52 | 5/06 | 102397* | 850.00 |
| 5/29 | 1809* | 653.15 | 5/07 | 102398 | 14.40 |
| 5/31 | 1813* | 152.58 | 5/14 | 102399 | 1,115.25 |
| 5/01 | 100975* | 4,364.14 | 5/08 | 102405* | 2,046.72 |
| 5/01 | 100993* | 8,374.28 | 5/07 | 102406 | 175.00 |
| 5/03 | 101013* | 16.95 | 5/06 | 102407 | 1,780.20 |
| 5/29 | 101014 | 118.50 | 5/03 | 102408 | 257.28 |
| 5/29 | 101015 | 321.83 | 5/01 | 102409 | 53,874.61 |
| 5/03 | 101028* | 16.95 | 5/09 | 102413* | 4,323.00 |
| 5/01 | 101045* | 6,165.06 | 5/03 | 102414 | 1,076.92 |
| 5/01 | 101215* | 643.70 | 5/03 | 102415 | 658.62 |
| 5/01 | 101570* | 8,771.24 | 5/07 | 102417* | 80.00 |
| 5/01 | 101571 | 17,240.54 | 5/07 | 102419* | 80.00 |
| 5/24 | 101709* | 32,500.00 | 5/06 | 102423* | 76,203.80 |
| 5/21 | 101710 | 40,986.73 | 5/31 | 102424 | 93.85 |
| 5/29 | 102071* | 472.38 | 5/07 | 102425 | 204.42 |
| 5/03 | 102072 | 16.95 | 5/14 | 102426 | 25.00 |
| 5/21 | 102075* | 28.80 | 5/07 | 102427 | 17,300.00 |
| 5/14 | 102158* | 321.87 | 5/07 | 102428 | 11,125.00 |
| 5/01 | 102207* | 1,141.00 | 5/15 | 102429 | 613.74 |
| 5/03 | 102208 | 1,371.50 | 5/15 | 102430 | 1,076.92 |
| 5/13 | 102209 | 491.69 | 5/16 | 102437* | 2,590.00 |
| 5/29 | 102228* | 202.98 | 5/09 | 102439* | 1,775.00 |
| 5/14 | 102229 | 24,000.00 | 5/14 | 102443* | 40.00 |
| 5/01 | 102232* | 4,608.93 | 5/14 | 102444 | 40.00 |
| 5/14 | 102238* | 8,500.00 | 5/21 | 102446* | 221.55 |
| 5/03 | 102243* | 16.95 | 5/16 | 102448* | 30,566.00 |
| 5/14 | 102245* | 971.16 | 5/29 | 102449 | 144.49 |
| 5/14 | 102247* | 294.00 | 5/16 | 102450 | 2,150.00 |
| 5/14 | 102248 | 129.50 | 5/14 | 102451 | 1,400.29 |
| 5/14 | 102250* | 333.41 | 5/14 | 102453* | 2,050.23 |
| 5/01 | 102267* | 3,678.00 | 5/15 | 102456* | 35.95 |
| 5/01 | 102315* | 498.94 | 5/17 | 102457 | 569.88 |
| 5/21 | 102320* | 29.00 | 5/21 | 102458 | 15.24 |
| 5/13 | 102357* | 250.00 | 5/21 | 102459 | 80.00 |
| 5/03 | 102376* | 961.60 | 5/17 | 102462* | 30.00 |
| 5/06 | 102377 | 1,378.52 | 5/17 | 102463 | 319.00 |
| 5/01 | 102379* | 960.44 | 5/23 | 102469* | 15,605.42 |
| 5/07 | 102380 | 4,995.00 | 5/21 | 102471* | 23,389.50 |
| 5/01 | 102384* | 283.54 | 5/28 | 102472 | 1,193.62 |
| 5/13 | 102389* | 625.07 | 5/28 | 102473 | 30.00 |
| 5/01 | 102394* | 1,302.02 | 5/30 | 102474 | 1,813.07 |
| 5/01 | 102395 | 1,400.29 | 5/29 | 102475 | 960.44 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|---|---|---|---|---|---|
| 5/22 | 102476 | 108.22 | 5/29 | 102488 | 6,008.82 |
| 5/24 | 102485* | 47,681.82 | 5/30 | 102497* | 61,471.92 |
| 5/23 | 102486 | 132.00 | 5/30 | 102501* | 74,208.98 |
| 5/28 | 102487 | 110.37 | | | |

( * indicates a break in check number sequence)

## Fee Recap

| | Total for this period | Total year to date |
|---|---|---|
| Total Overdraft Fees | $3,810.70 | $12,762.25 |
| Total Returned Item Fees | $1,366.10 | $5,320.60 |

## Daily Balance Summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 5/01 | 59,537.32 – | 5/13 | 2,383.69 – | 5/23 | 96,298.75 – |
| 5/02 | 95,534.12 – | 5/14 | 41,703.75 – | 5/24 | 82,996.10 – |
| 5/03 | 76,706.63 | 5/15 | 140,371.51 – | 5/28 | 95,144.03 – |
| 5/06 | 73,480.16 – | 5/16 | 44,043.04 – | 5/29 | 58,801.01 – |
| 5/07 | 33,746.67 – | 5/17 | 10,814.96 | 5/30 | 90,505.17 – |
| 5/08 | 116,699.33 – | 5/20 | 10,315.08 | 5/31 | 545.67 – |
| 5/09 | 60,747.00 – | 5/21 | 155,405.88 – | | |
| 5/10 | 35.95 – | 5/22 | 144.17 – | | |



| | |
|---|---|
| 05/01/2024 $67,159.78 | 05/10/2024 $60,070.55 |
| 05/02/2024 $59,573.27 | 05/14/2024 $2,707.24 |
| 05/03/2024 $93,106.02 | 05/15/2024 $41,792.80 |
| 05/07/2024 $57,978.43 | 05/16/2024 $89,155.66 |
| 05/08/2024 $33,768.22 | 05/17/2024 $44,204.69 |
| 05/09/2024 $116,577.08 | 05/22/2024 $155,405.88 |



05/23/2024   $144.17
05/01/2024   1761   $334.49
05/28/2024   $82,996.10
05/01/2024   1762   $2,245.37
05/29/2024   $50,269.35
05/01/2024   1763   $613.74
05/30/2024   $58,801.01
05/01/2024   1764   $1,772.58
05/31/2024   $41,843.26
05/06/2024   1765   $1,084.45
05/24/2024   $516,918.03
05/01/2024   1766   $1,527.99



05/01/2024   1767   $1,411.06

05/03/2024   1773   $449.13

05/03/2024   1768   $590.45

05/16/2024   1774   $669.65

05/03/2024   1769   $1,815.06

05/13/2024   1777   $453.42

05/03/2024   1770   $252.04

05/13/2024   1779   $239.96

05/03/2024   1771   $1,195.37

05/16/2024   1782   $1,214.23

05/06/2024   1772   $86.44

05/15/2024   1783   $1,552.02



05/15/2024 1784 $332.86

05/15/2024 1790 $1,199.22

05/16/2024 1785 $1,908.38

05/20/2024 1791 $499.88

05/17/2024 1786 $613.74

05/16/2024 1792 $1,511.28

05/16/2024 1787 $1,084.45

05/17/2024 1793 $144.43

05/16/2024 1788 $1,026.93

05/17/2024 1794 $374.39

05/16/2024 1789 $1,124.27

05/17/2024 1795 $902.13



05/17/2024 1796 $209.41

05/24/2024 1803 $1,133.75

05/17/2024 1797 $366.58

05/24/2024 1804 $405.99

05/21/2024 1798 $1,198.36

05/24/2024 1805 $467.52

05/28/2024 1799 $560.98

05/29/2024 1809 $653.15

05/24/2024 1801 $130.14

05/31/2024 1813 $152.58

05/24/2024 1802 $425.23

05/01/2024 100975 $4,364.14

05/01/2024 100993 $8,374.28

05/01/2024 101215 $643.70

05/03/2024 101013 $16.95

05/01/2024 101570 $8,771.24

05/29/2024 101014 $118.50

05/01/2024 101571 $17,240.54

05/29/2024 101015 $321.83

05/24/2024 101709 $32,500.00

05/03/2024 101028 $16.95

05/21/2024 101710 $40,986.73

05/01/2024 101045 $6,165.06

05/29/2024 102071 $472.38



P.O. Box 180, Gibsland, Louisiana 71028-0180

******************EXCLUDE-Email
002397 0.4640 EX 00.000

JASON PAUL BULLOCK
224 GAP FARM RD
ARCADIA LA 71001-5227

YOUR FINANCIAL SAFETY AND SECURITY IS OUR TOP PRIORITY.
Visit our website for Customer Education tips and best practices
for keeping your information secure and learn how to identiy
potential fraud.
www.gbt.bank

## STATEMENT SUMMARY AS OF 06/30/24

| Account Name | Account Number | Balance |
|---|---|---|
| GBT SMALL BUSINESS CHECKI | | 531.29- |

**GBT SMALL BUSINESS CHECKI**　　　**JPS MOTORS LLC**　　　　Acct　1179853

| | | | |
|---|---|---|---|
| Beginning Balance | 6/01/24 | 545.67- | |
| Deposits / Misc Credits | 30 | 1,014,190.44 | |
| Withdrawals / Misc Debits | 170 | 1,014,176.06 | |
| ** Ending Balance | 6/30/24 | 531.29- | ** |
| Service Charge | | 9.99 | |
| Minimum Balance | | 7,344- | |
| Enclosures | | 136 | |

## Deposits and Other Credits

| Date | Deposits | Activity Description | |
|---|---|---|---|
| 6/03 | 54,129.62 | DEPOSIT | |
| 6/03 | 2,438.91 | WELLS FARGO AUTO/EFT AMOUNT JPS Motors, L.L.C. | |
| 6/03 | 539.25 | Rev: NSF Charge-Item Returned | |
| | | # 1812 | 1814 |
| | | # 1816 | 1817 |
| | | # 1820 | 1822 |
| | | # 1825 | 1826 |
| | | # 101066 | 102495 |
| | | # 102507 | |
| 6/04 | 46,734.44 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC | |
| 6/05 | 10,629.77 | DEPOSIT | |
| 6/06 | 25,167.05 | DEPOSIT | |
| 6/07 | 2,347.95 | DEPOSIT | |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Deposits and Other Credits

| Date | Deposits | Activity Description |
|---|---|---|
| 6/07 | .03 | ACV Auctions Inc/PAYMENTS NTE*ZZZ*00014151/350\NTE*ZZZ*NA\ 151-00014151350 JPS Ford |
| 6/10 | 1,913.62 | ALLY INSURANCE C/DISBURSE WN796908 JPS MOTORS, L.L.C. |
| 6/10 | 26,498.75 | REGIONAL ACCEPT/PROCEEDS 000001000186995 JPS FORD |
| 6/10 | 1,236.82 | ARCADIA MOTO-8850 Internet Transfer Fro |
| 6/10 | 21,993.44 | ARCADIA MOTO-8850 Internet Transfer Fro |
| 6/11 | 100,893.80 | DEPOSIT |
| 6/11 | 2,596.00 | Capital One Auto/DEALERFUND 000040185 JPS FORD |
| 6/12 | 160,734.97 | DEPOSIT |
| 6/13 | 41,773.55 | DEPOSIT |
| 6/13 | 5,824.54 | AUTO RENTALS INC/ACH PAYMNT 593177 JPS FORD |
| 6/14 | 980.13 | DEPOSIT |
| 6/17 | 12,504.50 | BARKSDALE FCU/ONLINEACCT JPS FORD |
| 6/17 | 78,190.38 | FORD CREDIT/DEFTCREDIT 100485601 JPS MOTORS LLC |
| 6/20 | 66,053.56 | DEPOSIT |
| 6/21 | 105,300.20 | DEPOSIT |
| 6/24 | 77,796.02 | DEPOSIT |
| 6/25 | 41,733.28 | REGIONAL ACCEPT/PROCEEDS 000001000189389 JPS FORD |
| 6/26 | 2,507.47 | DEPOSIT |
| 6/26 | 3,447.81 | CREDIT ACCEPTANC/ACHBATCH 300000016523517 JPS MOTORS L.L.C. (H08 |
| 6/27 | 58,496.68 | DEPOSIT |
| 6/27 | 341.78 | ELEMENT FT CORP/PAYMENT 0003014006 JPS MOTORS INC J |
| 6/28 | 61,113.45 | DEPOSIT |
| 6/28 | 272.67 | PDS Inc Oprtng/CASH DISB FMC1507010 JPS Ford |

## Miscellaneous Debits

| Date | Withdrawals | Activity Description | | |
|---|---|---|---|---|
| 6/03 | 539.25 | Overdraft Charge-Item Paid | | |
| | | # | 1812 | 1814 |
| | | # | 1816 | 1817 |
| | | # | 1820 | 1822 |
| | | # | 1825 | 1826 |



STATEMENT

MEMBER
**FDIC**



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| | | #          101066          102495 |
| | | #          102507 |
| 6/03 | 250.00 | Western Surety/debitpmt #355915491 CNA Surety |
| 6/03 | 12,903.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 6/03 | 15,807.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 6/03 | 17,448.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 6/03 | 143.80 | Overdraft Charge-Item Paid |
| | | #          1823          1824 |
| | | #          102505 |
| 6/03 | 3,304.04 | WRIGHT EXPRESS/FLEET DEBI 9100008156475 Claiborne Auto Group L |
| 6/04 | 46,481.00 | DEBIT MEMO |
| 6/04 | 179.75 | Overdraft Charge-Item Paid |
| | | #          1821          102421 |
| | | #          102508          102509 |
| 6/05 | 107.85 | Overdraft Charge-Item Paid |
| | | #          102512          102513 |
| 6/05 | 10,036.11 | BCBSLA/BCBSLA REF*BFPMTID*8007159616*INVNBR*2413800174 40\ 89311ERC0000 JPS MOTORS, L.L.C. |
| 6/06 | 35.95 | Overdraft Charge-Item Paid |
| | | #          102502 |
| 6/07 | 431.40 | Overdraft Charge-Item Paid |
| | | #          1810          1815 |
| | | #          1818          1836 |
| | | #          1838          1839 |
| | | #          1841          1843 |
| | | #          102212          102388 |
| | | #          102422 |
| 6/07 | 2,486.00 | MECHANICAL BREAK/8163470900 M80476423897 UNKNOWN |
| 6/10 | 10,776.22 | DEBIT MEMO |
| 6/10 | .03 | ACV CAPTIAL LLC/PAYMENT 74724 JPS FORD |
| 6/10 | 143.80 | Overdraft Charge-Item Paid |
| 6/10 | 19,986.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 6/10 | 25,591.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 6/10 | 26,957.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 6/10 | 28,216.00 | ACV CAPITAL LLC/PAYMENT 74724 JPS FORD |
| 6/11 | 1,756.87 | STATE OF LOUISIA/LA UI TAX 6470513 |
| 6/11 | 143.80 | Overdraft Charge-Item Paid |
| | | #          102412          102530 |
| | | #          102531 |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

| | |
|---|---|
| Page Number | 4 of 19 |
| Account Number: | ***9853 |
| Date: | 06/30/24 |

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| 6/11 | 38,746.00 | MECHANICAL BREAK/8163470900 M80479226709 UNKNOWN |
| 6/12 | 452.80 | ALLY INSURANCE D/COLLECT WN796908 JPS MOTORS, L.L.C. |
| 6/12 | 35.95 | Overdraft Charge-Item Paid |
| 6/12 | 56,957.68 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FTFW3L51RKD94935*24 F-150 \REF*IV*163E02011 \REF*IT*23636\ 163E02011F23636 JPS Ford |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS MOTORS LLC DBA JPS |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS MOTORS LLC DBA JPS |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS MOTORS LLC DBA JPS |
| 6/13 | 400.00 | EXPERTPAY/EXPERTPAY 471926518 JPS MOTORS LLC DBA JPS |
| 6/13 | 35.95 | Overdraft Charge-Item Paid #      102344 |
| 6/14 | 359.50 | Overdraft Charge-Item Paid #   1849    1850 #   1852    1854 #   1855    102498 #   102541    102543 #   102546    102547 |
| 6/17 | 62,284.23 | DEBIT MEMO |
| 6/17 | 155.71 | CPENERGY ENTEX/ENT ACH DR CNP |
| 6/18 | 9,729.09 | DEBIT MEMO |
| 6/18 | 503.30 | Overdraft Charge-Item Paid #   1845    1858 #   101031    102153 #   102404    102483 #   102484    102499 #   102500    102528 #   102542    102548 #   102549    102550 |
| 6/20 | 35.95 | NSF Charge-Item Returned |
| 6/20 | 143.80 | Overdraft Charge-Item Paid #   101139    102506 #   102556 |
| 6/20 | 52,259.04 | FORD MOTOR CO/FLOOR PLAN REF*VT*1FT8W3DA1REE08075*24 F-SERIES SD \REF*IV*170E03160 \REF*IT*23636\ |



P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

## Miscellaneous Debits

| Date | Withdrawals | Activity Description |
|---|---|---|
| | | 170E03160F23636 JPS Ford |
| 6/21 | 5,041.51 | WRIGHT EXPRESS/FLEET DEBI 9100008156475 |
| | | Claiborne Auto Group L |
| 6/21 | 71.90 | Overdraft Charge-Item Paid |
| 6/21 | 52,259.04 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FT8W3DAXREE04803*24 F-SERIES SD |
| | | \REF*IV*172E05704 \REF*IT*23636\ |
| | | 172E05704F23636 JPS Ford |
| 6/21 | 60,699.36 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FTFW3L59RKD07377*24 F-150 |
| | | \REF*IV*172E05705 \REF*IT*23636\ |
| | | 172E05705F23636 JPS Ford |
| 6/24 | 215.70 | Overdraft Charge-Item Paid |

| | # | 1864 | 1865 |
|---|---|---|---|
| | # | 102545 | 102555 |
| | # | 102576 | 102579 |

| Date | Withdrawals | Activity Description |
|---|---|---|
| 6/25 | 7,804.15 | DEBIT MEMO |
| 6/25 | 71.90 | Overdraft Charge-Item Paid |

| | # | 102403 | 102516 |
|---|---|---|---|

| Date | Withdrawals | Activity Description |
|---|---|---|
| 6/26 | 35.95 | Overdraft Charge-Item Paid |
| 6/26 | 58,496.68 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FTFW3L50RKE14382*24 F-150 |
| | | \REF*IV*177E01947 \REF*IT*23636\ |
| | | 177E01947F23636 JPS Ford |
| 6/27 | 71.90 | Overdraft Charge-Item Paid |

| | # | 102532 | |
|---|---|---|---|

| Date | Withdrawals | Activity Description |
|---|---|---|
| 6/27 | 56,399.88 | FORD MOTOR CO/FLOOR PLAN |
| | | REF*VT*1FTRU8XG3RKA16188*24 TRANSIT NA |
| | | \REF*IV*178E02354 \REF*IT*23636\ |
| | | 178E02354F23636 JPS Ford |
| 6/28 | 503.30 | NSF Charge-Item Returned |

| | # | 1872 | 1873 |
|---|---|---|---|
| | # | 1875 | 1880 |
| | # | 1881 | 1882 |
| | # | 1883 | 101011 |
| | # | 102217 | 102349 |
| | # | 102350 | 102435 |
| | # | 102563 | 102591 |

| Date | Withdrawals | Activity Description |
|---|---|---|
| 6/28 | 9.99 | SERVICE CHARGE |





P.O. Box 180, Gibsland, Louisiana 71028-0180

Page Number     6 of 19
Account Number:     ***9853
Date:     06/30/24

JPS MOTORS LLC

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|------|----------|--------|------|----------|--------|
| 6/07 | 1810 | 898.24 | 6/21 | 1866 | 413.29 |
| 6/03 | 1811 | 456.42 | 6/21 | 1868* | 309.73 |
| 6/03 | 1812 | 1,261.45 | 6/21 | 1869 | 459.69 |
| 6/03 | 1814* | 444.20 | 6/21 | 1871* | 1,023.42 |
| 6/07 | 1815 | 961.15 | 6/18 | 101031* | 1,144.00 |
| 6/03 | 1816 | 497.49 | 6/21 | 101032 | 300.00 |
| 6/03 | 1817 | 463.36 | 6/03 | 101066* | 557.69 |
| 6/07 | 1818 | 281.08 | 6/20 | 101139* | 462.37 |
| 6/03 | 1819 | 1,330.96 | 6/18 | 102153* | 125.00 |
| 6/03 | 1820 | 357.86 | 6/07 | 102212* | 1,248.14 |
| 6/04 | 1821 | 1,908.38 | 6/21 | 102325* | 347.85 |
| 6/03 | 1822 | 613.73 | 6/21 | 102326 | 1,765.10 |
| 6/03 | 1823 | 1,084.58 | 6/13 | 102344* | 944.18 |
| 6/03 | 1824 | 1,026.93 | 6/07 | 102388* | 4,561.35 |
| 6/03 | 1825 | 1,048.43 | 6/10 | 102400* | 2,535.87 |
| 6/03 | 1826 | 202.61 | 6/25 | 102403* | 2,203.75 |
| 6/10 | 1835* | 449.86 | 6/18 | 102404 | 170.72 |
| 6/07 | 1836 | 938.68 | 6/11 | 102412* | 13,476.90 |
| 6/07 | 1838* | 306.56 | 6/26 | 102420* | 981.64 |
| 6/07 | 1839 | 1,393.90 | 6/04 | 102421 | 1,216.83 |
| 6/10 | 1840 | 356.69 | 6/07 | 102422 | 2,550.47 |
| 6/07 | 1841 | 415.89 | 6/10 | 102452* | 1,002.53 |
| 6/07 | 1843* | 356.77 | 6/26 | 102461* | 565.00 |
| 6/10 | 1844 | 1,849.15 | 6/27 | 102467* | 250.00 |
| 6/18 | 1845 | 189.45 | 6/21 | 102468 | 862.10 |
| 6/11 | 1847* | 362.00 | 6/21 | 102480* | 1,119.14 |
| 6/10 | 1848 | 5,038.52 | 6/18 | 102483* | 125.00 |
| 6/14 | 1849 | 431.62 | 6/18 | 102484 | 50.24 |
| 6/14 | 1850 | 358.58 | 6/03 | 102495* | 350.00 |
| 6/17 | 1851 | 439.35 | 6/03 | 102496 | 264.00 |
| 6/14 | 1852 | 1,461.90 | 6/14 | 102498* | 198.39 |
| 6/14 | 1854* | 412.74 | 6/18 | 102499 | 15.87 |
| 6/14 | 1855 | 694.98 | 6/18 | 102500 | 149.58 |
| 6/17 | 1856 | 1,330.96 | 6/06 | 102502* | 2,312.00 |
| 6/17 | 1857 | 911.94 | 6/03 | 102505* | 2,250.00 |
| 6/18 | 1858 | 1,908.38 | 6/20 | 102506 | 40.00 |
| 6/17 | 1859 | 613.73 | 6/03 | 102507 | 1,375.56 |
| 6/17 | 1860 | 1,301.65 | 6/04 | 102508 | 80.00 |
| 6/17 | 1861 | 1,265.51 | 6/04 | 102509 | 80.00 |
| 6/17 | 1862 | 1,265.51 | 6/05 | 102512* | 12,925.00 |
| 6/21 | 1863 | 861.10 | 6/05 | 102513 | 2,098.09 |
| 6/24 | 1864 | 572.04 | 6/11 | 102514 | 77.00 |
| 6/24 | 1865 | 938.67 | 6/21 | 102515 | 170.69 |





P.O. Box 180, Gibsland, Louisiana 71028-0180

JPS MOTORS LLC

Page Number      7 of 19
Account Number:    ***9853
Date:            06/30/24

## Checks

| Date | Check No | Amount | Date | Check No | Amount |
|------|----------|--------|------|----------|--------|
| 6/25 | 102516   | 231.82    | 6/24 | 102545* | 2,335.73  |
| 6/17 | 102520*  | 597.96    | 6/14 | 102546  | 167.24    |
| 6/12 | 102522*  | 104.55    | 6/14 | 102547  | 264.00    |
| 6/10 | 102524*  | 1,200.00  | 6/18 | 102548  | 9,295.67  |
| 6/11 | 102525   | 131.60    | 6/18 | 102549  | 30,845.99 |
| 6/18 | 102528*  | 176.00    | 6/18 | 102550  | 19,104.36 |
| 6/11 | 102530*  | 77,776.40 | 6/21 | 102553* | 1,860.98  |
| 6/11 | 102531   | 30,735.67 | 6/21 | 102554  | 1,818.72  |
| 6/27 | 102532   | 6,800.00  | 6/24 | 102555  | 11,125.33 |
| 6/21 | 102534*  | 50.00     | 6/20 | 102556  | 100.00    |
| 6/21 | 102535   | 35.00     | 6/26 | 102570* | 89.34     |
| 6/21 | 102536   | 40.00     | 6/21 | 102574* | 216.44    |
| 6/12 | 102540*  | 176.00    | 6/21 | 102575  | 330.00    |
| 6/14 | 102541   | 1,450.29  | 6/24 | 102576  | 150.00    |
| 6/18 | 102542   | 2,250.00  | 6/24 | 102579* | 18,591.66 |
| 6/14 | 102543   | 5,000.00  |      |         |           |

( * indicates a break in check number sequence)

## Fee Recap

|                         | Total for this period | Total year to date |
|-------------------------|-----------------------|--------------------|
| Total Overdraft Fees    | $3,271.45             | $16,033.70         |
| Total Returned Item Fees| $539.25               | $5,320.60          |

## Daily Balance Summary

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 6/03 | 7,418.25 -   | 6/12 | 45,998.09 -  | 6/24 | 33,929.13 - |
| 6/04 | 10,629.77 -  | 6/13 | 980.13 -     | 6/25 | 2,507.47 -  |
| 6/05 | 25,167.05 -  | 6/14 | 10,799.24 -  | 6/26 | 56,720.80 - |
| 6/06 | 2,347.95 -   | 6/17 | 9,729.09     | 6/27 | 61,404.12 - |
| 6/07 | 16,829.60 -  | 6/18 | 66,053.56 -  | 6/28 | 531.29 -    |
| 6/10 | 89,289.64 -  | 6/20 | 53,041.16 -  |      |             |
| 6/11 | 149,006.08 - | 6/21 | 77,796.02 -  |      |             |



| Date | Amount |
|---|---|
| 06/03/2024 | $54,129.62 |
| 06/05/2024 | $10,629.77 |
| 06/06/2024 | $25,167.05 |
| 06/07/2024 | $2,347.95 |
| 06/11/2024 | $100,893.80 |
| 06/12/2024 | $160,734.97 |
| 06/13/2024 | $41,773.55 |
| 06/14/2024 | $980.13 |
| 06/20/2024 | $66,053.56 |
| 06/21/2024 | $105,300.20 |
| 06/24/2024 | $77,796.02 |
| 06/26/2024 | $2,507.47 |



06/03/2024 1816 $497.49

06/03/2024 1822 $613.73

06/03/2024 1817 $463.36

06/03/2024 1823 $1,084.58

06/07/2024 1818 $281.08

06/03/2024 1824 $1,026.93

06/03/2024 1819 $1,330.96

06/03/2024 1825 $1,048.43

06/03/2024 1820 $357.86

06/03/2024 1826 $202.61

06/04/2024 1821 $1,908.38

06/10/2024 1835 $449.86